## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Upper Gwynedd Equities, LLC and Retail Sites, LLC,** | : |
| **Plaintiffs**, | : |
| | : |
| **v.** | : Civil Action No. 20-cv-2819 |
| | : |
| **Provco Pinegood Sumneytown, LLC; Wawa, Inc.; Bruce Goodman; Gerald Holtz; Provco Group LLC; The Provco Group, Ltd.; Provco Ventures I, L.P.; Provco Real Estate; ABC Entities Nos. 1 to 5; and John Does Nos. 1 to 10.** | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| **Defendants**. | : |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 4

        A.      UGE's Challenges to Township Zoning Board Decisions Concerning
                the Provco Development ..................................................................... 4

        B.      Provco's Challenges to Township Zoning Board Decisions Concerning
                the UGE Development ......................................................................... 6

        C.      The Instant Action and the Commonwealth Court Appeal ............................ 9

III.    ARGUMENT ................................................................................................ 11

        A.      The Applicable Legal Standards ........................................................ 11

                1.      Motions to Dismiss Antitrust Claims ..................................... 11

                2.      Standard Governing *Noerr-Pennington* Immunity ............................ 11

        B.      The Court Should Decide the Applicability of *Noerr-Pennington*
                Immunity on this Motion to Dismiss ................................................. 13

        C.      The Conditional Use Appeal Was Objectively Reasonable and Is
                Therefore Immunized from Antitrust Liability under the *Noerr-*
                *Pennington* Doctrine ........................................................................ 16

                1.      The Commonwealth Court's Denial of the Conditional Use
                        Appeal Does Not Support a Finding of Baselessness ........................ 16

                2.      The Conditional Use Appeal Involved Unsettled Questions of
                        Statutory Interpretation on which PPS Advanced Legitimate
                        Arguments ........................................................................... 17

                3.      The Commonwealth Court Opinion Provides Further Evidence
                        That The Conditional Use Appeal Was Objectively Reasonable ....... 21

        D.      Plaintiffs Cannot Base an Antitrust Claim on The Land Use Appeal ........... 23

                1.      The Land Use Appeal Did Not Delay the UGE Development
                        and Therefore Could Not Have Caused Damages to Plaintiffs ......... 23

                2.      The Land Use Appeal Was Not Objectively Baseless ........................ 24

        E.      Plaintiffs Cannot Demonstrate Serial Petitioning Because Two
                Alleged Sham Petitions Do Not Constitute a Series ............................ 26

        F.      Plaintiffs Cannot Prevail on Their State Law Claims ......................... 28

      **1.**      **The State Law Claims Are Barred by the *Noerr-Pennington* Doctrine**................................................................... 28

      **2.**      **The Tortious Interference Claims Fail For the Separate Reason that Pennsylvania Law Does Not Recognize Claims Based on Alleged Interference with Plaintiffs' Performance of a Contract**................................................................. 29

**IV.**    **CONCLUSION** ............................................................................. 33

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Acclaim Sys. v. Infosys Ltd.*,
    679 F. App'x 207 (3d. Cir. 2017) .......................................................25, 26

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
    561 F.3d 199 (3d Cir. 2009)........................................................................26

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
    141 F.3d 947 (9th Cir. 1998) .....................................................................20

*ADP, LLC v. Ultimate Software Grp., Inc.*,
    No. 16-8664, 2018 U.S. Dist. LEXIS 64889 (D.N.J. Apr. 17, 2018) ......................12

*Ararel v. Connell*,
    102 F.3d 1494 (9th Cir. 1996) ...................................................................23

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
    No. 01-504, 2004 U.S. Dist. LEXIS 4579 (D. Del. Mar. 10, 2004) .......................25

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
    822 F.3d 125 (3d Cir. 2016)........................................................................10

*Bailey v. Reed*,
    29 F. App'x 874 (3d Cir. 2002) ..................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................10

*Beverly Enters., Inc. v. Trump*,
    182 F.3d 183 (3d Cir. 1999)........................................................................10

*Burton v. Teleflex Inc.*,
    707 F.3d 417 (3d Cir. 2013)........................................................................26

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972).....................................................................................11

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    168 F.3d 119 (3d Cir. 1999)........................................................................25

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
    993 F. Supp. 271 (D.N.J. 1998) ................................................................12

*Clark Distrib. Sys. v. ALG Direct, Inc.*,
   12 F. Supp. 3d. 702 (M.D. Pa. 2014) .................................................................27

*CSMN Invs. LLC v. Cordillera Metro. Dist.*,
   956 F.3d 1276 (10th Cir. 2020) ...............................................................16, 23

*Dir. Gen. of R.R. v. Kastenbaum*,
   263 U.S. 25 (1923).............................................................................................12

*E. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961)...........................................................................................11

*Erbe Electromedizin gmbH v. Canady Tech. LLC*,
   529 F. Supp. 2d 577 (W.D. Pa. 2007)..............................................................24

*Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   40 F.3d 63 (3d Cir. 1994)............................................................................26, 27

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
   No. 11-6239, 2013 U.S. Dist. LEXIS 78161 (D.N.J. June 4, 2013).......................13

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*,
   806 F.3d 162 (3d Cir. 2015).................................................................................2

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   280 F. Supp. 3d 691 (D. Md. 2017)..................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................27

*Kaiser Found. Health Plan, Inc. v. Abbott Labs, Inc.*,
   552 F.3d 1033 (9th Cir. 2009) ..........................................................................16

*Karpf v. Mass. Mut. Life Ins. Co.*,
   2018 U.S. Dist. LEXIS 33303 (E.D. Pa. Feb. 28, 2018) .............................26, 28

*Martinez v. Bank of Am., N.A.*,
   664 F. App'x 250 (3d Cir. 2016) .......................................................................14

*Morse v. Lower Merion School Dist.*,
   132 F.3d 902 (3d Cir. 1997)..............................................................................10

*Organon Inc. v. Mylan Pharmaceuticals, Inc.*,
   293 F. Supp. 2d 453 (D.N.J. 2003) ..................................................................16

*Phila. Taxi Ass'n v. Uber Techs.*,
   886 F.3d 332 (3d Cir. 2018)..............................................................................19

*Popson v. Galloway*,
   2010 U.S. Dist. LEXIS 75960 (W.D. Pa. July 27, 2010) ......................................................14

*Prof' Real Est. Invs., Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) ........................................................................................ *passim*

*In re Remicade Antitrust Litig.*,
   345 F. Supp. 3d 566 (E.D. Pa. 2018) ................................................................................23

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*,
   181 F.3d 410 (3d Cir. 1999)................................................................................................14

*Tunis Bros. Co. v. Ford Motor Co.*,
   952 F.2d 715 (3d Cir. 1991)................................................................................................20

*United Mine Workers v. Pennington*,
   381 U.S. 657 (1965) ............................................................................................................11

*United States v. Topco Assocs.*,
   405 U.S. 596 (1972) ............................................................................................................20

*Varentec, Inc. v. Gridco, Inc.*,
   2017 U.S. Dist. LEXIS 86185 (D. Del. June 6, 2017)........................................................16

*VIM Inc. v. Somerset Hotel Ass'n*,
   19 F. Supp.2d 422 (W.D. Pa. 1998)...................................................................................25

*In re Wellbutrin XL Antitrust Litig.*,
   868 F.3d 132 (3d Cir. 2017)............................................................................10, 11, 19, 23

*Windsor Sec. Inc. v. Hartford Life Ins. Co.*,
   986 F.2d 655 (3d. Cir. 1993)..........................................................................................26, 27

**State Cases**

*Ciampa v. Conversion Sciences, Inc.*,
   2015 Pa. Super. Unpub. LEXIS 4491 (Pa. Super. Ct. 2015) ..................................................28

*Commw. v. Golden Gate Nat'l Senior Care LLC*,
   194 A.3d 1010 (Pa. 2018) ..................................................................................................18

*Cook v. Unemployment Bd. of Review*,
   671 A.2d 1130 (Pa. 1996) ..................................................................................................21

*Council Rock Sch. Dist. v. Wrightstown Twp. Zoning Hr'g Bd.*,
   709 A.2d 453 (Pa. Commw. Ct. 1998) ..............................................................................17

*In re Thompson*,
   896 A.2d 659 (Pa. Commw. Ct. 2006) ..............................................................................17

*Glenn v. Point Park Coll.*,
    441 Pa. 474 (1971) ....................................................................................................28

*Grant v. Zoning Hr'g Bd. of Twp. of Penn*,
    776 A.2d 356 (Pa. Commw. Ct. 2001) .......................................................................6

*Larock v. Sugarloaf Twp. Zoning Hr'g Bd.*,
    740 A.2d 308 (Pa. Commw. Ct. 1999) .......................................................................6

*Phillips v. Selig*,
    959 A.2d 420 (Pa. Super. 2008)................................................................................27

*Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*,
    2018-28558 (Pa. Ct. C.P. Mont. Cnty. Nov. 5, 2019)................................................8

*Salsgiver Communs., Inc. v. Consol. Communs. Holdings*,
    150 A.3d 957 (Pa. Super. Ct. 2016).........................................................................28

*Summit Twp. Taxpayers Ass'n v. Summit Twp. Bd. of Supervisors*,
    411 A.2d 1263 (Pa. Commw. Ct. 1980) .....................................................................6

*Thompson Coal Co. v. Pike Coal Co.*,
    488 Pa. 198 (1979).................................................................................................28

*Trs. of Univ. of Pa. v. St. Judge Child.'s Res. Hosp.*, 940 F. Supp. 2d 233, 242-43
    (E.D. Pa. 2013)................................................................................................13, 25

**Federal Statutes**

The Sherman Act .............................................................................................................10, 24

Township Zoning Ordinance § 195-22.A.(9)(a) .....................................................................6

Township Zoning Ordinance § 195-27.1.E.................................................................7, 17, 18

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) .............................................1, 10, 12, 16

Pennsylvani Rules of Civil Procedure Rule 2327(4) .............................................................22

**Constitutional Provisions**

U.S. Const. amend. I. ...................................................................................................1, 2, 11

**Other Authorities**

Restatement (First) of Torts § 766 .......................................................................................32

Restatement (Second) of Torts § 766 .......................................................................................30, 32

Restatement (Second) of Torts § 766A .....................................................................................30, 32

Restatement (Second) of Torts § 766B .....................................................................................31, 32

Defendants Provco Pinegood Sumneytown, LLC ("PPS"), Bruce Goodman, Gerald Holtz, Provco Group LLC, The Provco Group, Ltd., Provco Ventures I, L.P., Provco Real Estate (collectively, "Provco") and Wawa, Inc. ("Wawa") respectfully submit this memorandum of law in support of their Motion to Dismiss the Complaint filed by Upper Gwynedd Equities, LLC ("UGE")[1] and Retail Sites, LLC (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) for failure to state a claim.

## I.      INTRODUCTION

This antitrust action arises out of two lawsuits filed by PPS challenging zoning decisions by Upper Gwynedd Township (the "Township") that approved development of a shopping center by Plaintiffs in the Township.  Plaintiffs claim that the lawsuits – the "Conditional Use Appeal" and the "Land Use Appeal"[2] – give rise to antitrust liability because they were meritless and reflected Defendants' collective desire to harm competition in the local real estate and convenience store markets by preventing Plaintiffs from developing their shopping center.  Plaintiffs allege that Defendants were motivated by the fact that Plaintiffs' shopping center was to be anchored by Royal Farms, a convenience store that competes with Wawa, a Provco tenant that also owns and operates convenience stores in the Township.

This action should be dismissed based on the *Noerr-Pennington* doctrine, which immunizes entities and individuals from antitrust liability for filing lawsuits, provided those suits do not constitute so-called "sham litigation."  The Supreme Court has underscored that the

---

[1]     For all purposes relevant to this matter, UGE is affiliated with and is the successor-in-interest of Hartford Properties, LLC ("Hartford").  Compl. ¶ 28.  Unless otherwise indicated, UGE and Hartford are referred to synonymously with one another herein.

[2]     For ease of reference, the terms "Conditional Use Appeal" and "Land Use Appeal" have the same meaning ascribed to them as in the Complaint.

"sham litigation" exception is exceedingly narrow in recognition of the First Amendment right to petition that underpins *Noerr-Pennington* immunity.  *See Prof'l Real Est. Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993) (*"PRE"*).  As the Third Circuit has explained, *PRE* imposes an "exacting two-step test" so as to "prevent any undue chilling of First Amendment activity."  *Hanover 3201 Realty, LLC v. Vill. Supermarkets*, *Inc.*, 806 F.3d 162, 180 (3d Cir. 2015).

  As a threshold for invoking the sham litigation exception, a plaintiff must first demonstrate that the underlying lawsuit brought by the defendant is "objectively baseless."  *PRE*, 508 U.S. at 60.  A lawsuit is not "objectively baseless" if the party bringing the suit has "probable cause," defined as a "reasonable belief that there is ***a chance that [the] claim may be held valid upon adjudication***."  *Id.* at 62-63 (emphasis added).  The probable cause determination is a question of law for the Court.  *Id.* at 63 ("The question is not whether [the defendant] thought the facts . . . constitute[d] probable cause, but whether the court thinks they did.").  No discovery is necessary at this stage because the Court may assess, based on the court filings in the underlying case and the instant motion to dismiss, whether either appeal was "objectively baseless."  The Court need not proceed to the second step of the exacting test because there was probable cause to bring suit.

  The zoning challenges at issue here were plainly not objectively baseless.  The Conditional Use Appeal involved unresolved questions of interpretation of the Township Zoning Ordinance (the "Zoning Ordinance").  Lawsuits based on legal arguments concerning ambiguous statutory language are by definition not baseless given a litigant's core right to obtain a judicial determination of such unsettled questions of law.  Moreover, PPS made legitimate and well-

recognized legal arguments in support of its statutory interpretation, further precluding a claim of baselessness.

Taken together, the filings and opinions in this underlying lawsuit reflect a robust and reasoned disagreement regarding the proper interpretation of the Zoning Ordinance in terms of which party bore the burden of proof regarding the "compatibility" of proposed multiple uses. PPS argued that UGE, as the applicant for a conditional use exception, bore the burden to show that its proposed multiple uses would be compatible with one another.  UGE took the opposite view, contending that PPS bore the burden to prove the proposed uses were incompatible with one another.  Underscoring the legitimacy of PPS's position, the Commonwealth Court held that the applicant (UGE) bore the burden of proof under the Zoning Ordinance, although the court affirmed the rulings below based on its conclusion that UGE satisfied that burden.

Nor was the Land Use Appeal baseless.  Although PPS admittedly filed the Land Use Appeal thirteen days after the statutory deadline, it advanced a reasonable argument that the untimeliness should be excused because the delay was attributable to the Township's delay in producing documents that PPS needed for the appeal.  PPS also advanced colorable arguments on the merits.  In any event, the Land Use Appeal cannot give rise to liability because during the brief time that the Land Use Appeal was pending, the Conditional Use Appeal was also pending, and therefore the Land Use Appeal did not cause any delay to Plaintiffs' land development.

Additionally, Plaintiffs cannot shore up its antitrust and related claims by pressing their subsidiary argument that PPS's two lawsuits, viewed together, fit within the "serial petitioning" exception to *Noerr-Pennington* immunity.  Simply put, the Third Circuit has squarely held that two legal challenges, as a matter of law, do not constitute serial petitioning.

Plaintiffs' state law claims should be dismissed as well, because the Third Circuit has consistently held that business torts arising out of alleged sham petitions are subject to *Noerr-Pennington* immunity.  In addition, the tortious interference claims fail because Pennsylvania law does not recognize the version of those claims alleged here, which are based on interference with the performance of a contract by the plaintiff (UGE) as opposed to inducing a third party (such as Royal Farms) to breach actual or potential contracts with the plaintiff.

For these reasons, as explained more fully below, the Court should dismiss the instant lawsuit with prejudice.

## II.    FACTUAL BACKGROUND

UGE and Provco are both experienced commercial real estate development companies that have developed neighborhood retail projects ("NRPs") with multiple commercial uses and tenants.  Compl. ¶¶ 27, 49 (Dkt. No. 1).[3]  Many of the NRPs developed by UGE contain Royal Farms stores, whereas many of the NRPs developed by Provco contain Wawa stores.  *Id.* Both UGE and Provco have been attempting to develop sites anchored by Royal Farms and Wawa, respectively (the "UGE Development" and the "Provco Development"), on parcels located catty-corner to one another at the intersection of Sumneytown Pike and West Point Pike in the Township, located in Montgomery County, Pennsylvania.  *Id.* ¶¶ 24, 50, 226.

### A.    UGE's Challenges to Township Zoning Board Decisions Concerning the Provco Development

PPS began its development process in the first half of 2016 by applying to the Township for permission to develop a site that would include a convenience store with fuel sales. *Id.* ¶ 151.  PPS was required to obtain certain zoning relief that would allow it to develop a

---

[3]    For ease of reference, this memorandum will refer collectively to UGE and its predecessor in interest, Hartford Properties, as "UGE."

convenience store that included a gasoline service station with a canopy over a certain number of fuel pumps. *See* Merck Notice of Land Use Appeal, *Merck & Co., Inc. v. ZHB of Upper Gwynedd Twp.*, 2017-19100, ¶¶ 6-7 (Pa. Ct. C.P. Mont. Cnty. July 26, 2017) (Exhibit A).

On June 27, 2017, the Township Zoning Hearing Board granted PPS's application for zoning relief. *Id.* ¶ 21, and Ex. E thereto (Decision Granting Provco Certain Zoning Relief). Less than a month later, non-party Merck & Co., Inc. ("Merck") filed an appeal seeking to reverse the Zoning Hearing Board's decision. *See* Ex. A.

UGE opted to participate in this dispute, filing a brief in support of Merck's land use appeal. UGE elected to involve itself at the appellate stage notwithstanding its failure to participate in the Zoning Hearing Board proceeding in which the Board considered and approved PPS's application for zoning relief. PPS Br. in Opp'n to Am. Land Use Appeal, *Merck & Co., Inc. v. ZHB of Upper Gwynedd Twp.*, 2017-19100, at 12, 16, 20 (Pa. Ct. C.P. Mont. Cnty. Oct. 18, 2017) (Exhibit B).[4] In its brief, UGE argued that the Zoning Hearing Board committed an error of law and abused its discretion. UGE Br. in Supp. of Merck Appeal, *Merck & Co., Inc. v. ZHB of Upper Gwynedd Twp.*, 2017-19100, at 11 (Pa. Ct. C.P. Mont. Cnty. Sept. 18, 2017) (Exhibit D). To this date, PPS has yet to obtain the necessary approvals to construct an NRP containing a Wawa store on the property.

---

[4]   This is not the first time Plaintiffs have run to court when they felt these ordinances were not being properly applied to properties owned by neighboring property owners, such as PPS. *See* UGE Joinder in Am. Notice of Land Use Appeal, *Merck & Co. Inc. v. ZHB of Upper Gwynedd Twp.*, 2017-19100 (Pa. Ct. C.P. Mont. Cnty. Sept. 14, 2017) (Exhibit C).

B.    **Provco's Challenges to Township Zoning Board Decisions Concerning the UGE Development**

At around the same time PPS was pursuing the Provco Development, UGE was attempting to launch the UGE Development across the street.  UGE executed a purchase and sale agreement to purchase a portion of the parcel from its previous owner, Giant Food Stores, on November 6, 2015.  Compl. ¶ 93.  Thereafter, UGE entered into a lease with Royal Farms contingent upon UGE securing all approvals, acquiring the site, and performing certain site work, such as to permit the development and operation upon the UGE Development of a Royal Farms convenience store with fuel sales.  *Id.* ¶ 100.  In addition to Royal Farms, the UGE Development contemplated construction of two additional separate commercial buildings that were proposed to have multiple commercial tenants.  *Id.* ¶ 102.  UGE then set out to obtain the necessary permits and approvals.

But, as demonstrated by UGE's challenge to PPS's zoning approval, the municipal permitting and approval process recognizes the right of neighboring property owners to contest land use permits and approvals.[5]  And, just as UGE had done with respect to the Provco Development, PPS concluded that municipal approvals of the UGE Development were erroneous and challenged them in court.

On December 6, 2018, PPS appealed the Township's Board of Commissioners' decision granting conditional use approval for the UGE Development to the Montgomery County Court of Common Pleas (the "Conditional Use Appeal").  *Id.* ¶ 154; *see also* PPS Notice of Land

---

[5]    *See, e.g.*, UGE Pet. to Intervene, *Merck & Co., Inc. v. ZHB of Upper Gwynedd Twp.*, 2017-19100 (Pa. Ct. C.P. Mont. Cnty. Aug. 24, 2017) (Exhibit E); Ex. D at 11; *Grant v. Zoning Hr'g Bd. of Twp. of Penn*, 776 A.2d 356, 359 (Pa. Commw. Ct. 2001); *Larock v. Sugarloaf Twp. Zoning Hr'g Bd.*, 740 A.2d 308, 313 (Pa. Commw. Ct. 1999); *Summit Twp. Taxpayers Ass'n v. Summit Twp. Bd. of Supervisors*, 411 A.2d 1263, 1265 (Pa. Commw. Ct. 1980).

Use Appeal, *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*,
2018-29558 (Pa. Ct. C.P. Mont. Cnty. Dec. 6, 2018) (Exhibit F).

PPS's Conditional Use Appeal raised two arguments.  PPS Br. in Supp. of
Appeal, at 7-8 , *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*,
2018-29558 (Pa. Ct. C.P. Mont. Cnty. Apr. 26, 2019) (Exhibit G).  First, PPS argued that UGE
failed to identify the proposed multiple principal uses for the UGE Development other than the
convenience store and fuel pumps and thus it failed to prove that the proposed multiple principal
uses were "compatible" with one another as required by Section 195-22.A.(9)(a) of the  Zoning
Ordinance.  *Id.* at 7 (conditions necessary for multiple principal uses include requirement that
"[t]he multiple principal uses are ***compatible, and will not conflict***.") (emphasis added).  Second,
PPS contended that, because UGE had failed to identify the proposed multiple principal uses, it
necessarily failed to prove that the proposed development would not "materially increase . . .
traffic congestion" on the streets, as required under Section 195-27.1.E of the Zoning Ordinance.
*Id.* at 7-8.  PPS further argued that, even without identifying the principal uses, UGE's traffic
expert had admitted that there would be significant increases in traffic associated with the
development.  *Id.* at 8-9.  In making these arguments, PPS highlighted similarities between its
Preliminary Plan Application for the Provco Development (which the Board of Commissioners
denied) and UGE's Conditional Use Application (which the Board of Commissioners approved),
arguing that if certain conditions supported denial in PPS's case, the same conditions should
have supported denial in UGE's case.  *Id.* at 5-6.

On May 24, 2019, UGE filed a brief in opposition to PPS's Conditional Use
Appeal.  *See* UGE Br. in Opp'n, *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper
Gwynedd Twp.*, 2018-29558 (Pa. Ct. C.P. Mont. Cnty. May 24, 2019) (Exhibit H).  In its brief,

UGE argued, *inter alia*, that PPS had misinterpreted the terms "compatible," "materially increase," and "traffic congestion" in the Zoning Ordinance.  In UGE's view, those terms were undefined and so vague as to be unenforceable, causing the burden to shift to PPS to demonstrate that UGE had not complied with the requirements that its uses be "compatible" or that they not "materially increase . . . traffic congestion."

The Township also weighed in on the question, submitting a brief in the Conditional Use Appeal that, although arguing in favor of the proposed UGE Development, nevertheless agreed with PPS's position that the terms were not so vague as to be unenforceable and that UGE accordingly bore the burden of proof to satisfy the criteria for multiple principal uses on a single property.  Upper Gwynedd Twp. Joinder in Br. of Hartford at 3, *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*, 2018-29558 (Pa. Ct. C.P. Mont. Cnty. May 28, 2019) (Exhibit I).  In sum, the Conditional Use Appeal concerned the unresolved interpretation of three terms from two sections of the Zoning Ordinance and the related question of which party bore the burden of applying those terms.

On August 8, 2019, the Court of Common Pleas issued an order denying the Conditional Use Appeal.  Compl. ¶ 157.  PPS appealed that decision to the Pennsylvania Commonwealth Court on September 4, 2019.  *Id.*  ¶ 161; *see also* PPS Notice of Appeal, *In re Appeal of Provco Pinegood Sumneytown LLC*, 1251 C.D. 2019 (Pa. Commw. Ct. Sept. 4, 2019) (Exhibit J).

On November 5, 2019, three months after it denied the Conditional Use Appeal, the Court of Common Pleas issued an opinion setting forth its basis for the denial.  *See* Op. in Supp. of Order, *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*, 2018-28558 (Pa. Ct. C.P. Mont. Cnty. Nov. 5, 2019) (Exhibit K).  Nowhere in its opinion did the

Court of Common Pleas state or imply that PPS's arguments were baseless or made in bad faith. Instead, the court neutrally observed that PPS's first argument "does not warrant relief[,]" and that "[n]o relief is due" for PPS's second argument. *Id.* at 6, 8.  In so holding, the Court of Common Pleas accepted UGE's argument that the terms "compatible" and "materially increase traffic congestion" were so vague as to relieve UGE of any burden of proof.

On August 26, 2019, shortly before PPS filed its appeal to the Pennsylvania Commonwealth Court, the Board of Commissioners granted final approval to the UGE Development.  Compl. ¶ 159.  On October 17, 2019, PPS appealed that decision to the Court of Common Pleas (the "Land Use Appeal").  *Id.* ¶ 163.  The Land Use Appeal contended that the Board of Commissioners committed an error of law and abused its discretion by granting final land development approval subject to the condition that UGE submit amended plans to resolve certain issues identified in a number of review letters, rather than requiring UGE to submit amended plans prior to final approval.  PPS Notice of Land Use Appeal, at ¶ 30, *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*, 2019-24859 (Pa. Ct. C.P. Mont. Cnty. Oct. 17, 2019) (Exhibit L).  PPS withdrew the Land Use Appeal on January 21, 2020.  *See* PPS Praecipe to Withdraw Land Use Appeal, *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*, 2019-24859 (Pa. Ct. C.P. Mont. Cnty. Jan. 21, 2020) (Exhibit M).  The Conditional Use Appeal was pending during the entire three-month life of the Land Use Appeal.

**C.     The Instant Action and the Commonwealth Court Appeal**

On June 12, 2020, Plaintiffs filed the instant action, alleging that PPS's challenges to approval of the UGE Development constituted sham litigation creating liability under the federal antitrust laws and various state law theories.  On August 28, 2020, the Court entered an

Order staying all proceedings pending a decision by the Commonwealth Court on the Conditional Use Appeal.  (Dkt. No. 15).

On December 14, 2020, the Commonwealth Court issued its decision affirming the decision by the Court of Common Pleas denying the Conditional Use Appeal.  *See generally In re Appeal of Provco Pinegood Sumneytown, LLC*, No. 1251 C.D. 2019 (Pa. Commw. Ct. Dec. 14, 2020) ("Slip Op.")) (Exhibit S).  The affirmance, however, was on different grounds than those relied upon by the Court of Common Pleas.  Unlike that court, which held that the terms "compatible" and "materially increase traffic congestion" were too vague to impose any burden of proof on UGE, the Commonwealth Court held, consistent with PPS's position, that UGE bore the burden of proof under the Zoning Ordinance.  But it proceeded to hold that UGE had satisfied its burden.  *Id*. at 21, 23.  This motion to dismiss followed.

Although Plaintiffs assert 10 counts in their complaint, each count rests on common allegations that the underlying lawsuits were shams.  *See* Compl. ¶ 349 (Count I, alleging "objectively baseless" legal challenges); ¶ 367 (Count II, containing same allegation); ¶ 379 (Count III, containing same allegation); ¶ 401 (Count IV, containing same allegation); *see also ¶¶* 411-17 (Count V, alleging "concerted action" and referencing earlier factual allegations); ¶¶ 418-24 (Count VI, containing same allegations as the Count V); ¶ 429 (Count VII, referring to "a series of sham litigations and [unspecified] other anti-competitive acts"); ¶ 439 (Count VIII, referring to "sham litigations and [unspecified] anti-competitive acts"); ¶ 450 (Count IX, referring to "sham litigations . . . [for an] improper purpose); ¶¶ 454-59 (Count X, alleging an

agreement to violate antitrust law and commit state law torts).[6]  Because all 10 counts necessarily

rely on allegations of sham litigation, the instant motion should dispose of the entire complaint.[7]

## III.     ARGUMENT

### A.     The Applicable Legal Standards

#### 1.     Motions to Dismiss Antitrust Claims

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "well-pleaded factual

allegations" should be taken as true, *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 186 (3d Cir.

1999), "conclusory allegations or legal conclusions masquerading as factual allegations" are not

to be credited.  *Bailey v. Reed*, 29 F. App'x 874, 875 (3d Cir. 2002) (quoting *Morse v. Lower

Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)); *In re Asbestos Prods. Liab. Litig. (No. VI)*,

822 F.3d 125, 133 (3d Cir. 2016) (courts need not accept conclusory factual allegations or legal

assertions).  These gatekeeping requirements are particularly meaningful in antitrust cases,

because "proceeding to antitrust discovery can be expensive."  *Twombly*, 550 U.S. at 558.

#### 2.     Standard Governing *Noerr-Pennington* Immunity

"A plaintiff claiming that a lawsuit is, by its very existence, anticompetitive and

unlawful faces an uphill battle."  *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 147 (3d Cir.

---

[6]     Counts I-IV and Counts V-VI assert violations of Sections 2 and 1 of the Sherman Act, respectively; Counts VII and VIII assert state tortious interference claims; Count IX asserts an abuse of process claim; and Count X asserts a civil conspiracy claim.

[7]     The only other conduct referred to in the Complaint concerns an alleged effort by Wawa to persuade a consulting engineering firm with which Wawa works regularly not to work for Royal Farms at a different site in Hatfield, Pennsylvania.  *See* Compl. ¶¶ 323-39.  But that allegation is of no moment here because Plaintiffs have not based any of their counts on, or sought damages resulting from, that alleged conduct.

2017).  Courts set a high bar for a sham litigation plaintiff because the First Amendment grants the right to petition the legislative, executive, and judicial branches of government for action at all levels—state, federal, and local.  *PRE*, 508 U.S. at 56-57; *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972).  In *E. R. Presidents Conference v. Noerr Motor Freight, Inc.*, the Supreme Court held that this right precludes antitrust liability for petitions made to legislative bodies.  365 U.S. 127, 135-36 (1961).  A few years later, in *United Mine Workers v. Pennington*, the Supreme Court extended this immunity to non-legislative petitioning as well. 381 U.S. 657, 669-70 (1965).  The *Noerr-Pennington* doctrine thus shields private parties from antitrust liability related to the petitioning of any body of government.

The Supreme Court has created a narrow exception to *Noerr-Pennington* immunity if the government petitioning at issue is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor."  *Noerr*, 365 U.S. at 144.  In *PRE*, the Supreme Court distilled the sham test into a two-step inquiry.  The first step focuses on whether "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *PRE*, 508 U.S. at 60.  Because, as detailed below, it is difficult to show that a lawsuit is objectively baseless, many antitrust litigants never get past this step.  And only if the plaintiff can persuade the Court that a lawsuit is objectively baseless does the Court proceed to step two, which focuses on the "litigant's subjective motivation," *i.e.*, whether the lawsuit is being used as an "anticompetitive weapon."  *Id.* at 60-61.

A plaintiff cannot establish objective baselessness if a defendant had probable cause to bring the underlying petition.  *Id.* at 63; *see Wellbutrin XL*, 868 F.3d at 148 ("The existence of probable cause to institute legal proceedings **precludes a finding** that an antitrust

defendant has engaged in sham litigation.") (emphasis added).  Specifically, "[i]f an objective

litigant *could conclude* that the suit is *reasonably calculated* to elicit a favorable outcome, the

suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must

fail."  *Id.* at 60 (emphasis added); *see also Cheminor Drugs, Ltd. v. Ethyl Corp.*, 993 F. Supp.

271, 281 (D.N.J. 1998) (case must be shown to have "absolutely no objective merit").  Put

another way, there is probable cause if "there is a chance that the claim may be held valid upon

adjudication."  *PRE*, 508 U.S. at 62-63.  Significantly for purposes of a motion to dismiss, the

Supreme Court squarely held in *PRE* that, "[o]nly if challenged litigation is objectively meritless

may a court examine the litigant's subjective motivation."  *Id.* at 60.

As detailed below, Plaintiffs here cannot prevail under the "sham litigation"

standard.[8]

### B.   The Court Should Decide the Applicability of *Noerr-Pennington* Immunity on this Motion to Dismiss

In *PRE*, the Supreme Court held that district courts can and should decide sham

litigation claims as a matter of law when the "predicate facts of the underlying proceeding" are

not in dispute and therefore the Court can decide the question of whether that proceeding was

"objectively baseless" without discovery.  *Id*. at 63 (if "there is no dispute over the predicate

facts of the underlying legal proceeding, a court may decide probable cause [and thus *Noerr-

Pennington* immunity] as a matter of law.").  That is because "the question is not whether [the

defendant] thought the facts to constitute probable cause, but whether the court thinks they did."

*Id.* at 63-64 (quoting *Dir. Gen. of R.R. v. Kastenbaum*, 263 U.S. 25, 28 (1923)).  Thus, "a court

may decide the applicability of the *Noerr-Pennington* doctrine on a motion to dismiss under Fed.

---

[8]   As explained in Section E, the "serial petitioning" standard is not applicable to this action
because the allegations are insufficient to establish serial petitioning.

R. Civ. P. 12(b)(6) if no factual issues are present." *ADP, LLC v. Ultimate Software Grp., Inc.*, No. 16-8664, 2018 U.S. Dist. LEXIS 64889, *4-5 (D.N.J. Apr. 17, 2018) (citing *Trs. of Univ. of Pa. v. St. Judge Child.'s Res. Hosp.*, 940 F. Supp. 2d 233, 242-43 (E.D. Pa. 2013)).

Courts in this Circuit have not hesitated to grant motions to dismiss sham litigation claims when, as here, the predicate facts regarding objective baselessness are undisputed. *Trustees of the University of Pennsylvania* is illustrative. In that case, the University of Pennsylvania alleged that a lawsuit filed by St. Jude's Children's Hospital ("St. Jude's") tortiously interfered with its potential contractual relations arising out of certain medical research. St. Jude's moved to dismiss based on *Noerr-Pennington* immunity, and the University of Pennsylvania opposed the motion on the ground that application of the immunity presented a question of fact that could not be decided on a motion to dismiss. 940 F. Supp. 2d at 241. Rejecting this contention and granting the motion, Judge Dalzell held that "all facts relevant to the determination of *Noerr-Pennington* applicability [were] undisputed and contained within the record." *Id.* at 242-43; *see also Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, No. 11-6239, 2013 U.S. Dist. LEXIS 78161, at *23 (D.N.J. June 4, 2013) (citing *Trs. of Univ. of Pa.*, 940 F. Supp. 2d at 242) (rejecting argument that "dismissal on *Noerr-Pennington* grounds was premature" because all the relevant facts about the underlying foreclosure action were already before the court).

Here, the predicate facts regarding the objective merit of PPS's appeals are all before the Court in the form of the decisions of the Township Zoning Board, the Court of Common Pleas, and the Commonwealth Court, as well as the appellate briefs filed by PPS and UGE in the Commonwealth Court. *See* Ex. K; *see also* Br. of Appellant PPS, *In re Appeal of Provco Pinegood Sumneytown LLC*, 1251 C.D. 2019 (Pa. Commw. Ct. Jan. 10, 2020) (Exhibit

N); Br. of Appellee/Intervenor UGE, *In re Appeal of Provco Pinegood Sumneytown LLC*, 1251 C.D. 2019 (Pa. Commw. Ct. Feb. 10, 2020) (Exhibit O).  No dispute exists as to the content of these public filings, and no discovery is required for the Court to evaluate them.  To the contrary, determining whether PPS advanced an objectively baseless argument in an appellate brief is a pure legal question that lies at the core of the judicial function.  *See PRE*, 508 U.S. at 63 (describing the key question as "whether the court thinks" the lawsuit in question was based on probable cause).  As such, the Court can and should decide on this motion whether PPS's zoning challenges were "objectively baseless."

In deciding this motion, the Court may consider briefs and opinions in the underlying land use lawsuits because they are public court filings.  *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 413 (3d Cir. 1999) (courts "may take judicial notice of [another court's opinion] as a matter of public record"); *Martinez v. Bank of Am., N.A.*, 664 F. App'x 250, 254 n.7 (3d Cir. 2016) (affirming dismissal based in part on a brief from underlying foreclosure action attached as an exhibit in support of motion to dismiss and reasoning that "[t]he District Court correctly recognized that it could consider 'matters of the public record' in deciding Defendants' motion under Fed. R. Civ. P. 12(b)(6)"); *see also Popson v. Galloway*, 2010 U.S. Dist. LEXIS 75960, at *6 (W.D. Pa. July 27, 2010) (granting defendant's motion to dismiss after considering eight court filings from underlying collection action because "court filings are public records and therefore, can be, and have been, considered by this Court in deciding Defendants' Motion to Dismiss").

C.     **The Conditional Use Appeal Was Objectively Reasonable and Is Therefore Immunized from Antitrust Liability under the *Noerr-Pennington* Doctrine**

1.     **The Commonwealth Court's Denial of the Conditional Use Appeal Does Not Support a Finding of Baselessness**

As a threshold matter, it bears emphasis that the Commonwealth Court's decision upholding denial of the Conditional Use Appeal does not support the conclusion that this appeal was baseless. The Supreme Court made clear in *PRE* that determining whether a lawsuit is objectively baseless bears little relationship to whether the suit was ultimately successful. Thus, the Court explained: "when the antitrust defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *PRE*, 508 U.S. at 60 n.5 (quotations omitted); *see also VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 428 (W.D. Pa. 1998) ("The relevant inquiry . . . is not whether plaintiffs actually met their burden and legitimately obtained their special exception [from the zoning board], but whether defendants could have reasonably believed that their court challenge to the special exception might be successful. I conclude that such a reasonable belief could have been formed."). Indeed, were it not for the distinction between an unsuccessful suit and an objectively baseless suit, the First Amendment protection afforded by *Noerr-Pennington* would largely disappear because no defendant could ever defeat a sham litigation claim for the obvious reason that such claims are only filed against a party who has lost the underlying suit.

In August 2020, the Court requested that the parties consider a stay in this action pending a ruling by the Commonwealth Court on the Conditional Use Appeal. The Court advised the parties that, in deciding the motion, it wanted to know whether, in the event the Commonwealth Court ruled against PPS, that court had expressed any opinion that the appeal was baseless. It did not. Nothing in the Commonwealth Court's decision suggests in any way that PPS pursued a

baseless appeal.  To the contrary, as discussed below, the Commonwealth Court *agreed with PPS* that UGE bore the burden of proof to establish compliance with the Zoning Ordinance and, in that respect, disagreed with both UGE and the Court of Common Pleas.  The Commonwealth Court's adoption of PPS's legal position on this issue shows the reasonableness of PPS's appeal, putting any suggestion of baselessness to rest.

> **2.    The Conditional Use Appeal Involved Unsettled Questions of Statutory Interpretation on which PPS Advanced Legitimate Arguments**

As a matter of law, the Conditional Use Appeal cannot be objectively baseless for two related but distinct reasons.  First, that appeal turned on unresolved questions of statutory interpretation—specifically, the interpretation of three terms from two sections of the Zoning Ordinance, and the effect of those interpretations on which party bears the burden of proof.  These questions were unsettled when PPS filed the Conditional Use Appeal.  The Commonwealth Court decision settled those questions by adopting PPS's legal position that UGE bore the burden under the Zoning Ordinance to prove that its proposed "multiple principal uses" (i) were "compatible" with one another; and (ii) would not "materially increase traffic congestion" as those quoted terms were used in the Zoning Ordinance.  Slip Op. at 21 (holding that UGE met its burden as to compatibility); *id.* at 23 (holding that UGE met its burden regarding traffic congestion).  Second, and particularly in light of the Commonwealth Court's decision, PPS plainly advanced colorable legal arguments in support of its position on these unsettled questions.

The Supreme Court has squarely held that probable cause to sue exists when the lawsuit in question is based on an unsettled provision of law.  *PRE*, 508 U.S. at 65 ("In light of the unsettled condition of the law, [Defendant] plainly had probable cause to sue.").  *PRE* itself involved such a question of first impression – whether a hotel operator that rented prerecorded

videodiscs of movies to its guests was infringing on Columbia Pictures' copyright to the movies recorded on the videodiscs that the hotel operator had purchased. *Id.* at 64 ("When the District Court entered summary judgment for PRE on Columbia's copyright claim, ***it was by no means clear whether*** PRE's videodisc rental activities intruded on Columbia's copyrights.") (emphasis added).

   Several district courts in the Third Circuit and elsewhere have likewise held that sham petitioning claims cannot succeed if the law governing the underlying claims was unsettled at the time the petitions were filed. *Organon Inc. v. Mylan Pharms., Inc.*, 293 F. Supp. 2d 453 (D.N.J. 2003), provides one such example. In that case, plaintiff generic drug makers alleged that defendant's losing patent infringement suits were objectively baseless. *Id.* at 456. Dismissing the sham claims on a Rule 12(b)(6) motion, the District of New Jersey held that "[i]n light of the uncertain state of the law at the time with regard to induced infringement claims, this Court cannot find that [defendant] lacked an objectively reasonable basis to proceed with its claims against generic manufacturers." *Id.* at 462; *see also Varentec, Inc. v. Gridco, Inc.*, 2017 U.S. Dist. LEXIS 86185, at *22 (D. Del. June 6, 2017) (dismissing alleged sham litigation claims because state of law was "deeply uncertain" at the time plaintiff filed its complaints); *CSMN Invs. LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1288 (10th Cir. 2020) (affirming dismissal of antitrust claim based on zoning challenge, finding that "[defendants] had a right to be concerned about a change in the properties' uses . . . and to press for an interpretation that would [reflect their concerns]); *Kaiser Found. Health Plan, Inc. v. Abbott Labs, Inc.*, 552 F.3d 1033, 1046-47 (9th Cir. 2009) (litigation involving questions of first impression did not constitute sham litigation).

Just like the foregoing cases, the Conditional Use Appeal involved unsettled questions of law.  Specifically, the appeal turned on the meaning of certain terms in the Zoning Ordinance that were neither defined by the ordinance nor construed by preexisting case law. One such term was "compatible."  PPS and UGE disagreed over whether that term is sufficiently specific that the applicant (UGE) bears the burden of meeting the requirement to demonstrate that the property's multiple principal uses were compatible.  *See* Ex. N at 18-19 (arguing that "compatible" was one of the "limiting criteria" in the Zoning Ordinance and that [UGE] had failed to meet it); Ex. O at 23 (arguing that the Zoning Ordinance "does not define 'compatible,' 'conflict,' 'non-conflicting' . . . and does not provide any specific or objective criteria . . . with which [UGE] can demonstrate compliance").  A similar dispute concerned the terms "materially increase" and "traffic congestion" on the streets as required under Section 195-27.1.E of the Zoning Ordinance.  *See* Ex. N at 23; Ex. O at 23.  In the absence of any statutory or prior judicial explanation of the contested terms, it was not baseless for PPS to challenge UGE's application for failing to specify the property's multiple principal uses, beyond stating that they were permissible.  To the contrary, PPS made a reasonable and logical argument that this failure to specify the uses meant that UGE had not established that those uses were "compatible" and would not "materially increase . . . traffic congestion."

Underscoring that the Conditional Use Appeal was not baseless, PPS advanced persuasive and well-accepted legal arguments in support of its interpretation of those statutory terms in its appeal.  Specifically, PPS interpreted these Zoning Ordinance requirements under established principles of Pennsylvania law regarding municipal land use provisions, contending that UGE, as the applicant for a conditional use or special exception, "has the initial burden of proving compliance with both the use and dimensional requirements set forth in a zoning

ordinance." Ex. N at 15 (citing *In re Thompson*, 896 A.2d 659, 670 (Pa. Commw. Ct. 2006), and *Council Rock Sch. Dist. v. Wrightstown Twp. Zoning Hr'g Bd.*, 709 A.2d 453 (Pa. Commw. Ct. 1998)).  Significantly, the Township took the same position, arguing that UGE bore the burden of proof to show it could legitimately operate multiple principal uses on a single property.  Ex. I at 2-3.

      PPS also relied on the settled principle of Pennsylvania law that provides that "when interpreting a statute, courts must presume that the legislature did not intend any statutory language to exist as mere surplusage; courts must construe a statute so as to give effect to every word."  *Id.* at 21 (quoting *Commw. v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018)).[9]  PPS did not challenge UGE based on any specific facts that UGE proffered, but rather on UGE's failure to identify any use or tenant within the proposed UGE Development besides the Royal Farms convenience store (other than to argue that the uses would be permissible).  *Id.* at 7.  Indeed, given UGE's failure to identify any use, it would have been unfair to impose the burden on PPS to establish an incompatible use.

      UGE, similarly, made a number of legal arguments in opposing the Conditional Use Appeal and the statutory interpretations urged by PPS.  It contended that the terms "compatible," "materially increase," and "traffic congestion," were all undefined, failed to "provide any specific criteria" for how they should be interpreted, and were "nonobjective and too vague." Ex. H at 14, 19.  Indeed, that very argument acknowledges that the meaning of these statutory terms is unsettled.  *See id.*  Based on its contention that these terms are undefined, UGE

---

[9]      Provco also maintained its argument that the terms "materially increase" and "traffic congestion" in Section 195.27.1 of the Zoning Ordinance are sufficiently specific requirements to maintain the standard Pennsylvania requirement that UGE, as the applicant, to present evidence demonstrating its compliance therewith.  Ex. N at 25-26.

contended that it was deprived of "the knowledge of the means by which to comply," and that the ordinance's requirements were therefore either "not enforceable or [were requirements as to which] the burden shifts to PPS to demonstrate non-compliance." *Id.* The Court of Common Pleas agreed with UGE's interpretation.

### 3. The Commonwealth Court Opinion Provides Further Evidence That The Conditional Use Appeal Was Objectively Reasonable

The analysis and language of the Commonwealth Court opinion underscores that PPS's appeal had a reasonable legal basis. The Commonwealth Court began its Legal Discussion with the premise that it should accord deference to the Township Zoning Board's interpretation of the Zoning Ordinance and evaluation of the evidence offered by UGE. Slip Op. at 16. Turning to the particular questions presented, the Commonwealth Court accepted without discussion the basic proposition advanced by PPS (and opposed by UGE and rejected by the Court of Common Pleas) that UGE bore the burden of proving that its proposed multiple principal uses were "compatible" with one another. As noted, UGE and the Court of Common Pleas took the position that the terms "compatible" and "non conflicting" were too vague to impose any burden on UGE whatsoever, while PPS maintained that these terms required UGE to introduce specific proof of the type and number of uses contemplated. The Commonwealth Court opted for a middle ground. Specifically, it accepted the Zoning Board's interpretation that the Zoning Ordinance defined the term "compatible" to encompass all uses not expressly prohibited by the ordinance, such as a "greenhouse." Slip Op. at 20. The court proceeded to conclude that UGE had met its burden by representing to the Zoning Board that its development would not include any such prohibited uses. *Id.* at 20-21.

The Commonwealth Court took a similar approach with respect to the question of whether UGE's proposed development would "materially increase" traffic congestion within the

meaning of the Zoning Ordinance.  Again, it implicitly adopted PPS's position that UGE bore

the burden of proof on this issue, thereby declining to adopt the interpretation advanced by UGE

and accepted by the Court of Common Pleas that the term "materially increase" was too vague to

impose any burden on UGE.  But the Commonwealth Court proceeded to hold that substantial

evidence supported the Zoning Board's finding that UGE's development would not in fact

materially increase congestion.  Slip Op. at 23.[10]

Read as a whole, the Commonwealth Court's decision refutes the contention that

PPS's appeal was baseless in multiple respects.  First, in interpreting the Zoning Ordinance

differently than either party or the Court of Common Pleas, the Commonwealth Court's decision

strongly supports the conclusion that the appeal presented a difficult and unsettled question

regarding how to interpret the ordinance.  Second, any suggestion of baselessness is belied by the

court's acceptance of PPS's core conclusion that the ordinance did impose the burden of proof

on UGE both to show "compatibility" and to show its development would not "materially

increase traffic congestion," although the court read the ordinance to impose a lower burden than

had PPS.  Third, as noted above, no language in the court's opinion even suggests, let alone

states, that the arguments advanced by PPS were other than reasonable.

In sum, PPS's Conditional Use Appeal plainly cannot be regarded as "objectively

baseless."  The appeal involves unsettled questions of interpretation of various terms in the

relevant zoning law.  And PPS advanced time-tested and well-supported statutory interpretation

arguments in support of its position regarding the meaning of those terms.

---

[10]   The Court's observation that PPS had not introduced evidence on incompatibility or traffic
congestion and its holding that UGE had met its burden do not support a finding of
baselessness.  PPS's decision not to introduce evidence was fully consistent with its
reasonable interpretation of who bore the burden of proof under the Zoning Ordinance and
how that burden could be discharged.

**D.      Plaintiffs Cannot Base an Antitrust Claim on The Land Use Appeal**

      **1.      The Land Use Appeal Did Not Delay the UGE Development and Therefore Could Not Have Caused Damages to Plaintiffs**

As a threshold matter, Plaintiffs cannot allege any facts to support the assertion that the Land Use Appeal caused any delay to the UGE Development because, during the entire life of the Land Use Appeal, the Conditional Use Appeal was pending.  PPS filed the Land Use Appeal on October 17, 2019 and voluntarily withdrew it just three months later, on January 21, 2020.  *See* Dkt., *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs Upper Gwynedd Twp.*, 2019-24859 (Pa. Ct. C.P. Mont. Cnty.) (Exhibit P) (Land Use Appeal docket showing Land Use Appeal was filed on October 17, 2019 and voluntarily withdrawn on January 21, 2020).  Throughout this period, the Conditional Use Appeal remained active and pending.  *See* Dkt., *Provco Pinegood Sumneytown LLC v. Bd. of Comm'rs of Upper Gwynedd Twp.*, 2018-28558 (Pa. Ct. C.P. Mont. Cnty.) (Exhibit Q); *see* Dkt., *In re Appeal of Provco Pinegood Sumneytown*, 1251 C.D. 2019 (Pa. Commw. Ct.) (Exhibit R).

When, as here, Plaintiffs' claimed damages based on the alleged sham cases consist of foregone revenue due to a delay in entering the market, they necessarily have to show that the sham lawsuit caused the delay.  *See Wellbutrin XL*, 868 F.3d at 152-53 (holding that lawsuit against generic drug maker could not give rise to liability because it was not responsible for any delay in the generic company's entry into the market); *Phila. Taxi Ass'n v. Uber Techs*., 886 F.3d 332, 343 (3d Cir. 2018) (holding that "there must be a causal link between the alleged injury and an antitrust violation's anticompetitive effects").

Plaintiffs themselves assert that the filing of the Conditional Use Appeal delayed the completion of the UGE Development, and that this "monthly delay continues as the matter currently remains appealed by Provco to and is before the Commonwealth Court of

Pennsylvania."  Compl. ¶ 305.  Accordingly, by Plaintiffs' own admission, the Land Use Appeal

could not have independently delayed the UGE Development.  Because the three-month

pendency of the Land Use Appeal could not have caused any competitive harm, it cannot give

rise to antitrust liability.[11]

### 2.    The Land Use Appeal Was Not Objectively Baseless

But even if the Land Use Appeal had caused delay, it still could not support an

antitrust claim because PPS had legitimate justifications for filing that appeal, some of which

Plaintiffs themselves invoked when seeking to appeal zoning relief that PPS obtained for the

Provco Development.  Plaintiffs' arguments to the contrary are neither persuasive nor do they

establish that the Land Use Appeal did not have a chance of success on the merits.

In the Land Use Appeal, PPS identified multiple grounds for appealing the

Board's decision to grant UGE's final development application.  Ex. L at 9-11.[12]  During the

---

[11]    The short duration of the Land Use Appeal further militates in favor of dismissal.  *See
United States v. Topco Assocs.*, 405 U.S. 596, 606 (1972) (Congress did not intend to
prohibit practices that "in some insignificant degree or attenuated sense" restrain
competition); *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d Cir. 1991)
(plaintiffs must "show more than a de minim[is] restraint"); *Adaptive Power Sols., LLC v.
Hughes Missile Sys. Co.*, 141 F.3d 947, 951-52 (9th Cir. 1998) ("But, even if SoraPower
did not become an immediate competitor, there was no injury to competition.  ST Keltec
became qualified or operational within four to ten months after APS left the market, and
Oeco continued to supply A3s all along.  To constitute an injury to competition, the
restraint must be 'of significant magnitude' and 'more than trivial.'  Here it was not.").

[12]    Among other things, PPS asserted that the Board's final order requiring UGE to make
substantial changes to certain development plans ("Plans") and then submit those Plans
(and related documents) to Township officials for review and approval constituted an
improper delegation of the Board's responsibility to render a final decision on
development plans under 53 C.S. § 10508.  *See* Ex. L ¶ 30.  Section 10508 requires, in
pertinent part, that applications for final approval of a plat "be acted upon by the
governing body…."  *Id.* at 9-10.  PPS also raised certain errors of law based on the
Board's waiver of certain requirements of the Township Subdivision and Land
Development Ordinance (none of which were disputed).  *Id.* at 9.  It further asserted that
the Board's order was an abuse of discretion because it was completely contrary to

very limited time that the Land Use Appeal was pending, none of these grounds for appeal were substantively addressed, and no court rendered a decision on the merits of the appeal.  In addition, PPS advanced legitimate reasons that the appeal should be allowed *nunc pro tunc*, because (i) PPS could not assess potential grounds for appeal until it had access to documents provided by the Township; and (ii) a delay in the Township's response to PPS's "Right to Know" request prevented PPS from reviewing the documents prior to the deadline for appeal. *Id.* at 6-8.  PPS then cited settled Pennsylvania law that a late-filed appeal may be allowed *nunc pro tunc* where the missed deadline was due to a breakdown in the administrative process.  *Id.* at 8, ¶ 27 (citing *Cook v. Unemployment Bd. of Review*, 671 A.2d 1130 (Pa. 1996)).  Under the circumstances – where PPS could not have obtained necessary documents prior to the deadline – PPS clearly had probable cause to argue the appeal should be accepted.

Plaintiffs' arguments to the contrary are unpersuasive.  Their effort to predicate baselessness on Provco's failure to appear "at any of the underlying proceedings to object or question any part of the UGE Land Development Plans," Compl. ¶ 165, rings hollow because Plaintiffs did the very same thing on PPS's land use approvals, only opting to intervene in Merck's appeal of those approvals.  Ex. E ¶ 15; *see also* Ex. D.

For the same reason, the Court should reject Plaintiffs' contention that the Land Use Appeal was objectively baseless because PPS "was not aggrieved."  Compl. ¶ 319.  UGE made the opposite argument in its petition to intervene in the appeal of the Township Zoning Hearing Board's grant of certain zoning relief to PPS, claiming "[UGE] is an equitable property owner in the immediate vicinity of the PPS Development and as such has the requisite interest

---

conclusions the Board had reached when considering PPS's substantially similar application. *Id* at 10-11.

and status to become an intervenor pursuant to Pa.R.C.P. 2327(4)."  Ex. E ¶ 15.  Here, PPS was

aggrieved in the same way UGE claimed it was, as a neighboring property owner whose

equitable interest was affected by a neighbor's land development.

  For the foregoing reasons, the Land Use Appeal cannot support an antitrust claim.

**E.  Plaintiffs Cannot Demonstrate Serial Petitioning Because Two Alleged Sham Petitions Do Not Constitute a Series**

  Plaintiffs also cannot cobble together a viable antitrust claim by recasting PPS's

two legal challenges as serial sham lawsuits.  When serial petitioning is alleged, the standard is

slightly different than the standard sham exception test.  However, the Court need not delve into

the distinctions between the tests because Plaintiffs have not alleged the necessary predicate—

that Defendants filed a *series* of petitions.  Plaintiffs fall short of this, because they have only

pled the existence of two alleged sham petitions, the Conditional Use Appeal and the Land Use

Appeal.[13]

  Plaintiffs cannot get past this threshold requirement because the law in this Circuit

is clear that two petitions cannot constitute a series or pattern.  In *Wellbutrin XL*, the Third

Circuit rejected a serial sham petitioning claim against GlaxoSmithKline ("GSK") on the ground

that GSK, like PPS here, was "only involved in two of the suits."  868 F.3d at 157.  In its

decision, the Third Circuit squarely held that "two proceedings . . . does not constitute a pattern."

*Id.*; *see also In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 582 (E.D. Pa. 2018) (finding

---

[13]  Plaintiffs characterize the number of petitions as three in ¶ 277 of the Complaint, counting as two different petitions Provco's Conditional Use Appeal to the Court of Common Pleas and its appeal of the Court of Common Pleas' decision to the Commonwealth Court.  This is improper double-counting.  *See Cordillera*, 956 F.3d at 1288 ("Unlike in [*California Motor*], Appellees here pursued only a straight line of appeals.  Given these considerations, we do not find that Appellees engaged in a series of lawsuits that were intended to abuse judicial process.").

that two alleged sham petitions did not constitute a series or pattern); *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996) (no "series" where defendants initiated two lawsuits and administrative proceedings); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 712 (D. Md. 2017) (observing that "there have been only two cases that IV brought against Capital One" and that, although IV sued other entities in other courts, "that litigation does not make two instances of litigation against Capital One a series").

The Third Circuit also highlighted GSK's brief involvement with the two proceedings as militating against a finding that GSK had engaged in serial petitioning.  *See Wellbutrin XL*, 868 F.3d at 157 ("GSK was only involved in two of the suits, and then only briefly").  That reasoning applies here by analogy, as one of PPS's two petitions, the Land Use Challenge, had a brief existence, pending for only three months before being voluntarily withdrawn.[14]

The timing of PPS's two zoning challenges further demonstrates that they do not constitute serial petitioning.  The Conditional Use Appeal and Land Use Appeal were filed 10 months apart, rather than in rapid succession.  *See* Ex. Q; Ex. R; *see also Erbe Electromedizin gmbH v. Canady Tech. LLC*, 529 F. Supp. 2d 577, 589-90 (W.D. Pa. 2007) (finding serial petitioning not sufficiently alleged because petitions at issue were not "simultaneous and voluminous").

For all of these reasons, Plaintiffs cannot save their sham litigation claims by refashioning them as a serial petitioning claim.

---

[14]     In addition, Wawa was not a party to either of the two zoning challenges.  *See* Ex. P; Ex. F; Ex. L ¶ 30.

F.     **Plaintiffs Cannot Prevail on Their State Law Claims**

1.     **The State Law Claims Are Barred by the *Noerr-Pennington* Doctrine**

In addition to its Sherman Act claims, Plaintiffs have also asserted state common law claims against Defendants for tortious interference with contract (Count VII), tortious interference with prospective contracts (Count VIII), abuse of process (Count IX), and civil conspiracy (Count X).  These state law claims are based upon the same conduct that underlies the federal claims.  Specifically, Plaintiffs' state law claims assert that Defendants' prosecution of the Conditional Use Appeal and/or Land Use Appeal was unlawful.  *See* Compl. ¶¶ 429-32, 439-40, 445, 450, 455.

When, as here, state tort claims are based upon the same petitioning activity as federal antitrust claims, those tort claims also fail under the *Noerr-Pennington* doctrine.  *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999) (affirming dismissal of malicious prosecution, tortious interference, and unfair competition claims under *Noerr-Pennington*); *see also Arthrocare Corp. v. Smith & Nephew, Inc.*, No. 01-504, 2004 U.S. Dist. LEXIS 4579 at *8 (D. Del. Mar. 10, 2004) ("Although originally developed in the antitrust context, courts have applied [the *Noerr-Pennington*] doctrine universally to business torts"); *Trs. of the Univ. of Pa.,* 940 F. Supp. 2d at 243-44, 247 (dismissing tortious interference claim based on alleged "sham" litigation under *Noerr-Pennington* doctrine); *VIM Inc. v. Somerset Hotel Ass'n*, 19 F. Supp.2d 422, 430 (W.D. Pa. 1998) (dismissing claims for civil conspiracy, wrongful use of civil process, abuse of process, and intentional interference with contractual and prospective business relationships under *Noerr-Pennington* doctrine).  Accordingly, Plaintiffs' state law claims fail for the same reasons as their federal antitrust claims.

2.    **The Tortious Interference Claims Fail For the Separate Reason that Pennsylvania Law Does Not Recognize Claims Based on Alleged Interference with Plaintiffs' Performance of a Contract**

Count VII of the Complaint alleges that, by litigating the Conditional Use Appeal and Land Use Appeal, Defendants tortiously interfered with UGE's lease with Royal Farms.  *See* Compl. ¶¶ 425-48.  To state a claim for tortious interference with contract or business expectancy under Pennsylvania law, a plaintiff must allege "(1) the existence of a contractual relationship [or prospective business relationship] between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm the contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) damages to the plaintiff as a result of the defendant's conduct." *Acclaim Sys. v. Infosys Ltd.*, 679 F. App'x 207, 210 (3d Cir. 2017) (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 433 (3d Cir. 2013)).

Pennsylvania generally follows the Restatement (Second) in its analysis of tortious interference claims.  *Id.* (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 215 (3d Cir. 2009)).  Sections 766 and 766A of the Restatement address two types of claims for tortious interference with contract.  Section 766 of the Restatement provides for liability where the defendant's interfering acts are directed at the third party to the contract:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person **by inducing or otherwise causing the third person not to perform the contract**, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (emphasis added).

By contrast, Section 766A provides for liability where the interference is directed at the plaintiff:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between

another and a third person, ***by preventing the other from performing the contract or causing his performance to be more expensive or burdensome***, is subject to liability to the other for the pecuniary loss resulting to him.

*Id.* § 766A (emphasis added).

Pennsylvania law distinguishes between these two types of interference.  While Pennsylvania law permits tortious interference claims consistent with Section 766 of the Restatement, the Third Circuit has recognized that the Pennsylvania Supreme Court has never adopted Restatement (Second) § 766(A).  *See Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co*., 40 F.3d 63, 66 (3d Cir. 1994); *Windsor Sec. Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 660-61 (3d. Cir. 1993); *Karpf v. Mass. Mut. Life Ins. Co.*, No. 10-1401, 2018 U.S. Dist. LEXIS 33303, at *41 (E.D. Pa. Feb. 28, 2018) (citing *Windsor* and noting that Pennsylvania's failure to adopt Section 766A created a conflict with the laws of Massachusetts and New Jersey); *Clark Distrib. Sys. v. ALG Direct, Inc.*, 12 F. Supp. 3d 702, 725 (M.D. Pa. 2014) (citing *Gemini* and dismissing claims); *see also Phillips v. Selig*, 959 A.2d 420, 436 n.13 (Pa. Super. 2008) (noting that Section 766A "has not been recognized by a Pennsylvania appellate court as the law of this Commonwealth.").

Plaintiffs' Complaint makes clear that Defendants' alleged interference with the Royal Farms lease was directed at UGE, not Royal Farms, and therefore is not cognizable under Pennsylvania law.  The Complaint admits that it is UGE's responsibility under the Royal Farms lease to secure approvals necessary for the development of the site.  Compl. ¶ 103.  Plaintiffs allege that the Conditional Use Appeal and Land Use Appeal were taken "to hinder, impede, delay, obstruct and/or prevent UGE" from securing such approvals.  *Id*. ¶ 277; *see also id.* ¶¶ 278, 310, 320.  In other words, the crux of Plaintiffs' Complaint is that Defendants caused

UGE's performance of the lease to be more burdensome, not that Defendants somehow caused Royal Farms to breach that contract.[15]  As a result, Count VII fails as a matter of law.

Count VII of the Complaint alleges that, by litigating the Conditional Use Appeal and Land Use Appeal, Defendants tortiously interfered with UGE's potential leases with eight prospective tenants in other buildings at the Property (should the Property be developed as UGE intends).  This claim fails on the same ground as Count VII because Section 766B of the Restatement (Second) of Torts § 766B, which addresses tortious interference with potential contractual relations, includes the same distinction as between Section 766 and 766A.  Specifically, Section 766B(a) provides for liability where interference is directed toward a third party and 766B(b) addresses liability where interference directed at the complaining party.  The Pennsylvania Supreme Court has not substantively addressed Section 766B and, in particular, the distinction between 766B(a) and (b).[16]  However, guided by the Third Circuit's treatment of the

---

[15]    Recognizing this flaw, Plaintiffs baldly assert that "Defendants directed their interference at Royal Farms" in Paragraph 433 of the Complaint.  However, this "threadbare" legal conclusion flies in the face of all the factual allegations of the Complaint and need not be credited by the Court.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[16]    The Pennsylvania Supreme Court acknowledged a cause of action for tortious interference with potential contractual relations as set forth in Section 766 of the Restatement (First) of Torts.  *See Glenn v. Point Park Coll.*, 272 A.2d 895, 897 (1971).  The First Restatement, however, provides for liability only where the defendant causes a third party not to enter into a contract.  In *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (1979), the court made reference to Section 766B in noting that the Restatement (Second) of Torts had adopted separate sections for (a) tortious interference with contract and (b) tortious interference with potential contractual relations.  *Id.* at 470.  However, the claim at issue was analyzed pursuant to the standards adopted with the First Restatement, which, again addresses interference directed at a third party.  The Pennsylvania Superior Court has made conflicting statements as to whether the Pennsylvania Supreme Court has adopted Section 766B.  *Compare Ciampa v. Conversion Scis., Inc.*, 2015 Pa. Super. Unpub. LEXIS 4491, at *43, (Pa. Super. Ct. 2015) (stating that Pennsylvania Supreme Court has adopted section 766B but citing to *Glenn, supra*), *with Salsgiver Commc'ns., Inc. v. Consol. Commc'n. Holdings*, 150 A.3d

distinction between Sections 766 and 766A of the Second Restatement, federal courts within the Third Circuit have consistently predicted that the Pennsylvania Supreme Court would distinguish those two sections of 767B in the same manner as described above. *See Karpf,* 2018 U.S. Dist. LEXIS 33303, at *47-48 (collecting cases).

Like Count VII, Count VIII only alleges interference directed at UGE, and not at any of the eight alleged potential tenants.  Plaintiffs allege that the Conditional Use Appeal and Land Use Appeal made it more difficult for them to develop the site by preventing them from entering into leases with potential tenants.  Compl. ¶¶ 277-78, 437-42.  Plaintiffs have not alleged that Defendants had any contact with any of the potential lessees or took any action towards those lessees.  Indeed, it would have been impossible for Defendants to do so, because Defendants did not know the identity of any potential tenants.  Accordingly, Count VIII must also be dismissed.

---

957, 964-65 n.8 (Pa. Super. Ct. 2016) ("The Pennsylvania Supreme Court has not explicitly adopted Section 766B of the Second Restatement.")

## IV.     CONCLUSION

PPS's zoning challenges easily pass muster under the standard set by the Supreme Court and rigorously applied in this Circuit for sham litigation, as well as the test for serial petitioning.  For these reasons and others set forth above, Plaintiffs' federal antitrust claims and their state law claims all fail as a matter of law.  The Court should grant Defendants' motion to dismiss.

January 8, 2021

/s/ *Leslie E. John*
Leslie E. John (PA ID 62290)
Edward D. Rogers (PA ID 69337)
Thomas J. Gallagher IV (PA ID 316269)
Emilia L. McKee Vassallo (PA ID 318428)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Phone: (215) 665-8500
Fax: (215) 864-8999

*Attorneys for Defendant, Wawa, Inc.*


/s/ *Barbara T. Sicalides*
Barbara T. Sicalides, Esquire
Frank H. Griffin, IV, Esquire
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, Pennsylvania 19103-2799
Phone: 215-981-4000
Fax: 215-689-4532

*Attorneys for Defendants Provco Pinegood Sumneytown, LLC, Bruce Goodman, Gerald Holtz, Provco Group LLC, The Provco Group, Ltd., Provco Ventures I, L.P., and Provco Real Estate*