## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UPPER GWYNEDD EQUITIES, LLC** | : | |
| 1000 Lenola Road, Bldg. 2, Suite 100 | : | |
| Maple Shade, NJ 08052 | : | CIVIL ACTION NO. 20-cv-2819 |
| | : | |
| AND | : | |
| | : | |
| **RETAIL SITES, LLC** | : | |
| 1000 Lenola Road, Bldg. 2, Suite 100 | : | |
| Maple Shade, NJ 08052 | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| **PROVCO PINEGOOD** | : | |
| **SUMNEYTOWN, LLC** | : | |
| Two Villanova Ctr. | : | |
| 795 East Lancaster Avenue | : | |
| Villanova, PA 19085 | : | |
| | : | |
| AND | : | |
| | : | |
| **WAWA, INC.** | : | |
| 260 W Baltimore Pike | : | |
| Media, PA 19063 | : | |
| | : | |
| AND | : | |
| | : | |
| **BRUCE GOODMAN** | : | |
| c/o Goodman Properties | : | |
| 36 Old York Rd, Second Floor, | : | |
| Jenkintown, PA 19046 | : | |
| | : | |
| AND | : | |
| | : | |
| **GERALD HOLTZ** | : | |
| c/o Provco Group LLC | : | |
| Two Villanova Ctr. | : | |
| 795 East Lancaster Avenue | : | |
| Villanova, PA 19085 | : | |
| | : | |
| AND | : | |
| | : | |

**PROVCO GROUP LLC**                                  :
Two Villanova Ctr.                                   :
795 East Lancaster Avenue                            :
Villanova, PA  19085                                 :
                                                     :
     AND                   :
                                                     :
**THE PROVCO GROUP, LTD.**                           :
Two Villanova Ctr.                                   :
795 East Lancaster Avenue                            :
Villanova, PA  19085                                 :
                                                     :
     AND                   :
                                                     :
**PROVCO VENTURES I, L.P.**                          :
Two Villanova Ctr.                                   :
795 East Lancaster Avenue                            :
Villanova, PA  19085                                 :
                                                     :
     AND                   :
                                                     :
**PROVCO REAL ESTATE**                               :
Two Villanova Ctr.                                   :
795 East Lancaster Avenue                            :
Villanova, PA  19085                                 :
                                                     :
     AND                   :
                                                     :
**ABC ENTITIES Nos. 1 to 5**                         :
                                                     :
     AND                   :
                                                     :
**JOHN DOES Nos. 1 to 10**                           :
                                                     :
     *Defendants.*         :

## AMENDED COMPLAINT

Plaintiffs, Upper Gwynedd Equities, LLC ("UGE") and Retail Sites, LLC, ("Retail Sites") (collectively, "Plaintiffs"), by and through its counsel, Timoney Knox, LLP, file this Amended Complaint against Defendants Wawa, Inc. ("Wawa"), Provco Pinegood Sumneytown, LLC ("Provco"), Bruce Goodman ("Goodman"), Provco Group LLC, Provco Group, LTD., Provco

Real Estate, Provco Ventures I, L.P., (collectively, "Provco Group") and Gerald Holtz ("Holtz"), (collectively, "Defendants"), along with defendants ABC Entities Nos. 1 through 5 (names being fictitious and unknown but described as those entities associated with Goodman, Provco, Provco Group, Holtz and Wawa, that assisted with and promoted the use of sham litigations, anti-competitive acts, and the other conduct alleged herein) and John Does Nos. 1 through 10 (names being fictitious and unknown but described as those individuals associated with Goodman, Provco Provco Group, Holtz, and Wawa, that assisted with and promoted the use of sham litigations, anti-competitive acts and the other conduct alleged herein), and aver as follows:

## PRELIMINARY STATEMENT

1.      This is a claim for attempted monopolization of neighborhood retail projects with multiple commercial uses and tenants ("NRP"), in this instance, one use of which is a hyper-convenience store market and the hyper-convenience store real estate site market in Upper Gwynedd Township,[1] Montgomery County, Pennsylvania, at and near the intersection of Sumneytown Pike and Church/Road West Point Pike.

2.      NRPs typically consist of an integrated development of one or more buildings with multiple tenants and uses, often anchored by a key retail tenant such as a hyper-convenience store, supermarket, drug store and/or restaurants that each benefit from the frequent shopping trips generated by each use in the project and particularly the continual high volume of customers attracted to the project by the anchor tenant.  The leasing, sales and financial success for both the tenants and the landlord of NRPs are highly dependent on the various factors:

a)      Existence of all or the majority of the stores opening in close time proximity to one another and remaining open during the term of the leases.  That is why many tenants insist

---

[1] Hereinafter, Upper Gwynedd Township shall be referred to as "the Township."

on provisions co-opening[2] and co-tenancy[3] provisions in their leases.

        b)      The NRP having an anchor tenant that attracts the type of customers that the remaining tenants have found also shop at their stores.

        c)      The NRP being located at a highly traveled and desirable intersection on main roadways with a traffic light, demonstrating approximately 15,000 average daily trips.

        d)      Predictability of the completion of the construction of the NRP, to accommodate the timelines and schedules of tenants to relocate to the project or open a new location.[4]

        e)      Demographics within 1, 3 and 5 miles which include factors meeting or exceeding set numbers for that particular tenant or use, including

        i)      minimum population.

        ii)      average or median household income.

        iii)      daytime population.

        iv)      sufficient parking typically meaning four (4) to five (5) parking spaces per every 1,000 square feet of store area.

        v)      safe ingress and egress with at least one left turn entering and exiting the site.

        vi)      adequate road and building signage.

        vii)      acceptable rent and additional charges for sales projected for a

---

[2] Co-Opening refers to a provision whereby Tenant B is not required to open their store or pay rent until the anchor tenant(s) is/are open for business.

[3] Co-Tenancy refers to a provision whereby a tenant can reduce their rent by 50% or more or only pay a rent equal to a set percentage of their sales if the anchor tenant(s) close(s) for more than a very short period of time.

[4] If the landlord cannot accurately set a project completion date many tenants will not proceed to negotiate letters of intent or leases.

particular location and store.

g.    The landlord willing perform certain "fit-up" work and /or provide the tenant with adequate "tenant allowance" for costs incurred by the tenant to construct appropriate interior improvements.

3.    The hyper convenience store market, whether or not included within an NRP, is driven primarily by the following factors, which few sites possess:

a)    drive-by traffic of at least 20,000 at the intersection;

b)    located at a traffic light;

c)    high number of daytime employees in close proximity;

d)    sufficient households and residents nearby with sufficient income;

e)    safe access from all directions particularly with the availability of at least one left hand turn;

f)    visibility of the store and gas canopy from a distance while driving;

g)    a parcel of two to four acres, large enough to fit prototypical hyper-convenience store building of 4,000-6,000 square feet and 8-16 gas pumps;

h)    site zoned properly or in township willing to permit the use; and

i)    lack of another hyper–convenience store competitor in the market area.

4.    The outer edges of these market areas are often within a seven (7) minute drive time from a site.

5.    The market at issue here, servicing, generally, a seven-minute drive time of the Sumneytown Pike and Church/Road West Point Pike intersection, is centered around the Merck Sharp & Dome Corporation's two (2) West Point campuses ("Merck"), which together employ approximately 12,500 people.

5

6.      One of Merck's campuses is 0.1 miles to the west along Sumneytown Pike and extends from West Point Pike west to South Broad Street and is the worldwide center for Merck's vaccine production ("Merck Plant") and encompasses approximately 310 acres.

7.      The second Merck campus is approximately 60 acres contains over 200,000 square feet of offices for Merck ("Merck Offices") and is located 0.4 miles to the east of the Merck Plant on Sumneytown Pike.

8.      According to the Pennsylvania Department of Labor and Industry, Merck is the largest employer in Montgomery County, Pennsylvania, as of the third quarter of 2019 and is by far the largest employer in the Township.

9.      This market is also defined as the traffic that travels along the primary traffic arteries in the area:  Sumneytown Pike and Church Road/West Point Pike,[5] within a seven-minute drive distance around the said intersection ("Sumneytown Pike Corridor Market").

10.      As is set forth below, Defendants and the other unknown defendants, are engaged in an illegal scheme designed to injure and prevent competition in the NRP and hyper-convenience store market and the NRP and hyper-convenience store real estate site market in the Sumneytown Pike Corridor Market and to hinder, delay or stop UGE's NRP, to prevent UGE from leasing space in its NRP to tenants and to interfere with UGE's lease agreement with its tenant, Royal Farms, a direct competitor in these markets with Provco Group, Provco and its client and its tenant, Wawa.

11.      Defendants' actions are also meant to harm UGE and prevent it from leasing to its other prospective tenants, and to exclude UGE and its tenant, Royal Farms, from the relevant NRP and  hyper-convenience store real estate site markets, as more fully alleged herein, all

---

[5] Also known as Church Road.

through the use of a series of sham litigations, conspiracy in restraint of trade, other anti-competitive acts, and tortious conduct, with the design to delay and/or prevent the development and construction of the proposed improvements and buildings on the UGE Parcel, for the benefit and use of UGE's tenants and prospective tenants, including a Royal Farms hyper-convenience store ("Royal Farms Store").

12.     If successful in their sham litigations and other tortious and anti-competitive acts, the Defendants would effectively eliminate a new NRP and new convenience or hyper-convenience store competitor in the geographic area providing the goods and services associated with hyper-convenience stores and likewise eliminate a competitor in the hyper-convenience store real estate site market, all within the Sumneytown Pike Corridor Market.

13.     By improperly preventing the operation of a Royal Farms, Defendants also shield Wawa's nearby stores, including a Wawa that is a tenant at an NRP, a multiple store shopping center owned by Provco Pinegood Lansdale, LLC, at 1601 Valley Forge Road, the intersection of Sumneytown Pike and Valley Forge Road, approximately 1.4 miles west of the instant intersection.

14.     By improperly preventing the operation of additional retailers and commercial uses in Plaintiff's NRP, Defendants also shield their other tenants or prospective tenants within their NRP, a multiple store shopping center owned by Provco Pinegood Lansdale, LLC, at 1601 Valley Forge Road, the intersection of Sumneytown Pike and Valley Forge Road, approximately 1.4 miles west of the instant intersection.

15.     By preventing the operation of additional retailers and commercial uses, including Plaintiff's NRP, Defendants also shield their sales at a CVS pharmacy owned by Goodman at CVS, 799 Sumneytown Pike #791, Lansdale, PA 19446 the intersection of Sumneytown Pike

and Valley Forge Road, approximately 0.7 miles west of the instant intersection.

16.    The elimination of open and fair competition is the dominating driving factor behind Defendants' malicious, tortious, anti-competitive and unlawful conduct described herein.

17.    The Sherman Act, 15 U.S.C. § 1, *et seq.*, was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade and rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the preservation of democratic political and social institutions.

18.    As with all other markets, the market for NRPs and hyper-convenience stores, and related real estate development and operations, requires that competitors be allowed to enter the marketplace free from the disruptive practices of would-be monopolists seeking to curtail competition.

19.    Here, Defendants and the other yet unknown defendants (both corporate and individual) have sought to create and/or maintain a monopoly position in the Sumneytown Pike Corridor Market through a series of concerted acts designed to restrain and impede UGE's lawful plans to develop a directly competitive multiple tenant NRP and hyper-convenience store and develop and operate a hyper-convenience store anchored center at the Property.

20.    These acts by Defendants include, *inter alia*, sham litigations in the form of frivolous, baseless and meritless appeals of two municipal approvals in favor of UGE; conspiracy in restraint of trade; tortious interference with existing and prospective contractual and business relations; and the abuse of process.

21.    Defendants' agreements, conspiracy and actions are designed to achieve an illegal

anti-competitive objective—preventing the development of a competing multiple tenant NRP and hyper-convenience store and the development of a hyper-convenience store anchored center by UGE, thereby excluding Royal Farms and UGE from the relevant marketplaces and preserving the monopoly positions of Provco and Wawa within the marketplace.

22.     Plaintiffs' instant action is designed to end the Defendants' unlawful scheme and to award UGE damages under the Sherman Act and compensatory and punitive damages in an amount commensurate with Defendant's illegal anti-competitive conduct, and malicious and tortious conduct as alleged herein, and to unburden the marketplace to the benefit of local consumers and the traveling public within the Sumneytown Pike Corridor Market.

## THE PARTIES

## Upper Gwynedd Equities, LLC

23.     Plaintiff UGE is a Pennsylvania limited liability company with its principal place of business at 1000 Lenola Road, Bldg. 2, Suite 100, Maple Shade, NJ  08052.

24.     UGE is the owner of certain real property which consists of approximately 4.56 acres located in Upper Gwynedd Township, Montgomery County, Pennsylvania, being tax parcel no. 56-00-08293-00-3, addressed as 467 Sumneytown Pike and located near the intersections of Sumneytown Pike and West Point Pike, all as previously defined herein as the "Property."

25.     The Property is zoned C-Commercial.

26.     On August 20, 2019 UGE closed on its purchase of the Property.

27.     UGE is a developer and owner of multiple retail shopping centers and free-standing retail uses including, but not limited to Royal Farms and its parent Two Farms, Inc., and routinely develops new locations for Royal Farms stores and other retailers, service, food service, medical and other commercial corporations.

1643994-3

28.    In connection with this matter and the Property, UGE is affiliated with and is the successor in interest of Hartford Properties, LLC ("Hartford").

29.    Robert M. Hill is the Managing Member of both Hartford and Upper Gwynedd Equities LLC and owns the majority membership interest in both entities.

30.    Both Hartford and UGE have the same business address of 1000 Lenola Road, Bldg. 2, Suite 100, Maple Shade, NJ 08052.

31.    Specifically, in connection with this Amended Complaint, UGE is developing the Property for mixed-use NRP, including the operation of the Royal Farms Store.

32.    Herein, references to UGE may include actions, conduct, benefits, and rights, of Hartford, all of which were assigned to, and inure to the benefit of, UGE, assignee of Hartford, in connection with its equitable interest in the Property and the Royal Farms Lease with Royal Farms in connection with the Property, as subsequently modified (collectively, "Royal Farms Lease").

## Retail Sites, LLC

33.    In connection with this matter and the Property, UGE is affiliated with Retail Sites, LLC.

34.    Retail Sites is a New Jersey limited liability company with its principal place of business at 1000 Lenola Road, Bldg. 2, Suite 100, Maple Shade, NJ  08052.

35.    Retail Sites is 100% owned by Robert M. Hill.

36.    Retail Sites is the designated leasing agent and property manager for UGE.

37.    Retail Sites also performs construction management services for UGE.

38.    Retail Sites also performs approval, permitting and financing services for UGE.

39.    In connection with this matter UGE engaged Retail Sites for leasing and

management of the Property as it relates to both the Royal Farms Store and Buildings A and B.

40.    Further, UGE engaged Retail Sites as its construction manager for both the Royal Farms Store and Buildings A and B.

41.    In connection with those services, Retails Sites would have otherwise been entitled to commissions, payment and compensation, for the leasing and management of the Property, and construction management, but for Defendants' and other named but unknown defendants' anti-competitive, tortious and malicious conduct.

**Provco Pinegood Sumneytown, LLC**

42.    Provco Pinegood Sumneytown LLC (previously defined as "Provco") is Pennsylvania limited liability company organized to develop a Wawa store on certain real estate owned by Provco, as alleged herein.

43.    Provco's principal place of business is addressed as Two Villanova Center, 795 East Lancaster Avenue, Villanova, PA  19085.

44.    Provco is an entity affiliated with the group of defendants previously identified as the Provco Group, as more specifically alleged below.

45.    Provco is just one of numerous other entities affiliated with the Provco Group.

46.    These separate affiliated entities, most of them limited liability companies, ("Provco Affiliates") build and develop Wawa stores throughout the Philadelphia metropolitan area, and other markets, including, in the case of the Defendant Provco, the Sumneytown Pike Corridor Market.

47.    These Wawa stores/locations often are themselves considered an NRP, particularly when configured as a hyper-convenience store.

48.    Virtually all, if not all, of the Provco Affiliates and the Provco Group, share the

11

1643994-3

same, or similar, address of Two Villanova Center, 795 East Lancaster Avenue, Villanova, PA 19085.

49.     On information and belief, the Provco Affiliates, are one of the largest, if not the largest, developers of new Wawa stores in the Philadelphia metropolitan market.

50.     Specifically, in connection with this Amended Complaint and the relevant market, Provco is attempting to develop a Wawa hyper-convenience store at the intersection of Sumneytown Pike and West Point Pike, ("Wawa Store"), being Montgomery County tax parcel nos. 56-00-08527-00-3, 56-00-08524-00-6 and 56-00-08521-00-9 ("Provco Parcels").

51.     Provco is the legal owner of the Provco Parcels.

52.     As shown on the plan of the intersection of Sumneytown Pike and West Point Pike/Church Road, Upper Gwynedd Township, Montgomery County, Pennsylvania, attached hereto as **Exhibit "A,"** the site for Provco's proposed Wawa Store is comprised 2.56 acres in total and is zoned C-Commercial.

53.     The Provco Parcels are located at the southwestern corner of Sumneytown Pike and West Point Pike diagonally across Sumneytown Pike from the Property.

54.     As alleged herein, Provco, itself, and through the Provco Affiliates, has extreme and substantial monopoly power in the market of hyper-convenience store real estate sites and within the Sumneytown Pike Corridor Market.

### The Provco Group Defendants

55.     Provco Group LLC, Provco Group, LTD., Provco Ventures I, L.P., and Provco Real Estate are entities which operate together to further a common, overarching function and purpose, and each operating with a distinct purpose to further the business and opportunities of itself and the others of the Provco Group, the Provco Affiliates, including Provco, and of the

12

members and partners, including Goodman and Holtz.

56.     In connection with this matter, each of these entities has, in part, overlapping officers, members, partners and/or management, including Goodman and Holtz.

57.     Each of these entities participates with the Provco Affiliates, including Provco, without limitation, through direction, management, or the allocation of resources, sharing of client base, including marketing, market and real estate research, financing, or otherwise, and to develop and lease Wawa stores, in all configurations, but currently, as to new development, in the hyper-convenience store configuration as alleged herein.

58.     Each of these entities are agents of Wawa for purposes of this matter, and in general, as it relates to the development and leasing of Wawa stores as alleged herein, including in connection with the relevant markets.

**Gerald Holtz**

59.     Defendant Gerald Holtz, ("Holtz") is a member of Provco, President of Provco Real Estate, and Vice President of Provco Ventures I, L.P.

60.     Holtz is an experienced, seasoned and highly successful developer and lessor of real estate who has developed projects that include such national tenants as Staples, Citibank, Starbucks, CVS, Wawa, Wilmington Trust, Shoprite, Men's Warehouse, Fed EX Kinkos, and Raymour Flanigan.

61.     Holtz has also developed and leased Wawa stores.

62.     Holtz as President of Provco Real Estate, Vice President of Provco Ventures I, L.P., and a member of the Provco Group, served as a principal decision maker on behalf of Provco in connection with the conduct alleged in this Amended Complaint.

63.     Further, Holtz, in his aforementioned capacities served as an agent of Wawa.

**Bruce Goodman**

64.     Defendant Bruce Goodman, ("Goodman") is a member of Provco, and is an experienced, seasoned and highly successful developer and lessor of real estate, including developing and leasing to Wawa.

65.     Bruce Goodman is also the founder, President and a principal owner of Goodman Properties.

66.     At all times material hereto, Goodman served as a primary and principal decision maker on behalf of Provco in connection the conduct alleged in this Amended Complaint.

67.     Further, Goodman, in his aforementioned capacities, served as an agent of Wawa.

**Wawa, Inc.**

68.     Defendant Wawa, Inc., ("Wawa") is a corporation existing under the laws of the State of New Jersey, with its principal place of business at 260 W. Baltimore Pike, Media, Delaware County, Pennsylvania 19063.

69.     Wawa is in the business of, in part, owning and operating the familiar Wawa convenience stores with all new locations comprising large stores of 4,000 square feet to 5,500 square feet with six (6) to ten (10) fueling positions.

70.     These types of convenience stores are referred to as hyper-convenience stores according to the National Association of Convenience Stores.

71.     Wawa continues to operate older "traditional" or "expanded" convenience stores of 2,500 to 3,600 square feet in size without any fueling facilities.

72.     Wawa operates expanded convenience stores within the relevant market area.

73.     These convenience stores are also NRPs.

74.     A Provco Affiliate, Provco Pinegood Lansdale, LLC, owns one of these Wawa

expanded convenience stores located within the Sumneytown Pike Corridor Market and located at the intersection of Sumneytown Pike and Valley Forge road approximately 1.4 miles to the west of the Sumneytown Pike and Church Road/West Point Pike intersection.

75.    Provco, the Provco Affiliates, Provco Group LLC and Provco Group, LTD., and Wawa are separate entities and are not merely subdivisions of one another.

76.    At all times material hereto, as alleged herein, Provco, the Provco Group, Holtz and Goodman served as Wawa's agents clothed with apparent authority in connection with the development of the Wawa Store upon the Provco Parcels.

77.    At all times material hereto, Provco, the Provco Group, Holtz and Goodman transacted business, made and acted upon decisions, representations and made or authorized official filings and applications, among other conduct as alleged herein, on behalf of Wawa as its agent.

78.    At all times material hereto, Provco, the Provco Group, Holtz and Goodman transacted business, made and acted upon decisions, representations and made or authorized official filings and applications, among other conduct as alleged herein, with the apparent authority of Wawa.

79.    As alleged herein, Wawa has extreme and substantial monopoly power in the market of hyper-convenience stores and within the Sumneytown Pike Corridor Market as well as the wider Philadelphia metropolitan market.

## ABC Entities Nos. 1 to 5 and John Does Nos. 1 to 10

80.    Defendants ABC Entities Nos. 1 to 5 (names being fictitious and unknown but described as those entities associated with Defendants that assisted with and promoted the use of sham litigations, anti-competitive acts, and the other conduct alleged herein) and John Does Nos.

15

1 to 10 (names being fictitious and unknown but described as those individuals associated with Defendants that assisted with and promoted the use of sham litigations, anti-competitive acts, and the other conduct alleged herein) are corporations and/or business entities and individuals whose names/identities and locations are currently unknown to Plaintiffs.

81.     Plaintiffs will further amend its Amended Complaint to allege the true names and capacities when ascertained of Defendants ABC Entities Nos. 1 to 5 and John Does Nos. 1 to 10.

## JURISDICTION AND VENUE

82.     This action arises under sections of the Sherman Act, 15 U.S.C. §§ 1, 2, and 15, and for violations of the common law of the Commonwealth of Pennsylvania.

83.     This Court has subject matter jurisdiction over this action under at least 28 U.S.C. §§ 1331 and 1332, 15 U.S.C. § 15, and under the principles of supplemental jurisdiction, 28 U.S.C. §1367.

84.     Venue is proper in this judicial district under 28 U.S.C. § 1391 and 15 U.S.C. §§ 15 and 22 in that defendants Goodman and Holtz are Pennsylvania citizens; all Provco Group defendants are Pennsylvania entities,[6] with principal places of business located within Pennsylvania, and Wawa, a New Jersey corporation, with a principal place of business and agents in, and transacting business in, the United States Federal Court's Eastern District of Pennsylvania; and further, all material transactions and occurrences giving rise to the claims herein transpired in the said district.

85.     All Defendants are subject to the personal jurisdiction of this Court under the United States Constitution, the United States Code, the laws of the Commonwealth of Pennsylvania, and the Federal Rules of Civil Procedure.

---

[6] With the exception of Provco Group, LTD., a Delaware entity.

## BACKGROUND FACTS

### The Property, Its Acquisition and Its Development

86.     The Property is located at the center of the Sumneytown Pike Corridor Market, within approximately a quarter-mile of Merck's West Point Campus and related facilities.

87.     Merck employs approximately 12,500 people within a quarter-mile of the Property and the Provco Parcels, which are proposed to be the site of UGE's Royal Farms Store and Provco's Wawa Store, respectively.

88.     The intersection of Sumneytown Pike and West Point Pike carries average daily traffic of approximately 25,000 vehicles per day.

89.     Giant Food Stores initially placed the Property on the market for sale in mid-2014 by way of a phone call from Giant Food Stores ("Giant") real estate representative Todd Robinson to Robert Hill, managing member of Hartford Properties and UGE.

90.     Robert Hill expressed immediate and strong interest in the Property and had multiple conversations with Giant through the remainder of 2014 and early 2015.

91.     Mr. Hill submitted his first written offer to Giant October 27, 2014 with Hartford Properties, LLC as the buyer utilizing Hartford's standard agreement of sale form.

92.     That offer was contingent on receipt of all permits and approval for at least 32,000 square feet of building space.

93.     Hartford Properties and Giant negotiated terms of the final agreement and executed the purchase and sale agreement on November 6, 2015.

94.     Hartford Properties utilizes Retail Sites and its employees and agents to secure approvals and permits for its projects and to manage the construction of its projects.

95.     Retail Sites also performs these tasks for UGE.

17

96.     Hartford Properties utilizes Retail Sites, its employees and agents to secure prospective tenants, negotiate letters of intent, to lease and negotiate and finalize leases with tenants, including Royal Farms on its projects.

97.     Retail Sites also performs these tasks for UGE.

98.     With respect to leasing, Retail Sites and Robert Hill contacted Royal Farms in late 2014 about the location and as to whether Royal Farms would be interested in leasing a portion of the Premises.

99.     Royal Farms was very interested and sent a proposed letter of intent to lease on December 30, 2014, naming Hartford Properties, LLC as the landlord and Royal Farm's parent, Two Farms Inc., as the tenant for a 20-year land lease with 4 options to extend for 5 years each.

100.     Those parties continued to negotiate the terms of the letter of intent through 2015, executing a final letter of intent on October 13, 2015 and the final lease on April 25, 2016.

101.     UGE's project at the Property, including the Royal Farms Store, is known collectively as the Shoppes at Upper Gwynedd.

102.     The Shoppes at Upper Gwynedd will consist of the free-standing Royal Farms Store of 4,649 square feet and eight (8) fueling positions, and two additional separate commercial buildings totaling 24,504 square feet and proposed to have multiple commercial tenants in "Building A" at 10,620 square feet and "Building B" at 13,884 square feet (together, "Buildings A and B").  A true and correct copy of a plan revised February 11, 2020, depicting the Shoppes at Upper Gwynedd is attached hereto and incorporated herein as **Exhibit "B."**

103.     UGE has entered into a lease with Royal Farms contingent upon UGE securing all approvals, acquitting the site and performing certain site work, such as to permit the development and operation upon the Property of a Royal Farms hyper-convenience store.

104.    In the convenience store industry, a "hyper-convenience store" is one that is not less than 4,000 square feet of internal space and offers an array of products and services arranged in departments, and also offer, for example, different variations such as a bakery, deli, or restaurant, or a pharmacy.

105.    Many hyper-convenience stores also sell gasoline, have a large number of employees per shift, substantial parking, extended hours, perhaps twenty-four (24) hours, and service not only those passing in the ordinary course, but also families and senior citizens.

106.    Hyper-convenience stores, and their sites, are located almost exclusively along high traffic count intersections with a minimum count of 15,000 vehicles along one roadway and at least 20,000 along the intersecting roadway.

107.    UGE's Property at the intersection of Sumneytown Pike and West Point Pike is the only available site within the Sumneytown Pike Corridor Market that a) is zoned for the development of a hyper-convenience store; b) supports such a convenience store with sufficient traffic counts; c) is of the appropriate size; and d) possesses safe and approvable access.

108.    Pursuant to the lease between UGE and Royal Farms, UGE bears the burden of obtaining all necessary municipal and government approvals to allow for the construction of the Royal Farms Store.

109.    Pursuant to the lease between UGE and Royal Farms, if UGE fails to obtain the necessary government approvals Royal Farms may nullify the lease.

110.    UGE has secured all approvals needed for Royal Farms, however Royal Farms must still secure its building permit.

111.    At all times material hereto, the aforementioned lease between UGE and Royal Farms has been, and remains, in full force and effect.

1643994-3

112.    If the approvals would not be obtained, the Royal Farms hyper-convenience store and Buildings A and B cannot be built.

113.    If the Royal Farms Store or Buildings A and B are not built, UGE will lose a substantial value of its Property, have little or no cash flow and  suffer additional damages, and will be excluded from the hyper-convenience store site market.

114.    Simultaneously with speaking with Royal Farms, Hartford and Retail Site, LLC, its employees and agents began to seek additional tenants for this NRP because the site can accommodate additional uses and the financial success of the NRP and each individual tenant is highly dependent upon having multiple uses and tenants.

115.    It is critical for the landlord that additional uses be approved, constructed and leased in order to offset the high cost of the land, development expenses and site work.

116.    Naturally, retail and commercial tenants seek compatible co-tenants to increase traffic and cross shopping to their store, which is a hallmark of a successful NRP.

117.    A key component of Plaintiffs' discussions with prospective tenants was the presence of a strong anchor tenant, such as Royals Farms.

118.    All negotiations with prospective tenants were conditioned upon the landlord, in this instance, UGE:

   a) securing zoning and land use modification to allow multiple uses on one lot;

   b) securing all preliminary and final land development approvals.

   c) securing sufficient sewer capacity.

   d) securing acceptable access to the site.

   e) securing acceptable signage for the project.

   f) acquiring the site for project.

g)   building all of the proposed buildings, i.e., the Royal Farms building and Buildings A and B, and delivery of possession to tenant by a firm, predictable date.

119.   If Buildings A and B are not built UGE will suffer significant damages, and the value of the site will be reduced to a fraction of its worth as compared to if all buildings had been constructed and leased.

120.   As set forth more fully below, Defendants have engaged in anti-competitive, tortious, malicious and unlawful conduct, which has prevented UGE from completing the conditional use approval to allow multiple uses on the Property, and which, if continuing unabated, will continue to do so, resulting in a wide array of damages to Plaintiffs.

121.   At all times material hereto, UGE has proceeded with diligence in the past five (5) and one half years in pursuing all necessary financing and municipal and governmental approvals and as of the date of the filing of this Amended Complaint, has obtained all approvals and site remediation work necessary to allow it to apply for permits to construct the Shoppes at Upper Gwynedd, including the Royal Farms Store, after completion and execution by UGE and the Township of the development agreement.

122.   UGE expended great sums on accomplishing the foregoing.

123.   Defendants' conduct, alleged herein, caused, to the detriment of Plaintiffs:

a)   delay of several months in finalizing the necessary development and other agreements with the Township;

b)   delay of approximately 6 months to start demolition of the vacant former Giant;

c)   delay in beginning site work required for the delivery of the Property to Royal Farms;

d)      inability to deliver the Property to Royal Farms;

e)      Royal Farms to delay in the performance of certain acts under the Royal Farms Lease;

f)      delay in the start of construction on Buildings A and B, which requires a valid and final Conditional Use approval;

g)      numerous prospective tenants to not enter into leases for spaces in Buildings A and B;

h)      inability to secure tenants of Buildings A and B because no firm delivery date for those Buildings can be provided, thereby preventing Plaintiffs from securing building permits to start construction of Buildings A and B;

i)      delayed the leasing and the development of the NRP so that it is now caught in a worldwide Covid-19 pandemic that has plunged the Sumneytown Pike Corridor Market, the Philadelphia metropolitan area and the entire World into the most severe economic downturn in modern economic history, all of which has currently and will hinder leasing for years to come;

j)      incurred substantial additional legal and engineering costs to attempt to complete the above items, all being more complicated and requiring more discussion, approvals and agreements with the Township as the result of Defendants' conduct;

k)      lost rent, lost value, and increased carrying costs, such as insurance, taxes, and interest;

l)      lost commissions and management and construction fees.

**Provco's Proposed Wawa Store**

***Background of Wawa Store Site Selection***

124.    Wawa, through one of its developers also expressed interest in purchasing the

22

Property from Giant.

125.    On information and belief, Wawa and/or its agents, Provco, Provco Group, and/or

Goodman and/or Holtz on Wawa's behalf, or for the purposes of Wawa's business and

opportunity, with apparent authority, made or directed there to be made one or more offers to

Giant during its marketing of the Property.

126.    However Giant chose Hartford as the buyer with whom it wanted to negotiate a

purchase and sale agreement for the Property.

127.    Thereafter, Chris Gormley ("Gormley"), a Wawa representative or agent,

contacted Robert Hill and expressed Wawa's desire to enter into a long term lease for a portion

of the Property.

128.    Via email, Gormley wrote:

> *Robert,*
> *I hope the rest of your vacation was enjoyable!*
> *4-30-2015*
>
> *The last time we spoke we had agreed on the next steps of creating a draft plan*
> *and setting up a meeting to discuss our interest and potential acquisition*
> *approaches. Can you please sign and return the attached NDA and let us know a*
> *convenient time for us to meet. All of or schedules are filling up quick and you*
> *had mentioned that you are working under a very quick time table for this site.*
> *I look forward to hearing back from you.*
> *Thanks Chris Gormley*
> *215-900-0040*
>
>
> *From: Gormley, Christopher W.*
> *Sent: Thursday, April 23, 2015 1:18 PM*
> *To: Robert Hill (rmhill@retailsites.net)*
> *Cc: Gormley, Christopher W.; Bratton, Susan*
> *Subject: 4.23.14 NDA Robert Hill-*
>
> *Robert,*
> *This is our "Boiler Plate" NDA that we have with all of our partners. Can you*
> *please sign, scan and return?*
> *I have spoken with Sue and she would be happy to join us to discuss the draft plan*

*and next steps.*
*Please forward us a copy of the plan and your availability to review.*
*Thanks Chris*

**Chris Gormley,** *Regional Real Estate Manager*



*Wawa Real Estate Home Page- Contact information, Surplus & New Site Criteria*

-----------------------------------------------------------------
*Robert,*
*I look forward to meeting with you or setting up a time that we can discuss your site at 467 N Sumneytown Pike North Wales, PA 19454 (Montgomery County PA). I reached out to Todd, regarding the winning developer of the RFP and he was kind enough to forward your contact information. I just moved from NJ to PA and took over the Wawa Growth to North of Philadelphia.  I have attached an updated ICSC flyer with my new territory highlighted in Blue.*
*Please let me know a time when we can discuss, I will try to give you a call at 5pm.*
*Thanks Chris*
*Chris Gormley, Regional Real Estate Manager*
*Cell Phone 215-900-0040*

129.    In this proposal, Wawa's building size, number of fueling positions, parking spaces and land needs were and are still very similar to that which Royal Farms proposed for the Property.

130.    Mr. Hill expressed an openness to discuss an arrangement with Wawa but informed them that he had been and was still negotiating with Royal Farms and could only accommodate one of those uses.

131.    Mr. Hill did convey to the Wawa representative that he was frustrated that Wawa had interfered in another one of Mr. Hill's Royal Farm projects in Hatfield, Pennsylvania, just outside of the Sumneytown Pike Corridor Market and approximately 15 minutes from the Property.

132.    Mr. Hill and a representative of Wawa also had several telephone conversations in

2015 and Mr. Hill received the above emails about Wawa leasing the Property.

133.    Mr. Hill advised Wawa that it was free to make an offer to Hartford for such a lease, however, the Wawa representative stated that Wawa would only do so if Mr. Hill and Hartford signed a confidentiality/non-disclosure agreement.

134.    Mr. Hill inquired of Wawa as to why it required a confidentiality agreement because Royal Farms and most tenants do not require one to negotiate a letter of intent or lease.

135.    The Wawa representative stated that Mr. Hill would be receiving confidential and specialized information on Wawa's requirements for the lease and landlord's required work.

136.    Mr. Hill replied that he believed that he knew already what Wawa planned to develop at the Property, all of it being in-line with convenience store industry standards for a hyper-convenience store with ordinary development and leasing expectations.

137.    After Wawa confirmed that Mr. Hill's presumptions were correct, Mr. Hill advised that there then was no need for a confidentiality or non-disclosure agreement and that Wawa was free to submit a proposal regarding the Property.

138.    Wawa never submitted a proposal regarding the Property.

139.    In the timeframe of 2018 and 2019, in the midst of the facts alleged herein, Goodman, agent of Provco and Wawa, called Mr. Hill several times and in one call inquired as to whether Mr. Hill would be interested in selling the Property.[7]

140.    At all times material hereto, Goodman made this call as a partner of and with apparent authority of Provco, and Wawa, as demonstrated by the facts alleged herein and the content of the referenced telephone call.

---

[7] At this time, UGE's predecessor, Hartford, had the Property under agreement of sale and had not yet closed on the transaction.

141.    On these calls, Goodman specifically expressed several things to Robert Hill:

a)      On the first call, Goodman indicated that he represented Provco regarding the Wawa Store on the Provco Parcels and that Provco was going to obtain its approvals in connection with that project, yet he planned to intervene in a legal action Hartford Properties filed against the Township and a subsequent stipulation agreement that Hartford Properties and the Township had negotiated to end that litigation.  Goodman stated his action was necessary because the Township was not treating him fairly.  Mr. Hill wished Goodman luck on his land application, but told Goodman he saw no reason for Goodman or Provco to interfere with Hartford's Royal Farms project as Hartford was not interfering with Goodman's and Provco's Wawa project and that Mr. Hill's Royal Farms project did not cause any harm to Defendants' Wawa project.

b)      On the second call, approximately one year after the first call, Goodman again called Mr. Hill.  Goodman again represented that he was speaking for Provco and that Provco was going to get the approvals it needed for its Wawa Store but nevertheless wanted to know if Mr. Hill would be willing to sell the Property.  Mr. Hill again wished Goodman good luck on Provco's project at the Provco Parcels but advised that UGE had no interest in selling the Property.

142.    The interest of the Defendants, through its agents, in the Property of UGE from the time it became available through Provco's attempts to stop the approvals of UGE and the request by Mr. Good to purchase the Property clearly demonstrates that Defendants expressed a preference for the Property as the site for the Wawa Store planned for this valuable intersection in the Sumneytown Pike Corridor Market and just .1 miles away from the Merck Plant.

143.    Defendants knew that the Property possessed more developable square footage, could provide more parking, could accommodate a larger building, more fueling positions, better circulation, and room for additional uses within additional structures, and possessed better access

26

and better visibility for passing motorists.

144.    In total UGE's Property provided a more advantageous site for the operation of an NRP containing a hyper-convenience store and other commercial uses in the relevant market than the Provco Parcels.

145.    Indeed, Defendants' attempts to acquire an interest in the Property evidences the rarity of sufficient sites for an NRP having multiple commercial tenants along with the ability to accommodate a hyper-convenience store in the relevant market.

146.    Defendants' attempts to acquire an interest in the Property also demonstrates the Defendants' belief that the Property would support an NRP anchored by a hyper-convenience store.

147.    Defendants' positions are in recognition of the strong economics of the Sumneytown Pike Corridor Market and the intersection of Sumneytown Pike and West Point Pike.

148.    Because Defendants were unable to otherwise secure ownership and/or control of the Property, Defendants instead acquired the much less desirable Provco Parcels for the development of the Wawa Store.

149.    Thereafter, Defendants made every effort to stop, hinder, delay, and restrain, UGE's development of the Property in order to stop the UGE's NRP anchored by a Royal Farms hyper-convenience store

150.    Such a scenario is viewed by Defendants as impermissible and as a threat to Provco's, the Provco Group's and Wawa's monopoly position in the hyper-convenience store market.

***Provco's Unsuccessful Land Development Process for the Wawa Store
and Interference with the Land Development of the Property***

151.    In the first half of 2016 Defendants made application to the Township Zoning

Officer to permit a convenience store with fuel sales, thus beginning its land development

process for its proposed Wawa Store.

152.    As the result of traffic safety concerns, the Township's Board of Commissioners

("Commissioners") denied on two occasions Provco's preliminary land development application,

which denial both the Court of Common Pleas and the Commonwealth Court affirmed.[8]

153.    In addition to unsafe egress too near the intersection of Sumneytown Pike and

West Point Pike, the Provco Parcels are also located in an unsafe proximity to a railroad overpass

to the west along Sumneytown Pike, which, in turn, prevented Defendants from meeting the

Township's minimum standards as to safe sight distances for vehicular traffic exiting and

entering the site.

154.    As discussed hereinafter, just over two weeks after filing its appeal to the

Commonwealth Court of the denials of Provco's Land Development Application, Provco, then

seeking to reverse the Court of Common Pleas and Commissioners respective decisions granting

UGE's Conditional Use appeal, on December 6, 2018 further Provco appealed UGE's

conditional use approval for the Shoppes at Upper Gwynedd, including for the Royal Farms

Store ("Conditional Use Appeal").[9]

---

[8] In part, the Commissioners found that Provco's proposed western Sumneytown Pike driveway is too close to the intersection of Sumneytown Pike and West Point Pike (Church Road) to permit safe egress.  The Commonwealth Court of Pennsylvania affirmed on that basis.  *See In re Provco Pinegood Sumneytown*, LLC, 216 A.3d 512, 515 (Pa. Commw. 2019), *reargument denied*.

[9] The term "Conditional Use Appeal" as used hereinafter, is a term which encompasses the "Commonwealth Court Conditional Use Appeal," hereinafter defined, the latter of which is a constituent in the broader series of sham litigations by Defendants against Plaintiffs.

155.    In pursuing approvals for the Wawa Store, on May 10, 2019 Provco filed a substantive validity challenge on the basis that the Township's ordinances did not allow for a hyper-convenience store like the proposed Wawa Store, or the proposed Royal Farms Store.[10]

156.    On August 8, 2019, the Court of Common Pleas, in ruling against Provco on the Conditional Use Appeal, affirmed the Township Commissioner's decision granting UGE's conditional use approval.

157.    On August 16, 2019 UGE closed on its purchase of the Property from Giant.

158.    On August 26, 2019, the Township granted UGE final land development approval in connection with the Property and the Shoppes at Upper Gwynedd at a public Board of Commissioner's meeting.

159.    Despite notice, Provco elected to not attend the meeting of the Township's Planning Commission or Commissioners at which UGE's proposals and applications for land development were heard.

160.    On September 4, 2019, Provco filed yet another appeal of UGE's Conditional Use approval ("Commonwealth Conditional Use Appeal") to the Commonwealth Court of Pennsylvania challenging the decision of the Court of Common Pleas to uphold the Township's granting of UGE's conditional use approval.

161.    On September 5, 2019, UGE executed the Township's Acceptance of Conditions of Resolution granting UGE its final land development approval in connection with the Property and the Shops at Upper Gwynedd.

162.    On October 17, 2019, determined to stop UGE's land development of the Royal

---

[10] The ordinances of the Township clearly allow hyper-convenience stores in as much as the Royal Farms Store obtained all necessary municipal and governmental approvals, albeit delayed only as the result of Defendants' Conditional Use Appeal.

Farms Store Defendants, filed an appeal to the Court of Common Pleas from the Township's decision to grant land development approval to UGE ("Land Use Appeal").

163.    Provco filed this Land Use Appeal untimely, being filed twenty-two (22) days late after the thirty (30) day period in which such appeals are permitted.

164.    Further, Provco never appeared at any of the underlying proceedings to object or question any part of the UGE Land Development plans.

165.    Provco had no legitimate concerns with UGE's plans but merely intended to resort to sham and improper appeals, filed beyond the statutory appeal period, and filed an illegitimate appeal for the sole purpose to delay UGE further.

166.    Like Provco's Conditional Use Appeal, this Land Use Appeal is also a sham.

167.    Throughout its attempts to stop UGE's Royal Farms Store and UGE's NRP, which includes Buildings A and B and the tenants to occupy those buildings, Defendants have contended that the Township's Commissioners treated UGE more favorably than it did Provco without any evidence or legal basis as to why granting of approvals to UGE harmed Provco in any way.

168.    This unsubstantiated belief by Defendants served as additional animus against UGE as the approval of the UGE NRP has no bearing on the Township's decision to deny or approve Provco's Wawa project, does not cause any additional costs to Provco in connection with its land  development, of the Provco project or prevent Wawa competing in fair and open competition in the Sumneytown Pike Corridor Market and the presence of additional retail stores within the NRP or a Royal Farms, is not counter to the principals of a free market with multiple choices which is of benefit to the consumer.

169.    In April 2018, in the course of Provco's appeal of the Township's denial of its

land development application, while before the Court of Common Pleas, Defendants bulk-mailed a post-card ("Wawa Postcard") to the residents of the Township wherein Provco and/or Wawa voiced out against the Township's Commissioners and its alleged unfavorable treatment of Provco and/or Wawa.  A true and correct copy of said post-card is attached hereto and incorporated herein as **Exhibit "C."**

170.    Defendants' intent in the mailing of the Wawa Postcard was to create political pressure on the Board of Commissioners to grant Provco its approvals or deny the approvals sought by UGE or both.

171.    Further, as between the Commissioners and Defendants, Defendants created so much misinformation and litigated in a manner which sets aside all basis, subjective and objective, as to the merits of the legal positions taken, that the Township published a detailed account on its public website, https://www.uppergwynedd.org/, wherein the Township provides a narrative of the costly litigation undertaken by Defendants in pursuing the approval of the Wawa Store and also trying to stop or delay UGE's Royal Farms Store.  A true and correct print-out of the publication entitled "Rumor Mill" (accessed April 1, 2020) is attached hereto and incorporated herein as **Exhibit "D**.**"**

**The Relevant Markets**

***The NRP and Hyper-Convenience Store Markets***

172.    The business of hyper-convenience stores is substantial and affects interstate commerce.

173.    The traditional small gasoline service station of the past has been in decline for a number of years through-out the United States.

174.    This is evidenced in a number of ways:

31

a)       The sales of gasoline in the United States over the past ten years has declined by 48%;

b)       Exxon, BP, and Shell Oil Companies, and other similarly situated companies, have been selling and/or closings hundreds for traditional gasoline service stations, which have typically been purchased by independent third-party distributors who then just buy product from the oil companies and then operate or sub lease the locations to small entrepreneurs who operate between 1-5 units, usually not operating any retail market or only a mini or kiosk retail market selling limited number of pre-packaged and may only have 2- 4 fueling positions;.

c)       Both Wawa and Royal Farms, along with other regional hyper-convenience store companies such as Sheetz and Quick Check, have grown tremendously by providing large sites with stores of 3,000 to 6,000 square feet, 8-12 fueling positions, a wide variety of food and household goods, made to order meals, occasionally on site seating and now even beer where permitted by state law and, in the case of Royal Farms in this matter, it has purchased a full restaurant liquor license in the Township for use at the Property;

d)       The growth of the hyper-convenience store has also eliminated customer's allegiance to the former gas "brands," with customers no longer feeling allegiance to fill their tank with Exxon, or Shell or BP gasoline, etc.;

e)       Retail customers instead now choose a place to patronize based on other non-gasoline brand considerations such as, and without limitation:

i)       Can I buy breakfast or lunch while I get gas?

ii)       Can I find a parking space?

iii)       Can I buy something for dinner?

iv)       Which coffee do I prefer?

     v)     Is it on the way to work or the way home?

     vi)    Are ingress and egress safe?

     vii)   Are the premises clean, safe and well run?

175. The combination of the above factors has intensified pressure on the traditional gasoline station with the result that many are closing.

176. This market effect concentrates the market towards the operators of hyper-convenience stores causing hyper-convenience store operators to search for and 'lock-up' the limited number of new locations that meet the criteria alleged herein and be approved by the multitude of governmental agencies that must approve land use applications in Pennsylvania and New Jersey.

177. Most travelers prefer to purchase gasoline, coffee, pre-packaged and prepared food, and specialty items such as baked goods, energy and soft drinks, bottled water, and deli items, along their existing path of travel.

178. Modern conveniences and consumer expectations lead to a strong preference by consumers to engage in one-stop shopping for most of their needs, including, with respect to convenience stores.

179. According to the ITE Traffic Manual, the universally used publication in the region for required traffic impact studies needed for submission to governmental agencies, approximately 76% of all consumers of hyper-convenience stores are already traveling and will stop at the store that is "present" along their existing path of travel.

180. Travelers and residents have come to expect in well-developed suburban areas, like the Sumneytown Pike Market Corridor, to be able to engage in a significant shopping experience at a convenience store within a driving distance equivalent of seven (7) minutes or

1643994-3

less.

181.    Given the above consumer expectations, travel time limitations, directional traffic, traffic count, and location at intersections zoned and available for hyper-convenience store use, together with name recognition, financial capital, sufficient site conditions, and a proximity to a traveling population, within seven (7) minutes of driving time from the next nearest competing convenience store, the number of such sites are highly limited and highly sought after by the major hyper-convenience store operators in a given market area.

182.    These barriers to entry are high and are present within the Sumneytown Pike Corridor Market.

183.    As traditional gasoline service stations continue to become obsolete in the market place, the market has and will continue to concentrate in operators or at locations where gasoline sales are combined with the sale of food, beverage and other offerings in the format presented by hyper-convenience stores.

184.    As more particularly described above and herein, all of the foregoing make it both a market driven necessity for operators/tenants to establish hyper-convenience stores and also difficult for new hyper-convenience stores to enter a market, including the Sumneytown Pike Corridor Market.

185.    These factors, among others, make the Property and the Sumneytown Pike/West Point Pike intersection of particular interest to both Royal Farms and Wawa.

186.    The non-gasoline related market factors and considerations alleged above equally apply to NRPs and to Plaintiffs' NRP.

187.    Dominance in the hyper-convenience store market is a boon and can provide a substantial market edge with respect to control of the NRP market, given that hyper-convenience

stores can serve as anchor tenants in NRPs.

188.    By preventing an actor from entering the hyper-convenience store market, a monopolist can exclude that actor from entering the NRP market.

### *The NRP Hyper-Convenience Store and Real Estate Site Markets*

189.    Royal Farms is a direct competitor of Wawa and further, UGE is a direct competitor of the Defendants, through their various interests, including Provco, the Provco Group, the Provco Affiliates, and Wawa, in the development of hyper-convenience stores and NRPs in the relevant market.

190.    All of the barriers to entry into the hyper-convenience store and NRP markets in the Sumneytown Pike Corridor Market are equally applicable and present in connection with the NRP and hyper-convenience store real estate site markets within the Sumneytown Pike Corridor Market.

191.    The business conducted by owners, developers and operators of real estate upon which hyper-convenience stores and NRPs are located and operate, or could be located and operated, is substantial and affects interstate commerce.

192.    In addition to those factors, there are a limited number of potential hyper-convenience store anchor tenants with the necessary pre-existing brand recognition and financial strength to attract consumers to its hyper-convenience store upon its opening and be able to afford the rent necessary for a developer in order to acquire the site, secure all approvals and complete the work required of a landlord and provide sufficient customer traffic to be of value to other tenants in an NRP.

193.    This is one of the reasons that these operators tend to focus on markets in which there is typically one or at most two other competitors.

194.    This is exactly the situation in Sumneytown Pike Corridor Market and the greater Philadelphia metropolitan market.

195.    Wawa is the market leader by a wide margin with over 90% of the hyper-convenience stores in the Greater Philadelphia area.

196.    Wawa dominates the areas surrounding the Sumneytown Pike Market Corridor.

197.    Because of the numerous barriers to entry, entry into the NRP and hyper-convenience store real estate site markets for both the operator and the real estate developer of those sites is already extremely difficult, traffic-sensitive, time consuming and expensive.

198.    In both markets, anti-competitive, monopolistic activities and illegal tactics by market leaders already in the market causes these barriers to entry to be potentially insurmountable, or surmountable at a significantly increased cost in time and resources.

199.    The Sumneytown Pike Corridor NRP and hyper-convenience store real estate site markets is comprised of real and equitable title holders located at or near intersections with sufficient current or expected future traffic counts whose real estate is both legally and physically able to be utilized as a hyper-convenience store and/or NRP in that market area.

200.    Defendants are participants in the NRP and hyper-convenience store real estate site markets in the Sumneytown Pike Corridor and in the greater Philadelphia metropolitan market of which the Sumneytown Pike Corridor is a part.

201.    UGE, Retail Sites and Royal Farms are also a participant in the NRP and hyper-convenience store real estate site markets in the Sumneytown Pike Corridor and in the greater Philadelphia metropolitan region of which the Sumneytown Pike Corridor is a part.

202.    Other than the intersection of Sumneytown Pike and West Point Pike, where the Property and the Provco Parcels are situated, within the Sumneytown Pike Corridor Market,

there are no other: a) existing hyper-convenience store anchored real estate sites, with or without an NRP, or b) real estate sites available which will currently or in the near future support a hyper-convenience store, with or without an NRP.

203.    In the convenience store market, particularly the hyper-convenience store market, the first to operate in a market area typically or very often retains its dominance after the entry of others into the market place.

204.    Thus, Defendants' conduct of blocking the legally permitted and approved use of UGE's Property for a hyper-convenience store advances Defendants' goal of stopping, or in the alternative, significantly slowing, UGE's development of the Property and the operation of the Royal Farms Store such that Wawa will enter the market first.

205.    This strategy by the Defendants results, at least in part, from the poor traffic and sight distance conditions impacting the Provco Parcels which has slowed, and possibly derailed, the land development of a Wawa branded hyper-convenience store at the Provco Parcels.

206.    Further, Merck has, since 2016, actively litigated against Defendants' use of the Provco Parcels for a Wawa branded hyper-convenience store ("Merck Litigation") for the same reason the Township has ruled against Provco's proposed Wawa: safety.

207.    The Merck Litigation also delayed Defendants' land development of the Provco Parcels and, consequently, delayed and possibly derailed, any use of the site as a Wawa branded hyper-convenience store.

208.    This has further entrenched Defendants to block, delay, restrain or otherwise impede the development and operation of a Royal Farms Store at the Property.

209.    Defendants' conduct as alleged in this Amended Complaint, including, but not limited to, its anti-competitive, malicious and tortious conduct, is an attempt to compensate for

the site deficiencies of the Provco Parcels, the Merck Litigation, the superior access of the

Property, and the certain first entry into the market by Royal Farms as a tenant at UGE's the

Shoppes at Upper Gwynedd, and so as to neutralize the Royal Farms Store and the Property,

including but not limited to, as a functioning NRP, in the relevant marketplaces.

210.    The aforementioned neutralization of the Royal Farms Store and the Property is

intended by Defendants to maintain if not expand their monopoly power.

### Wawa Stores in the Relevant Marketplace

211.    Wawa is a private company which owns and operates convenience retail stores,

including hyper-convenience stores, the majority of which include a fuel offer, in Pennsylvania,

New Jersey, Delaware, Maryland, Virginia, Washington D.C. and Florida.[11]

212.    These Wawa stores offer a fresh food and beverage selection under the Wawa

brand including built to order sandwiches, coffee and specialty beverages, wraps, breakfast

sandwiches, bakery products, express items, and dairy products. *Id.*

213.    Wawa is the undisputed and unchallenged hyper-convenience store market leader

in the Philadelphia Metropolitan Area with 302 such stores, which is nearly 95% of the market

share.

214.    In comparison, Royal Farms has just seventeen (17) hyper-convenience stores in

the Philadelphia Metropolitan Area, accounting for just 5.33% of the market share.

215.    The Wawa Store is proposed to be a hyper-convenience store, and would be the

only Wawa-branded hyper-convenience store within the Sumneytown Pike Corridor Market.

---

[11] https://www.forbes.com/companies/wawa/#20f123cb2644 (accessed April 1, 2020).

216.    Within a five (5) minute drive[12] of the Property, being the proposed site for UGE's Royal Farms Store, Wawa operates not less than two other Wawa stores,[13] and of those, none are Wawa hyper-convenience stores.

217.    Within that same five (5) minute drive, there are no Royal Farms stores of any kind.

218.    Wawa has no other hyper-convenience store competition within the five (5) minute driving distance within the Sumneytown Pike Corridor Market.

219.    Wawa has two other expanded[14] or traditional[15] convenience stores competition within the noted five (5) or seven (7) minute driving distance within the Sumneytown Pike Corridor Market.

220.    One of these Wawa stores is approximately one (1) mile to the east on North Wales Road and Beaver Street in North Wales and other is approximately 1.40 miles to the west, at the intersection of Sumneytown Pike and Valley Forge Road in Upper Gwynedd Township, Pennsylvania.

221.    Relevant to this matter, Wawa is the dominant convenience store brand in the market in the Philadelphia Metropolitan Area, Montgomery County, Central Montgomery

---

[12] There are no Wawa or Royal Farms stores of any design or size within the additional two (2) minute driving distance between the five (5) minute distance and the seven (7) minute drive distance. Thus, in the entire seven (7) minute drive distance, there are two (2) Wawa stores in addition to the Wawa Store proposed by Provco.

[13] A Provco Affiliate, Provco Pinegood Lansdale, LLC, is the owner of the Wawa store located at 1601 Valley Forge Road.

[14] According to the National Association of Convenience Stores, an expanded convenience store is one that is graded by size, services and product selection as one category below a hyper-convenience store. https://www.convenience.org/Research/What-is-a-Convenience-Store (accessed April 1, 2020).

[15] A traditional convenience store is one that is graded by size, services and product selection as one category below an expanded convenience store and two grades below a hyper-convenience store. *Id.*

1643994-3

County, Upper Gwynedd Township, and the Sumneytown Pike Corridor Market.

222.    Within those same trade areas Provco, the Provco Group, and/or the Provco Affiliates, are the dominant, if not exclusive, active developers and landlords of Wawa stores.

223.    Further, Provco, the Provco Group, and/or the Provco Affiliates are significant operators of NRPs in the same market areas, in projects concerning those other than Wawa stores, such as CVS.

224.    By their concerted actions, Defendants, through tortious and anti-competitive means, are protecting Wawa's significant market edge/dominance by restraining hindering, thwarting and delaying, and attempting to stop, UGE from obtaining all municipal and governmental approvals so that the Royal Farms Store may operate on the Property.

## The Proposed Royal Farms

225.    The proposed Royal Farms is to be located at the highly advantageous intersection of Sumneytown Pike and West Point Pike, which intersection is also the proposed location of the Wawa Store.

226.    The proposed Royal Farms Store is also located within a seven (7) minute driving distance of the two other Wawa stores mentioned above.

227.    The closest Royal Farms is located approximately 10-15-minute drive west of the Property along Sumneytown Pike at its intersection with the Northeast extension of the PA Turnpike and outside of the Sumneytown Pike Corridor Market.

228.    The only expanded convenience stores located in the Sumneytown Pike Corridor Market are Wawa stores, as alleged.

229.    There are no hyper-convenience stores currently operating in the Sumneytown Pike Corridor Market.

1643994-3

230.    The Royal Farms Store will be the first hyper-convenience store to operate in the Sumneytown Pike Corridor Market, provided that Defendants' anti-competitive, malicious, unlawful and tortious conduct is not successful in delaying or stopping the Royal Farms Store altogether.

231.    The Royal Farms Store, whether first to market, or delayed, will have a significant negative economic impact on the expanded and traditional Wawa convenience stores within the Sumneytown Pike Corridor Market.

232.    The Royal Farms Store is also the anchor tenant for UGE's NRP at the Property and critical to the leasing of Buildings A and B.

233.    There is no other available, or soon to be available, real estate within the relevant market capable of utilization as a hyper-convenience store other than the Property, and the Provco Parcels.[16]

234.    Given the desire of consumers to have single-stop convenience for coffee, snacks, prepared food, beverages and routine grocery items, while also fueling their vehicles, during travel, commuting, or to just 'run out' and obtain necessities, or short-list shopping items, the Royal Farms Store, as a new and superior convenience store choice for consumers in the immediate vicinity of the Provco's Wawa Store and the two other Wawa stores within the seven (7) minute drive time distance within the Sumneytown Pike Corridor Market, would compete directly with Wawa in the same geographic market.

---

[16] As the result of traffic sight distance and proximity to the Sumneytown Pike and West Point Pike intersection, the Township denied land development approval for Provco's proposed Wawa Store. Provco continues to litigate the matter and may have submitted a re-designed site plan. Ultimately, it may be conclusively determined that the Provco Parcels cannot support an economically feasible hyper-convenience store.

1643994-3

235.    Notably, other than the yet-to-be-approved or built Provco Wawa Store,[17] none of the Wawa stores within the seven (7) minute drive time distance in the Sumneytown Pike Corridor Market are hyper-convenience stores.

236.    Rather, all are either expanded or traditional convenience stores and would likely lose consumers if and when the Royal Farms Store becomes operational.

237.    This is a further motive for Provco and Wawa to take anti-competitive, malicious and unlawful actions to stop, or delay, the Royal Farms Store becoming operational.

**Prospective Leasing of Buildings A and B at the Property**

238.    During the course of the land development undertaken for the Property, UGE undertook efforts to change the Township's C-Commercial zoning to allow for multiple uses on a single parcel as a conditional use.

239.    This change of zoning naturally benefitted the Property, as more fully explained below, but also benefitted the Provco Parcels, as C-Commercial zoning applied to those parcels as well.

240.    This change in zoning benefitted the Property to allow the proposed NRP to contain the planned for and approved Buildings A and B as part of the Shoppes at Upper Gwynedd with additional and multiple uses different than the singular convenience store/gas station use, i.e., a hyper-convenience store, in connection with the Royal Farms Store.

241.    It is from this decision by the Township's Commissioners that Defendants appealed, i.e., the Conditional Use Appeal.

242.    The Conditional Use Appeal is sham litigation, malicious, and tortious.

243.    So long as the Conditional Use Appeal was pending, UGE was unable to draw

---

[17] *See* footnote 8, *supra.*

construction loan funds, lease to, and collect rents from, tenants for Buildings A and B and Retail

Sites was unable to earn and collect related construction management fees, commissions and

property management fees.

244.    Building A is proposed to be a multi-tenant structure of 10,620 square feet.

245.    Building B is proposed to be a multi-tenant structure of 13,884 square feet.

246.    Specifically, as depicted on the below charts, UGE and Retail Sites had legitimate

interest in the leases of Buildings A and B.

247.    Each of the listed prospective tenants declined to proceed as a result of the

uncertainty at the Property caused by the Conditional Use Appeal and its ramifications, as

alleged herein and even if any of those prospective tenants had signed leases UGE would not be

able to build the building(s) and provide possession of the premises to the tenants as a result of

Defendants' Conditional Use Appeal.

248.    Due to the uncertainty of the timeline of the Court proceedings, and without a

definitive, predictable  timeline for permitting, construction and occupation of the leased space in

Buildings A and B, none of the below prospective tenants would move forward with executing a

lease, resulting in harm to Plaintiffs, as follows:

**FIGURE 1: Tenants Lost at The Shoppes at Upper Gwynedd Due to Lawsuit Delays**

| | Tenant | SF | Avg. Base Rent/sf | Base Rent/Year | Term (Yrs.) | Total Base Rent Value over Lease |
|---|---|---|---|---|---|---|
| a) | Einstein Primary Care and Moss Rehab | 8,000 | $29.01 | $232,080 | 10 | $2,320,800 |
| b) | Asian Buffet | 8,000 | $28.00 | $224,000 | 5 | $1,120,000 |
| c) | National Nail Salon - CBRE Broker | 2,500 | $30.00 | $75,000 | 5 | $375,000 |
| d) | American Dental Solutions | 2,000 | $37.16 | $74,320 | 5 | $371,600 |
| e) | Nail Salon - Colliers Broker | 2,000 | $30.00 | $60,000 | 5 | $300,000 |
| f) | Pro Martial Arts | 1,600 | $30.00 | $48,000 | 5 | $240,000 |
| g) | Mathnasium | 1,500 | $30.00 | $45,000 | 5 | $225,000 |
| h) | PTW Physical Therapy | 1,200 | $30.00 | $36,000 | 5 | $180,000 |

43

| | | | | |
|---|---|---|---|---|
| **Total Rent Lost:** | 26,800 | **$29.64** | $794,400 | **$5,132,400** |
| Tenant Reimbursements for Taxes, Insurance & Maintenance | | $6.00 | | |
| **AVERAGE  REVENUE PER SQUARE FOOT OVER LEASE** | | **$35.64** | | |

| | | | **LOST REVENUE PER YEAR** | **YEARS** | **LOST REVENUE OVER TIME** |
|---|---|---|---|---|---|
| **Upper Gwynedd Building A & B Losses** | 24,504 | **$35.64** | **$873,323** | **10** | **$8,733,230** |
| | | | | 15 | $13,099,845 |
| | | | | 20 | $17,466,460 |

249.    UGE had prospective tenants available, with a high probability and likelihood that those tenants would have entered into such leases for Buildings A and B but for the uncertainty caused by the sham, improper and abusive Conditional Use Appeal.

250.    Defendants caused the prospective tenants not to proceed with leases of Buildings A and B by creating delays and uncertainty in the minds of the prospective tenants.

251.    Defendants' actions effectively "put a chill" on the additional buildings and uses.

252.    As such, the Conditional Use Appeal caused UGE's lender to prohibit the funding of the entire construction loan so UGE cannot construct Building A and/or Building B until the full and final resolution of the Conditional Use Appeal, and any other appeal, had been decided.

253.    Again, Defendants' Conditional Use Appeal prohibited UGE from even starting or completing Building A or Building B immediately so that it would be available to lease now to whomever has interest.[18]

254.    The following summarily accounts for Plaintiffs' efforts at leasing Buildings A and B as to particular prospective tenants:

---

[18] A provision in UGE's construction loan, and most other construction loans, specifically that no advances for construction of a particularly phase or building can be started or will loan funds be advanced for a project phase beyond acquisition, building demolition and environmental remediation until and unless all final unappealed and unappealable approvals and permits have been secured.

1643994-3

a)      Einstein Primary Care and Moss Rehab:  UGE submitted first letter of intent to Einstein and Moss at their request in January 2017.  The parties exchanged comments and negotiated the letter of intent through April 2019 when tenant ceased discussions because the tenant was unsure that developer could provide a delivery date due to delays in securing approvals.  Such delays were caused by Defendants.

b)      Asian Buffet.  Broker contacted UGE with interest in September 2019.  Conversations did not progress as the result of the Conditional Use Appeal and delays in approvals due to the appeal.

c)      National Nail Salon.  In September 2019 a broker expressed interest for a client who would to like to lease space in the Upper Gwynedd project.  When UGE could not provide a firm delivery date conversations ceased.  Landlord could not provide a firm delivery date because of the Conditional Use Appeal.

d)      American Dental Solutions.  UGE submitted the first letter of intent to American Dental per tenant's request in June 2017.  Tenant however expressed that they would like to be open within six (6) months of signing a lease and negotiations thereafter stalled because UGE has not been able to commit to a delivery date due to Defendants' Conditional Use Appeal.

e)      Nail Salon.  In February 2020 a broker expressed interest for a nail salon client who would like to lease space in the Shoppes at Upper Gwynedd.  When UGE could not provide firm delivery date, conversations ceased.  Again, UGE could not provide a firm delivery date because of the Conditional Use Appeal.

f)      Pro Martial Arts.  In January 2020 a broker expressed interest for a martial arts client who would to like to lease space in in the Shoppes at Upper Gwynedd.  When UGE could not provide a firm delivery date conversations ceased.  UGE could not provide a firm

45

delivery date because of the Conditional Use Appeal.

         g)    <u>Mathnasium</u>.  Tenant contacted UGE with interest in leasing space in the shopping center in December 2018.  In January 2019, tenant indicated that it wanted to be open in 2019 which would not be possible due to the Conditional Use Appeal.

         h)    <u>PTW Physical Therapy</u>.  In June 2017 tenant contacted by UGE. Conversations ceased when UGE could not commit to a firm delivery date due to Defendants' Conditional Use Appeal.  Thereafter tenant signed a lease in Hatfield, Pennsylvania.

255.    On average, UGE had prospective tenants available who were willing to pay base rents of $29.64 per square foot over the first ten (10) years of the lease, along with reimbursement for project taxes, insurance and common area maintenance fees of approximately $6.00 per square foot.

256.    In total, the loss of these tenants creates an approximate loss of $873,323 per year in revenue which equals approximately $8,733,230 in revenue over just the first ten (10) years of the project, and approximately $13,099,845 over the first fifteen (15) years of the project.[19]

257.    The owners of UGE do not sell their developments and have a history of owning them for twenty (20) years or more so the losses are most likely in excess of $17,466,460.

258.    As to each of the aforementioned prospective tenants, Retail Sites has lost commission on the lease, construction management fees and property management fees, all as the result of Defendants' causing the prospective tenants to not enter into a lease.

259.    Retail Sites collects an annual property management fee on gross revenue for UGE; thus Retail Sites is currently incurring a loss of not less than approximately $39,300 per

---

[19] UGE's typical commercial retail leases are five (5) to ten (10) years, with two (2) to four (4) options of five (5) years each.

year from UGE not being able to build and lease Buildings A and B.

260.    This equates to a loss of at least $393,000 over the first ten (10) years and $589,500 over the first fifteen (15) years and then not less than $39,300 per year thereafter.

261.    But in any event, UGE was unable to rent Buildings A and B until the Conditional Use Appeal concluded, and became unappealable, and so long as Defendants do not make any further appeals or delays in UGE's land development and construction process for its Royal Farms Store and Buildings A and B.

262.    UGE's prospective tenants were dissuaded and/or discouraged by the sham, malicious and tortious litigation undertaken by Defendants, and UGE's lender would not advance construction funds for Building A or Building B because of the unresolved litigation regarding multiple uses.

### Agency and Conspiracy of Defendants

263.    At all times material hereto Wawa authorized the remaining Defendants to undertake the development of the Wawa Store on the Provco Parcels.

264.    The remaining Defendants conducted themselves, at all times material hereto, as the agents of Wawa, clothed and acting with apparent authority.

265.    Goodman, at all times, held himself out as, and was in fact, an agent of Provco and the Provco Group, clothed and acting with apparent authority.

266.    Holtz, at all times, held himself out as, and was in fact, an agent of the Provco Group, clothed and acting with apparent authority.

267.    To the extent any decisions were made by Provco in connection with Provco's development of the Wawa Store on the Provco Parcels, Goodman, Holtz and/or the Provco Group made, approved and/or implemented, or directed the implementation of, those decisions.

1643994-3

268.     Indeed, all Defendants have and will benefit from the delays caused to UGE's development of the Property and the operations of the Royal Farms Store and other retail uses thereon in connection with Buildings A and B, including restraining competition in the Sumneytown Pike Corridor Market, expanding the monopoly power of Wawa and the Provco Group, including the Provco Affiliates, and slowing the Royal Farms Store and other tenants' entry into the market.

269.     At all times material hereto Defendants acted in a concerted fashion and in cooperation, in restraint of trade as demonstrated by the facts and conduct alleged herein.

270.     Provco, and the Provco Group, at all times material hereto, operated in connection with the facts alleged herein, conducted itself, made filings, proposed plans, conducted hearings, offered exhibits, examined witnesses, argued before tribunals, in furtherance of the authorization provided to it by Wawa and in accordance with its apparent authority, all in connection with the development of the Wawa Store on the Provco Parcels.

271.     Holtz and Goodman made and/or approved each of the actions taken by Provco and the Provco Group, and acted in furtherance of performing such actions with the apparent authority of Provco and/or the Provco Group, and at all times acting in the interests of Wawa.

272.     Some or all of Defendants' concerted, cooperative and conspiratorial conduct alleged herein resulted in filings, appeals, plans, hearings, exhibits, examinations, and arguments, by Defendants, and occurred before the Township Planning Commission, Zoning Hearing Board, Board of Commissioners, Court of Common Pleas and Commonwealth Court of Pennsylvania.

273.     All Defendants combined and/or agreed to take concerted anti-competitive action and to commit the torts as alleged herein in furtherance of Wawa's monopolization of the hyper-convenience store market, and to bar Plaintiffs from the related NRP market, in the Sumneytown

1643994-3

Pike Corridor Market and in restraint of trade.

274.    Goodman, Holtz, Provco and the Provco Group, combined and/or agreed to take concerted anti-competitive action and to commit the torts as alleged herein in furtherance of Provco's monopolization of the NRP and hyper-convenience store real estate site markets in the Sumneytown Pike Corridor Market and in restraint of trade.

**Sham Litigations Against UGE and Other Conduct in Restraint of Trade**

275.    Wawa, as a direct competitor of the proposed Royal Farms Store in the market for hyper-convenience stores in the Sumneytown Pike Corridor Market, and Provco, Provco Group and Wawa, as direct competitors of UGE in the market for hyper-convenience store real estate sites in the Sumneytown Pike Corridor Market, together, in conspiracy and agreement with each other and their agents Holtz and Goodman, have engaged in a course of conduct in restraint of trade designed to hinder, impede, delay, obstruct, and/or prevent UGE from promptly obtaining all necessary municipal and governmental approvals for the construction and operation of the Royal Farms Store.

276.    In direct response to UGE's efforts to secure the necessary municipal and governmental approvals, Defendants have taken every opportunity to interfere, including, a) seeking party status before the Township Commissioners in connection with UGE's conditional use application; b) on December 6, 2018, a baseless appeal to the Court of Common Pleas from the Township's Commissioner's grant of conditional use approval in favor of UGE, to wit, the Conditional Use Appeal and c) on September 4, 2019, a baseless appeal to the Commonwealth Court of Pennsylvania and d) on October 17, 2019, a baseless and untimely, and later withdrawn, appeal of the Township's Board of Commissioner's grant of land development approval in favor of UGE, to wit, the Land Use Appeal—all to hinder, impede, delay, obstruct, and/or prevent:

a)      UGE from developing the Royal Farms Store, a hyper-convenience store in direct competition with Wawa, and participating in that market in the Sumneytown Pike Corridor Market;

b)      Royal Farms from opening or operating a hyper-convenience store on the Property;

c)      UGE from engaging in and successfully undertaking, the acquisition, lease and development of a hyper-convenience store real estate site, and participating in that market in the Sumneytown Pike Corridor Market;

d)      Prospective tenants from entering into or continuing prospective relations with UGE; and

e)      UGE from completing the development, leasing and enjoyment of an NRP with multiple tenants anchored by Royal Farms.

277.    Further, the sham filings made by Defendants were motivated by the municipality's denial of relief to Defendants for the development of the Wawa Store on the Provco Parcels and not for the purpose of seeking legitimate relief in opposition to UGE's development of the Royal Farms Store or Buildings A and B.

278.    In each of Defendants' sham filings, Defendants first recite their long list of alleged 'wrongs' committed against them by the Township in denying Defendants the land use relief needed to develop the Wawa Store.

279.    Defendants never made a record of any the alleged wrongs within any of the proceedings subject to their sham filings.

280.    As a matter of law, matters outside of the record of the local agency, in this case, the Township Commissioner's, cannot be considered on an appeal of the agency's adjudication.

281.    Defendant's attempts to litigate these alleged 'wrongs' committed against them in the Conditional Use Appeal and the Land Use Appeal demonstrate further the sham nature of the Defendants' bad faith filings.

282.    In none of the sham filings, or proceedings in which Defendants interjected themselves, did Defendants demonstrate any harm or aggrievement of any kind caused to it by the Township's granting of relief to UGE.

283.    Having lost the opportunity to be 'the first' to open and operate as a hyper-convenience store at the advantageous intersection of Sumneytown Pike and West Point Pike within the relevant market and having lost this advantage in the market, just weeks later, and in order to slow or stop the progress of UGE and its current and prospective tenants' entry into the marketplace, Defendants initiated the sham litigations, specifically, the Conditional Use Appeal and the Land Use Appeal as described herein.

284.    A careful analysis of the timeline of the sham litigations demonstrates the bad faith nature of the Defendants in that the sham Conditional Use Appeal, which seeks to reverse a decision by the Township's Commissioners favorable to UGE, was filed just three weeks after the Court of Common Pleas affirmed the Board of Commissioner's denial of Defendants' land use application in connection with the Wawa Store.

285.    Importantly, demonstrating bad faith and maliciousness in the filing by Provco of the Conditional Use Appeal to the Commonwealth Court, at no time during the underlying proceedings for UGE's conditional use approval before the Commissioners or the Planning Commission did Provco present any evidence demonstrating that UGE lacked entitlement to relief.

286.    Provco's Land Use Appeal also possessed the hallmarks of a pattern of bad faith

filings, including a) being part of a pattern, filed approximately six (6) weeks after Provco's already defective and unsuccessful Commonwealth Conditional Use Appeal, b) being filed untimely and outside the jurisdiction of the Court of Common Pleas, and c) being filed after not appearing before the Commissioners or the Planning Commission in their respective public hearings on the application, d) not being aggrieved by the Commissioner's decisions, e) being brought based on matters outside of the legitimate record before the reviewing courts, f) being brought for punitive reasons against UGE for its success before the Township, and g) being brought in the absence of any evidence.

287.    The Land Use Appeal also lacked merit, and was meant to harass, delay restrain, and interfere with the development and operation of the Royal Farms Store and NRP,  in the Sumneytown Pike Corridor Market, UGE's land use rights, marketplace rights, and its contract/lease with Royal Farms and other prospective tenants of Buildings A and B.

288.    These sham litigations have also caused UGE to incur additional costs for items such as, but not limited to legal, engineering, tax, insurance, and interest costs.

289.    Underlining the conspiracy, agreement and concerted action of Defendants, they proceeded on their course of conduct against UGE, its prospective tenants and Royal Farms on the facially unsupported theory that, somehow, a hyper-convenience store is appropriate on the Provco Parcels, but not the Property, where both have the same zoning, but the Property has better and safer access and the Provco Parcels present a smaller net-developable area.

290.    Defendants' proceeding with the Wawa Store's land development process, and claiming the Township erred at every step in denying relief for Provco's lesser site, while at the very same time challenging and appealing UGE's land development process for the Property, without evidence, which is a facially compatible and approvable site, is a further sham and a

further conspiracy, agreement and concerted action in restraint of trade by the Defendants.

291.   Defendants' sham litigations, the Conditional Use Appeal and the Land Use Appeal, are not subjectively nor objectively reasonable.

292.   As a direct result of Defendants' anti-competitive acts, agreements and conspiracy, Defendants have successfully:

a)   maintained their monopoly in expanded and traditional convenience and other retail stores in the Sumneytown Pike Corridor Market; and

b)   have restrained, delayed and perhaps stopped the entry of UGE's Royal Farms Store into the relevant marketplace, which would provide substantial direct competition to not only Provco's proposed Wawa Store but also to existing Wawa-branded expanded and traditional convenience stores in that market; and

c)   advanced and solidified Wawa's monopoly power in the Sumneytown Pike Corridor Market, specifically, with respect to hyper-convenience stores;

d)   advanced and solidified Provco's monopoly power in the Sumneytown Pike Corridor Market, specifically, with respect to hyper-convenience store real estate sites.

e)   prevented UGE from engaging in multiple uses on the Property in connection with Buildings A and B, i.e., preventing development of the planned NRP.

293.   The development, construction, leasing and operations of both Buildings A and B were slowed and delayed as a result of Defendants' sham litigations and frivolous municipal appeals aimed at preventing UGE from developing, leasing and operating more than one use on the Property including but not limited to the Royal Farms Store, causing further harm and monetary damages to UGE and Retail Sites.

### *Sham Litigation - The Conditional Use Appeal*

294.    In connection with UGE's conditional use application, after a proposed ordinance was reviewed and received the unanimous recommendation of the Township Planning Commission on May 7, 2018, the Township's Commissioners adopted the text amendment at a public meeting on May 29, 2018.

295.    There were no appeals filed as to the adoption of the text amendment by any parties including the Defendants.

296.    Thereafter, UGE applied for its conditional use approval.

297.    The Planning Commission met on August 6, 2018, and discussed the aforementioned conditional use.

298.    The Defendants did not attend or have representation at the Planning Commission meeting.

299.    The Planning Commission recommended approval of the conditional use with certain conditions on August 7, 2018.

300.    The Commissioners held their first hearing on the conditional use approval on August 27, 2018.

301.    Marc Kaplin, Esquire, managing partner of the firm Kaplin Stewart, Blue Bell, Pennsylvania, and counsel for Provco, made his first appearance at the hearing before the Township Commissioners.

302.    At the assigned hearings, Kaplin offered no evidence or opposing testimony on behalf of Provco before the Township Planning Commission or Township Commissioners.

303.    Instead, Kaplin relied only upon cross-examination at the conditional use hearings and offered no evidence.

1643994-3

304.    Nevertheless, Provco persisted in appealing the Board's decision in favor of UGE and on December 6, 2018 Provco filed the Conditional Use Appeal with the Court of Common Pleas, despite not meeting its burden before the Commissioners as a matter of law.  *See* Notice of Land Use Appeal filed in the matter captioned *In re: Appeal of Provco Pinegood Sumneytown, LLC from the Decision Dated November 19, 2018 of the Board of Commissioners of Upper Gywnedd Township*, Mont. Co. CCP No. 2018-28558, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit "E."**

305.    Notably, in Provco's notice of appeal referenced above, in paragraph 19(A) through (D), Provco specifically challenges the Township's adjudication in favor of UGE on the basis that the Township denied allegedly similar relief to Provco.  *See id.* at 5-7.

306.    Four (4) of the six (6) grounds for appeal on which Provco based the Conditional Use Appeal rely specifically upon this 'comparison approach.'  *Id.*

307.    All of the grounds of appeal stated by Provco based upon this 'comparison approach' specifically rely upon information and evidence outside of the record and as a matter of law could not have been considered by the Court of Common Pleas.  *Id.*

308.    Regarding the final two (2) grounds for appeal, at paragraph 20 of Provco's notice of appeal, regarding the assertion that the Hartford Development will increase delays and will increase intersection queue lengths, Provco never met its burden, or offered any evidence.  *Id.*

309.    Provco's brief in support of its appeal, filed on April 26, 2019, fully demonstrates the baselessness of its appeal.  A true and correct copy of Provco's Brief in Support of Appeal is attached hereto and incorporated herein as **Exhibit "F."**

310.    First, throughout its brief, Provco recites to alleged outside-of-the-record facts and argues disparate treatment by the Township in its granting of relief to UGE, but not Provco.  *See*

*id.* at 1-6.

311.    Second, Provco ignores the applicable burden of proof, which rests squarely on Provco.

312.    Because Provco presented no evidence and made no record before the Township's Commissioners, Provco never could have prevailed in its appeal.[20]

313.    On August 8, 2019, the Montgomery County Court of Common Pleas issued a decision denying the Conditional Use Appeal.  A true and correct copy of the full November 5, 2019 Court of Common Pleas Opinion setting forth the basis for its affirmance of the Commissioners is attached hereto and incorporated herein as **Exhibit "G."**

314.    The Court of Common Pleas identifies readily the applicable standard that:

> "Once that burden is satisfied, the applicant has made out a prima facie case and must be granted a conditional use, unless the objectors present sufficient evidence that the proposed use will have a detrimental effect on the public health, safety and welfare."

*Id.* at 5.

315.    The Court went on to hold that the burden rested with the objector, here, Provco, and that UGE did not have an obligation to provide specificity as to its proposed uses.  *Id.* at 6-7, 8.

316.    The Court also explained that "Provco has not preserved any other challenge to the Board's finding" and were waived.  *Id.* at 7.

317.    Further, although UGE prevailed in its position that the Zoning Ordinance failed to provide specific, objective criteria, and was therefore vague and not enforceable,[21] the Court

---

[20] This is particularly so given the wide latitude of the substantial evidence standard as well as the great deference given to a municipal body rendering an adjudication, here, the Township Commissioners.

[21] Which is not a challenge to the merits raised by UGE, but rather an attack upon the Township's zoning code.

of Common Pleas went on and identified specifically that Provco had not preserved any other challenges to the Board's finding that UGE's proposed uses were compatible and non-conflicting.

318.    Because Provco offered neither evidence nor testimony before the Township Commissioners, Provco never could have carried its burden and never could have prevailed in the Conditional Use Appeal.

319.    Notwithstanding having no probable cause to intervene before the Commissioners, or to appeal to the Court of Common Pleas, and despite not prevailing before the Court, and being placed on notice of the lack of grounds on which to base any further appeal, Provco, armed with this knowledge, appealed to the Commonwealth Court of Pennsylvania, at No. 1251 CD 2019.

320.    On appeal to the Commonwealth Court, at page 24 of its appellate brief, Provco repeated its outside the record argument regarding a comparison of the Provco Parcels and the UGE Property.  A true and correct copy of Provco's Brief of Appellant filed in the Commonwealth Court at No. 1251 CD 2019 is attached hereto and incorporated herein as **Exhibit "H."**

321.    At page 20 of its Opinion, in treating Provco's argument on appeal that the Commissioners erred in finding UGE's proposed principle uses compatible and non-conflicting, the Commonwealth Court explained the obvious, that is, that UGE did[22] identify potential proposed uses within its development.  A true and correct copy of the Opinion and Order of the Commonwealth Court, entered December 14, 2020, is attached hereto and incorporated herein as

---

[22] The Commonwealth Court emphasized in bold the "did" twice on page 20 in stressing that UGE met its burden to identify potential uses to be contained in its development.  *See* Ex. "I" at 20.

**Exhibit "I."**

322.    The Commonwealth Court also explains that "[i]f Objector believed that certain uses permitted . . . were not compatible . . . , it could have presented evidence to that effect," but "Objector did not."  *Id.* at 21-22.

323.    The Commonwealth Court also explained that Provco provided no evidence, and failed to rebut UGE's traffic engineer's testimony, that UGE's development would not materially increase traffic.  *Id.* at 23.

324.    Provco entered no evidence before the Commissioners and made no record at all to meet its burden and should have known that it could not prevail without evidence, a record and meeting its burden.

325.    Provco should have known well-established law including that regarding the relative burdens of the parties, the broad deference given to municipal boards rendering adjudications, the scope of the substantial evidence standard, and the materiality requirement when challenging traffic increases.

326.    Provco ignored the clear testimony and evidence provided by UGE before the Commissioners.

327.    Provco repeatedly attempted to improperly interject alleged facts and evidence from outside of the record.

328.    At all times, Provco knew that UGE had in fact identified the type of proposed uses it planned for UGE's Property in Buildings A and B.

329.    Provco pursued the Conditional Use Appeal to punish UGE for its success before the Township and to stop, or slow, the Royal Farms Store and the development and leasing of Buildings A and B.

330.    There is no statute or case law that would allow Provco to prevail under any circumstance in this matter under the factual and procedural record as it existed at all times when Provco pursued the sham Conditional Use Appeal.

331.    The Conditional Use Appeal lacks any measurable merit, by any standard, is baseless and brought without probable cause and/or in a grossly negligent manner.

332.    The delay occasioned by Provco's Conditional Use Appeal is not less than eighteen (18) months and that monthly delay continued until at least thirty (30) days after December 14, 2020.[23]

333.    Ultimately, on December 14, 2020, UGE prevailed in the Conditional Use Appeal, with the Commonwealth Court affirming the Court of Common Pleas' denial of Provco's appeal, as set out in Exhibit "I" hereto.

334.    In addition and just days after the Commissioners' approval, on September 11, 2019, Robert Hill (managing member of Hartford Properties and UGE) spoke with Michael Cooley, Vice President of real estate development with the Provco Group's subdivision, Provco Real Estate, and perhaps a member, officer or principal of other Provco Affiliates, while they were leaving a business reception in Philadelphia hosted by Bohler Engineering.

335.    Mr. Hill asked Mr. Cooley as to why Provco appealed UGE's conditional use approval.

336.    Mr. Cooley answered:  "it is just business."

337.    On information and belief, Defendants conspired and agreed with the Provco Group and its agents, and took concerted action with them, to engage in the conduct alleged

---

[23] This thirty (30) day period encompasses the time in which Provco could have petitioned the Pennsylvania Supreme Court for allocator.  Provco did not do so, and therefore, UGE prevailed in the Conditional Use Appeal as a result of the Commonwealth Court's affirmance of the Court of Common Pleas.  *See* Ex. "I."

herein.

338.    At the time Defendants' brought the Conditional Use Appeal and throughout the pursuit of a reversal of the Township's grant of UGE's conditional use approval, Defendants knew, or should have known, that they possessed no legal basis to obtain such a reversal.

339.    On information and belief, Defendants acted in concert and either authorized, or participated in the decision to authorize, the Conditional Use Appeal.

340.    There is no objective good faith basis for the Conditional Use Appeal, which seeks to reverse the conditional use approval granted in favor of UGE by the Commissioners, because no reasonable litigant could conclude that Defendants could succeed where it did not enter any evidence into the record before the Commissioners, engaged only in cross-examination, and could not, as a matter of law, meet its legal burden, nor was there any legitimate harm to Defendants or its tenant Wawa by the granting of the Conditional Use approval.

341.    Defendants' Conditional Use Appeal was motivated instead by a desire to impose anti-competitive injury upon UGE, Retail Sites, Royal Farms and other prospective tenants of the Project by hindering, impeding, delaying, restraining and/or preventing it from obtaining all necessary municipal and government approvals for the construction of the multiple buildings on the Property including the Royal Farms Store, which would directly compete with the Wawa Store and other Wawa-branded expanded and traditional convenience stores in the Sumneytown Pike Corridor Market.

342.    While Defendants' Conditional Use Appeal was pending, UGE continued to pursue and expend substantial monies to secure its land development approvals so as to comply with its requirements under its lease with Royal Farms, to secure additional tenants and to secure

the requisite permits and approvals required under its financing documents.

### *Sham Litigation - The Land Use Appeal*

343.     On October 17, 2019, Defendants intervened in and appealed UGE's land development approval even though Defendants lacked an interest and standing in, and were not aggrieved by, the said approval.

344.     Provco never appeared or participated before the Commissioners in connection with UGE's land development approval, never offered any evidence, and did not cross-examine anyone.

345.     Again, demonstrating its motive and animus towards UGE for its success before the Commissioners, Provco's Land Use Appeal is again rife with, and based upon, comparisons between Provo's proposed development on the Provco Parcels of the Wawa Store and the UGE's development of the Royal Farms Store and Buildings A and B.  A true and correct copy of Provco's Land Use Appeal is attached hereto and incorporated herein as **Exhibit "J."**

346.     Nevertheless, Provco knew that such comparisons required consideration of facts outside of the record, which is prohibited as a matter of law.

347.     Further, Provco knew that it failed to create any record, give any evidence, appear, or provide testimony, to demonstrate any of the alleged errors set out in the Land Use Appeal notice of appeal.  *See* Ex. "J" at 9-11.

348.     Further, Defendants filed the Land Use Appeal, for which absolutely no objective or subjective legal basis existed, approximately twenty-two (22) days after the statutory deadline to do so.

349.     Section 1002-A of the Municipality Planning Code states that all appeal from land use decisions must be filed within thirty (30) days after entry of the decision.  53 P.S. § 11002-A.

350.    Where, as here, the right to appeal is statutory, the appellant must act in strict accordance with the governing statutory provisions.

351.    The timeliness of an appeal and compliance with the statutory provisions that grant the right of appeal go to the jurisdiction of the court and its competency to act.

352.    Although likely not leading to success, Provco never sought permission from the Court of Common Pleas to appeal *nunc pro tunc*.

353.    Provco knew at the time of its appeal that its appeal was untimely and that the Court of Common Pleas had no jurisdiction to hear Provco's Land Use Appeal any longer.

354.    Further, there is no basis in law or fact that would extend the statutory jurisdiction of the Common Pleas Court as the result of an allegedly late response to a Right to Know Request.

355.    Further, even if the Land Use Appeal were timely, Defendants knew or should have known that they possessed no legal basis, indeed, no probable cause, to obtain a reversal of the relief granted by the Township's Commissioners.

356.    On information and belief, Defendants conspired and agreed with the Provco Group and its agents, and took concerted action with them, to engage in the conduct alleged herein.

357.    On information and belief, Defendants acted in concert and either authorized, or participated in the decision to authorize, the Land Use Appeal.

358.    There is no objective good faith basis for the filing of the Land Use Appeal because no reasonable litigant could conclude that the appeal could succeed where the appellant did not participate at all in the matter before the Commissioners, was not aggrieved, and filed its appeal twenty-two (22) days late.

359.    Defendants' Land Use Appeal was motivated by a desire to impose anti-competitive injury upon UGE by hindering, impeding, delaying, obstructing, restraining and/or preventing it from promptly obtaining all necessary municipal and government approvals for the construction and operation of the proposed Royal Farms Store and Buildings A and B, which would directly compete with the Wawa Store and other Wawa-branded expanded and traditional convenience stores in the Sumneytown Pike Corridor Market as both a hyper-convenience store and an NRP.

360.    As a further demonstration of bad faith and the lack of an objective good faith basis to file the Land Use Appeal, after UGE filed a motion to quash the appeal on November 15, 2019, which Provco answered, a letter from the undersigned dated January 2, 2020, and a January 21, 2020 order of court following a case management conference, ultimately, on January 21, 2020 Defendants withdrew the Land Use Appeal with the filing of a Praecipe to Withdraw Land Use Appeal, with prejudice.  A true and correct copy of Provco's aforementioned answer is attached hereto and incorporated herein as **Exhibit "K;"** a true and correct copy of undersigned counsel's aforementioned letter is attached hereto and incorporated herein as **Exhibit "L;"** a true and correct copy of the court's aforementioned order is attached hereto and incorporated herein as **Exhibit "M;"** a true and correct copy of Provco's Praecipe to Withdraw Land Use Appeal is attached hereto and incorporated herein as **Exhibit "N."**

361.    Defendants pursued the Land Use Appeal despite it being objectively and subjectively unwarranted and meritless and it was instead merely a pretext to delay the operations of the Royal Farms Store and obstruct, impede and restrain Royal Farms and UGE from entering the relevant markets and to punish UGE for its success before the Township.

**Defendants' Pattern of Conduct as to UGE**

362.    Defendants' other conduct further illustrates a deliberate, anti-competitive pattern against UGE and Royal Farms in connection with the land development of real estate for hyper-convenience stores, specifically stores proposed by Royal Farms at another location in Hatfield, Pennsylvania, at the intersection of Route 309 and County Line Road ("Hatfield Site").

363.    Mr. Hill, and other partners, owned the Hatfield Site and developed it initially in 1995 as an Amoco Gas Station with a 2,001 square foot convenience store with a Burger King.

364.    At the time that Mr. Hill developed the Hatfield Site, Wawa was not in the gasoline business and did not own or operate hyper-convenience stores.

365.    Bohler Engineering ("Bohler") served as the civil engineer engaged by Mr. Hill for the Hatfield Site and has continued to work with Robert Hill on all of his projects for over twenty-five (25) years and is the engineer for UGE.

366.    Bohler also serves as the engineer for many Wawa stores developed by Defendants and others.

367.    Sometime between 2005 and 2008 Wawa developed a hyper-convenience store with gas 1.14 miles to the south on Route 309 in Lansdale (aka Colmar) of a proposed Royal Farm Mr. Hill intended to (and ultimately did) develop at the Hatfield Site.

368.    Sometime prior to 2014 Wawa developed another hyper-convenience store on Route 309 approximately 1.49 miles to the north of the Hatfield Royal Farms.

369.    In 2014, the former Amoco gas station and convenience store of Robert Hill closed and Mr. Hill initiated conversations with Royal Farms and its exclusive broker, Zommick-McMahon, about locating a new Royal Farms on a 3.01 acre parcel addressed as 935 Bethlehem Pike, at the intersection of Route 309 and County Line Road, Hatfield Township, Montgomery

County, Pennsylvania in place of the former Amoco and still-operating Burger King at the Hatfield Site.

370.    As Bohler had completed all previous approvals on the original development twenty (20) years previously and Mr. Hill and his partner continued to use Bohler for various projects, Mr. Hill engaged Bohler to prepare preliminary plans for Royal Farms in 2014 with the intent to hire Bohler for engineering and approvals if a lease was fully executed.

371.    Bohler completed several plans with at least one plan dated November 5, 2014 and it was with those plans that Royal Farms approved the 935 Bethlehem Pike site.

372.    Robert Hill received a proposal from Royal Farms to lease that property for use as a hyper-convenience store of approximately 5,371 square feet and 16 fueling positions subject to Hatfield Equities, LLC, completing all engineering and securing all governmental permits and approvals.

373.    Thereafter, Hatfield Equities, LLC and Two Farms, Inc. (parent of Royal Farms) executed a long-term lease on August 24, 2015.

374.    In late 2014 Mr. Hill requested a proposal from Bohler to complete plans and secure approvals and in return received a proposal from Bohler on December 17, 2014.

375.    As lease negotiations proceeded between Hatfield Equities and Royal Farms in 2015, Mr. Hill received a telephone call in the spring or summer of 2015 from Mike Jeitner, the partner at Bohler in charge of Mr. Hill's account, informing Mr. Hill that Bohler had been asked by Wawa not to perform any work on the proposed Royal Farms project at the 935 Bethlehem Pike site and that Bohler should not handle any further work on that matter.

376.    Bohler complied with that request to the protest of Mr. Hill.

377.     Mr. Hill and his partners were now forced to proceed with a new engineer, unfamiliar with the site and the land use approval methods and preferences of the developers, causing delays and related increased costs.

378.     The foregoing further demonstrates a pattern of anti-competitive conduct, in restraint of trade and in furtherance of monopolization by Wawa as to Royal Farms, competing NRPs, and Mr. Hill, the principal of UGE.

**Anti-competitive Injury and Damages**

379.     A substantial amount of commerce has been adversely affected by the Defendants' conduct as alleged herein, including anti-trust injury within the Sumneytown Pike Corridor Market, including the following:

a)     UGE has been excluded from the Sumneytown Pike Corridor Market in connection with development and leasing of multiple retail stores and  of a hyper-convenience store real estate site;

b)     Royal Farms has been excluded from the relevant market in connection with the operation of a hyper-convenience store, which also causes harm to UGE;

c)     Local consumers in the Sumneytown Pike Corridor Market are excluded from the benefits and conveniences of multiple retail, commercial or other permitted uses and of the availability of the multiple goods and services offered by any hyper-convenience store within traditional and market defined distances and times as alleged herein;

d)     The traveling public along the Sumneytown Pike Corridor Market are excluded from the benefits and conveniences of multiple retail, commercial or other permitted uses and of the availability of the multiple goods and services any hyper-convenience store within traditional and market defined distances and times as alleged herein;

e)        The existence of less competition within the relevant markets;

f)        The critical intersection of Sumneytown Pike and Church Road/West Point Pike continues fallow and un-serviced by a proper, legal, beneficial and sustainable use at the site, specifically a modern, safe, attractive NRP with multiple uses and a hyper-convenience store serving local consumers and the traveling public;

g)        Both local consumers and the traveling public are deprived of the varied goods, services and products delivered by the variety of use permitted by the Township including the Royal Farms brand in connection with the permitted and approved Project.

380.    As a result of Defendants' conduct as alleged herein, UGE has suffered damages associated with the delayed land development and approval process for its Royal Farms Store and lost prospective tenants for Buildings A and B, including, but not limited to increased: carrying costs, insurance, lending costs, and other transaction costs, counsel fees, professional and consultant fees, construction costs, and lost rent.

381.    UGE has lost prospective tenants, prospective business opportunities and lost prospective rental as the result of Defendants' conduct as alleged herein in connection with the leases associated with Buildings A and B.

382.    UGE has lost substantial rent, cash flow, and financial equity from the delay in being able to complete the landlord work and deliver the Property to Royals Farms and build and construct Buildings A and B.

383.    Retail Sites has also suffered damages in the form of lost lease commissions, and lost project and property management fees as a result of Defendants' anti-competitive and tortious conduct as alleged herein.

384.     UGE and Retail Sites avail themselves of and demand all remedies available pursuant to 15 U.S.C. § 15, including threefold of the damages sustained by UGE, the costs of suit, and reasonable attorney's fees.

**FIRST COUNT – All Defendants**
**Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**
**Monopolization, Attempted Monopolization, and Conspiracy to Monopolize**
**NRP and Hyper-convenience Store Markets**

385.     Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

386.     Defendants' conduct, as described in detail above, violates Section 2 of the Sherman Act, 15 U.S.C. § 2, as Defendants have engaged in predatory and anti-competitive conduct with a specific intent to monopolize the NRP and hyper-convenience store market in the Sumneytown Pike Corridor Market.

387.     The Conditional Use Appeal and the Land Use Appeal filed by Defendants, and the other conduct alleged, were made not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken for anti-competitive purposes, to delay or stop UGE's Royal Farms Store and the development of the remaining portion of the Property for additional uses.

388.     When Defendants brought the Conditional Use Appeal and the Land Use Appeal they knew or should have known that they did not have a legitimate interest in pursuing these challenges and that these challenges were objectively baseless.

389.     By pursuing objections known to be unfounded and/or regardless of the merits, Defendants intended to acquire and maintain monopoly power in the Sumneytown Pike Corridor Market for NRPs and hyper-convenience stores.

390.    The Conditional Use Appeal and the Land Use Appeal were also subjectively baseless because in each instance the claims were merely an attempt by the Defendants to interfere with UGE's business relationship with Royal Farms, its other tenants and also to interfere with UGE's efforts to obtain the necessary municipal and government approvals to build the NRP anchored by a Royal Farms convenience store that would directly compete with Defendants' Wawa stores and the Wawa Store in the relevant market, and Defendants' NRPs.

391.    On information and belief, the Conditional Use Appeal and the Land Use Appeal were all motivated by a desire to impose anti-competitive injury on UGE by delaying the development of the Property so that the Royal Farms Store would not be built, thereby preventing Royal Farms from entering the Sumneytown Pike Corridor Market for hyper-convenience stores, rather than to obtain justifiable and legitimate legal remedies and recourse.

392.    The Sumneytown Pike Corridor Market is one of the few submarkets in which Wawa does not currently operate a hyper-convenience store.

393.    The baseless Conditional Use Appeal[24] presented a dangerous probability that Wawa would expand this monopoly power because of its dominant position in the relevant market, the high entry barriers in the market, and the absence of other competitors and other developable real estate locations in the Sumneytown Pike Corridor Market.

394.    UGE's injuries are inextricably intertwined with those suffered by Royal Farms and the inability of UGE's other tenants because the anti-competitive actions of Defendants are directed toward preventing UGE from developing and leasing the Property for the operations of an NRP anchored by a Royal Farms hyper-convenience in order to prevent, stop, delay, or restrain, competition against Wawa and Defendants other business interests.

---

[24] As alleged herein, Provco withdrew the Land Use Appeal with prejudice on January 21, 2020.

395.    Further, in engaging in sham litigation, anti-competitive and monopolistic conduct as alleged herein, and causing significant delays in the development, construction, lease and operations at the Property, Defendants have caused UGE additional harm in lost rental for Buildings A and B resulting in causing prospective tenants to not enter into leases for space within Buildings A and B.

396.    Given the high barriers to entry into the NRP and the hyper-convenience store markets, if the development of the Property is further delayed or interfered with further, as a practical matter, Royal Farms will have no other place to construct and operate a hyper-convenience store in the Sumneytown Pike Corridor Market to compete with Wawa.

397.    Defendants' intent in filing the various baseless challenges, and within each taking discrete, identifiable actions, without legal basis (which Defendants knew or should have known), set forth above, is to delay the approvals necessary to build the proposed NRP and Royal Farms Store to such an extent that Royal Farms or UGE give up on building and operating the  proposed convenience store, as well to set an example for other potential tenants for the Property to deter them, or others, from likewise attempting to build or operate an NRP and hyper-convenience store on the Property or other locations within the Sumneytown Pike Corridor geographic area that might compete with Wawa or Defendants.

398.    Defendants have also intentionally and willfully conspired with other as yet unknown entities and individuals to monopolize the market by way of the acts set forth above, including developing a business strategy and/or a litigation strategy with other entities and individuals that it is associated with to gain and/or maintain monopoly power in the relevant market through the use of sham litigations and other anti-competitive acts, and other acts of unfair competition.

1643994-3

399.    As a result of the unlawful acts Defendants as alleged herein, UGE has suffered and will continue to suffer antitrust injury in an amount to be proven at trial, including hindering, impeding, delaying, obstructing, and/or preventing UGE from promptly obtaining all necessary municipal and governmental approvals for the construction of the proposed Royal Farms Store and the additional buildings and uses and thereby hindering, impeding, delaying, obstructing, and/or preventing UGE from realizing the financial benefits of its lease and development agreement with Royal Farms and other tenants and to realize the full potential and value of the site.

400.    In addition, Defendants' conduct has forced UGE to expend substantial amounts of money, time and human resources, including, but without limitation, counsel fees, fees of professional consultants, internal staff time, and carrying costs, as a result of and in order to respond to the Conditional Use Appeal and Land Use Appeal, and each of the discrete, baseless acts undertaken by Defendants in connection with each proceeding upon which the appeals are based or derived.

401.    Further, as a result of the unlawful acts of Defendants as described herein, UGE has suffered and will continue to suffer antitrust injury in an amount to be proven at trial, including those damages arising from the hindering, impeding, delaying, obstructing, and/or preventing of UGE from promptly obtaining all necessary municipal and governmental approvals for the construction and occupation of the proposed Buildings A and B at the Property and thereby hindering, impeding, delaying, obstructing, and/or preventing UGE from realizing the financial benefits of leasing those buildings.

402.    Retail Sites has also suffered damages in the form of lost lease commissions, and lost project and property management fees as a result of Defendants' anti-competitive and tortious conduct as alleged herein.

403.    Plaintiffs suffered damages as alleged in this Amended Complaint as a result of Defendants' violations of Section 2 of the Sherman Act.

404.    Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand relief against all defendants as follows:

a)    An injunction enjoining defendants that they shall not take further action to delay, object or interfere with the development of the Property by Upper Gwynedd Equities, LLC nor any of its tenants or users, including Royal Farms;

b)    An award of compensatory damages in an amount to be determined at trial, but in any event, in excess of the Court's jurisdictional and compulsory arbitration thresholds;

c)    A finding that defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and awarding treble damages to Plaintiffs pursuant to 15 U.S.C. § 15;

d)    A permanent injunction enjoining defendants from monopolizing or attempting to monopolize the relevant geographic market, as provided by 15 U.S.C. § 26;

e)    An award of punitive damages in an amount to be determined at trial as a result of the willful, malicious and intentional acts of defendants;

f)    Awarding Plaintiffs interest, costs, expenses, and attorneys' fees in connection with this action; and

g)      Such further and additional relief as the Court deems just and proper.

## SECOND COUNT – All Defendants
### Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2
### Monopolization, Attempted Monopolization, and Conspiracy to Monopolize
### NRP and Hyper-Convenience Store Markets

405.    Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

406.    Defendants' filing of the Conditional Use Appeal and Land Use Appeal were each objectively baseless in that no reasonable litigant could realistically expect success on the merits of either of the filings.

407.    Each baseless filing by Defendants was an attempt to interfere directly with the UGE's business related to development, lease and operations of the Royal Farms Store and additional building, uses and/or tenants on the Property, by the use of governmental process.

408.    The subjective motivation of Defendants in filing each of the appeals was to delay or stop the development, lease and operation of the Royal Farms Store and additional uses and/or tenants in furtherance of Defendants anti-competitive and monopolistic conduct.

409.    Defendants' used governmental process as an anti-competitive weapon against UGE, without regard for the merit or outcome of that process.

410.    Defendants possessed no probable cause to institute and maintain the Conditional Use Appeal in the courts of Montgomery County, Pennsylvania.

411.    Defendants possessed no probable cause to institute and maintain the second appeal of Conditional Use Appeal to the Commonwealth of Pennsylvania.

412.    Defendants possessed no probable cause to institute and maintain the Land Use Appeal.

413.    Retail Sites has also suffered damages in the form of lost lease commissions, and lost project and property management fees as a result of Defendants' anti-competitive and tortious conduct as alleged herein.

414.    Plaintiffs suffered the damages alleged in this Amended Complaint as a result of Defendants' violations of Section 2 of the Sherman Act.

415.    Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand relief against all defendants as follows:

a)    An injunction enjoining all defendants that they shall not take further action to delay, object or interfere with the development of the Property by Upper Gwynedd Equities, LLC nor any of its tenants or users, including Royal Farms;

b)    An award of compensatory damages in an amount to be determined at trial, but, in any event, excess of the Court's jurisdictional and compulsory arbitration thresholds;

c)    A finding that defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and awarding treble damages to Plaintiffs pursuant to 15 U.S.C. § 15;

d)    A permanent injunction enjoining defendants from monopolizing or attempting to monopolize the relevant geographic market, as provided by 15 U.S.C. § 26;

e)    An award of punitive damages in an amount to be determined at trial as a result of the willful, malicious and intentional acts of defendants;

f)    Awarding Plaintiffs interest, costs, expenses, and attorneys' fees in connection with this action; and

1643994-3

g)      Such further and additional relief as the Court deems just and proper.

**THIRD COUNT – All Defendants**
**Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**
**Monopolization, Attempted Monopolization, and Conspiracy to Monopolize**
**NRP and Hyper-Convenience Store Real Estate Site Markets**

416.     Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

417.     Defendants' conduct, as described in detail above, violates Section 2 of the Sherman Act, 15 U.S.C. § 2, in as much as Defendants have engaged in predatory or anti-competitive conduct with a specific intent to monopolize the hyper-convenience store real estate site market on behalf of the Defendants, including the identification, development, tenant selection, management, and leasing, of same and to the exclusion and injury of UGE.

418.     On information and belief, when Defendants filed the Conditional Use Appeal and the Land Use Appeal it knew or should have known that it did not have a legitimate interest in pursuing these challenges and that these challenges were objectively baseless.

419.     By pursuing objections known to be unfounded and/or regardless of the merits, Defendants intended to acquire and maintain monopoly power in the Sumneytown Pike Corridor Market for hyper-convenience store real estate sites.

420.     The Conditional Use Appeal and the Land Use Appeal were also subjectively baseless because in each instance the claims were merely an attempt by the Defendants to interfere with UGE's business relationship with Royal Farms and other tenants and also to interfere with UGE's efforts to obtain the necessary municipal and government approvals to build the NRP and Royal Farms convenience store that would directly or indirectly compete with Wawa's and Provco's Wawa Store in the relevant market.

421.    On information and belief, the Conditional Use Appeal and the Land Use Appeal were all motivated by a desire to impose anti-competitive injury on UGE by delaying the development of the Property so that the NRP and Royal Farms Store would not be built, thereby preventing Royal Farms and other tenants from entering the Sumneytown Pike Corridor Market for hyper-convenience store real estate sites to the benefit of UGE, rather than to obtain a justifiable and legitimate legal remedy.

422.    The baseless Conditional Use Appeal presented a dangerous probability that Wawa would expand this monopoly power because of its dominant position in the relevant market, the high entry barriers in the market, and the absence of other competitors and other developable real estate locations in the Sumneytown Pike Corridor Market.

423.    By eliminating the proposed Royal Farms as a hyper-convenience store in the Sumneytown Pike Corridor Market, Defendants will have eliminated the only competitor entering the relevant convenience store real estate site market, resulting in Provco having monopolistic power in that market and to the exclusion of UGE.

424.    Given the high barriers to entry into the development of NRPs with a hyper-convenience store real estate site market, if the development of the Property is delayed or stopped, as a practical matter, UGE will have also been foreclosed from participating in the NRP and hyper-convenience store real estate site or a location for other tenants which have expressed a desire to lease space for a location in the Sumneytown Pike Corridor Market to compete with Defendants.

425.    Further, by targeting the various approvals necessary to develop the Property, the actions of Defendants are intended to not only preclude UGE from developing the Property for the proposed NRP and Royal Farms Store, but also to prevent UGE from developing its Property

1643994-3

for any other NRP and hyper-convenience store, thereby preventing UGE from competing with Defendants in this lucrative real estate site market within the Sumneytown Pike Corridor Market.

426.    Defendants' intent in filing the various baseless appeals, without out legal basis (which Defendants knew or should have known), set forth above, is to delay the approvals necessary to build the proposed Royal Farms sufficiently so that Royal Farms gives up on building and operating its proposed NRP and convenience store, as well to set an example for other potential tenants for the Property to deter them, or others, from likewise attempting to build or operate a hyper-convenience store on the Property or other locations within the Sumneytown Pike Corridor Market that might compete with the Defendants.

427.    Further, by targeting the various approvals necessary to develop the Property, the actions of Defendants are intended to not only preclude UGE from developing the Property for the proposed NRP and Royal Farms Store, but also to prevent UGE from developing its Property for any other convenience store or multiple other permitted uses which would compete with Wawa or other Defendants in the relevant geographic market and which are permitted by the Township's conditional use approval.

428.    Without  multiple commercial users on the site, one of which is a hyper-convenience store as an anchor tenant and capable of paying substantial rent, funding certain improvements itself and attracting a large and consistent number of customers to the other tenants, Defendants will have effectively prevented UGE from realizing the full economic benefits of the site.

429.    Provco and Wawa have also intentionally and willfully conspired with other as yet unknown entities and individuals to monopolize the market by way of the acts set forth above, including developing a business strategy and/or a litigation strategy with other entities

1643994-3

and individuals that it is associated with to gain and/or maintain monopoly power in the relevant market through the use of sham litigations and other anti-competitive acts, and other acts of unfair competition.

430.    A substantial amount of commerce has been affected by the conspiracy to monopolize.

431.    As a result of the unlawful acts of Defendants  as described herein, UGE has suffered and will continue to suffer antitrust injury in an amount to be proven at trial, including hindering, impeding, delaying, obstructing, and/or preventing UGE from promptly obtaining all necessary municipal and governmental approvals for the construction of multiple uses on the site and thereby hindering, impeding, delaying, obstructing, and/or preventing UGE from realizing the financial benefits of its lease and development agreement with Royal Farms and other tenants.

432.    In addition, Defendants' conduct has forced UGE to expend substantial amounts of money, time and human resources, including, but without limitation, counsel fees, fees of professional consultants, internal staff time, and carrying costs, as a result of and in order to respond to the Conditional Use Appeal and Land Use Appeal, and each of the discrete, baseless acts undertaken by Defendants in connection with each of the appeals.

433.    Further, as a result of the unlawful acts of Defendants, UGE has suffered and will continue to suffer antitrust injury in an amount to be proven at trial, including hindering, impeding, delaying, obstructing, and/or preventing UGE from promptly obtaining all necessary municipal and governmental approvals for the construction of the proposed Buildings A and B at the Property and thereby hindering, impeding, delaying, obstructing, and/or preventing UGE from realizing the financial benefits of leasing those buildings.

78

434.    If Defendants are successful, UGE will be effectively be limited to only one use of approximately 4,700 square feet  with multiple fueling points on 4.5 acres of land when the site previously contained a former super market and 2-3 other stores totaling over 35,000 square feet and a gas station with 4-6 fueling positions.

435.    As set forth in experts' testimony, during the time of the conditional use approval and land use approval the proposed average daily trips to the proposed site would be below the average daily and peak traffic generated by the former supermarket.

436.    Retail Sites has also suffered damages in the form of lost lease commissions, and lost project and property management fees as a result of Defendants' anti-competitive and tortious conduct as alleged herein.

437.    Plaintiffs suffered damages as alleged in this Amended Complaint as a result of Defendants' violations of Section 2 of the Sherman Act.

438.    Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand relief against all defendants as follows:

a)    An injunction enjoining defendants that they shall not take further action to delay, object or interfere with the development of the Property by Upper Gwynedd Equities, LLC nor any of its tenants or users, including Royal Farms;

b)    An award of compensatory damages in an amount to be determined at trial, but in any event, in excess of the Court's jurisdictional and compulsory arbitration thresholds;

1643994-3

c)      A finding that defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and awarding treble damages to Plaintiffs pursuant to 15 U.S.C. § 15;

d)      A permanent injunction enjoining defendants from monopolizing or attempting to monopolize the relevant geographic market, as provided by 15 U.S.C. § 26;

e)      An award of punitive damages in an amount to be determined at trial as a result of the willful, malicious and intentional acts of defendants;

f)      Awarding Plaintiffs interest, costs, expenses, and attorneys' fees in connection with this action; and

g)      Such further and additional relief as the Court deems just and proper.

### FOURTH COUNT- All Defendants
**Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**
**Monopolization, Attempted Monopolization, and Conspiracy to Monopolize**
**NRP and Hyper-Convenience Store Real Estate Site Markets**

439.    Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

440.    Defendants' filing of the Conditional Use Appeal and Land Use Appeal were each objectively baseless in that no reasonable litigant could realistically expect success on the merits of either of the filings.

441.    Each baseless filing by Defendants was an attempt to interfere directly with the UGE's business related to development, lease and operations of the Royal Farms Store, by the use of governmental process, to restrain trade.

442.    The subjective motivation of Defendants in filing each of the appeals was to delay or stop the development, lease and operation of the Royal Farms Store in furtherance of Defendants anti-competitive and monopolistic conduct.

443.    Defendants used governmental process as an anti-competitive weapon against UGE, without regard for the outcome of that process.

444.    Defendants possessed no probable cause to institute or maintain the Conditional Use Appeal.

445.    Defendants possessed no probable cause to institute or maintain the Land Use Appeal.

446.    All of the foregoing, in addition to the other actions and causes alleged herein, was undertaken by Defendants for the purpose of excluding UGE from the hyper-convenience store real estate site market within the Sumneytown Pike Corridor Market.

447.    Retail Sites has also suffered damages in the form of lost lease commissions, and lost project and property management fees as a result of Defendants' anti-competitive and tortious conduct as alleged herein.

448.    Plaintiffs suffered damages as alleged in this Amended Complaint as a result of Defendants' violations of Section 2 of the Sherman Act.

449.    Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand relief against all defendants as follows:

a)    An injunction enjoining defendants that they shall not take further action to delay, object or interfere with the development of the Property by Upper Gwynedd Equities, LLC nor any of its tenants or users, including Royal Farms;

1643994-3

b)       An award of compensatory damages in an amount to be determined at trial, but in any event, in excess of the Court's jurisdictional and compulsory arbitration thresholds;

c)       A finding that defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and awarding treble damages to Plaintiffs pursuant to 15 U.S.C. § 15;

d)       A permanent injunction enjoining defendants from monopolizing or attempting to monopolize the relevant geographic market, as provided by 15 U.S.C. § 26;

e)       An award of punitive damages in an amount to be determined at trial as a result of the willful, malicious and intentional acts of defendants;

f)       Awarding Plaintiffs interest, costs, expenses, and attorneys' fees in connection with this action; and

g)       Such further and additional relief as the Court deems just and proper.

### FIFTH COUNT – All Defendants
#### Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1
#### Restraint of Trade
#### NRP and Hyper-Convenience Store Markets

450.    Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

451.    As alleged herein, Defendants took concerted action, in agreement or conspiracy with one another, in restraint of trade in the Sumneytown Pike Market Corridor in connection with the NRP and hyper-convenience store market.

452.    Said concerted action by the Defendants produced anticompetitive effects within the relevant product and geographic markets all as alleged herein.

453.    Defendants' objective in its concerted action was, in fact, illegal, causing a restraint of trade as alleged herein, causing anti-trust injury.

82

454.     Retail Sites has also suffered damages in the form of lost lease commissions, and lost project and property management fees as a result of Defendants' anti-competitive and tortious conduct as alleged herein.

455.     Plaintiffs suffered damages as alleged in this Amended Complaint as a result of Defendants' violations of Section 1 of the Sherman Act.

456.     Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand relief against all defendants as follows:

a)     An injunction enjoining defendants that they shall not take further action to delay, object or interfere with the development of the Property by Upper Gwynedd Equities, LLC nor any of its tenants or users, including Royal Farms;

b)     An award of compensatory damages in an amount to be determined at trial, but in any event, in excess of the Court's jurisdictional and compulsory arbitration thresholds;

c)     A finding that defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and awarding treble damages to Plaintiffs pursuant to 15 U.S.C. § 15;

d)     A permanent injunction enjoining defendants from monopolizing or attempting to monopolize the relevant geographic market, as provided by 15 U.S.C. § 26;

e)     An award of punitive damages in an amount to be determined at trial as a result of the willful, malicious and intentional acts of defendants;

f)     Awarding Plaintiffs interest, costs, expenses, and attorneys' fees in connection with this action; and

g)      Such further and additional relief as the Court deems just and proper.

### SIXTH COUNT – All Defendants
**Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**
**Restraint of Trade**
**NRP and Hyper-Convenience Store Real Estate Site Markets**

457.    Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

458.    As alleged herein, Defendants took concerted action, in agreement or conspiracy with one another, in restraint of trade in the Sumneytown Pike Market Corridor in connection with the NRP and hyper-convenience store real estate site market.

459.    Said concerted action by the Defendants produced anticompetitive effects within the relevant product and geographic markets all as alleged herein.

460.    Defendants' objective in its concerted action was, in fact, illegal, causing a restraint of trade as alleged herein, causing anti-trust injury.

461.    Retail Sites has also suffered damages in the form of lost lease commissions, and lost project and property management fees as a result of Defendants' anti-competitive and tortious conduct as alleged herein.

462.    Plaintiffs suffered damages as alleged in this Amended Complaint as a result of Defendants' violations of Section 1 of the Sherman Act.

463.    Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand relief against all defendants as follows:

1643994-3

a)      An injunction enjoining defendants that they shall not take further action to delay, object or interfere with the development of the Property by Upper Gwynedd Equities, LLC nor any of its tenants or users, including Royal Farms;

b)      An award of compensatory damages in an amount to be determined at trial, but in any event, in excess of the Court's jurisdictional and compulsory arbitration thresholds;

c)      A finding that defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and awarding treble damages to Plaintiffs pursuant to 15 U.S.C. § 15;

d)      A permanent injunction enjoining defendants from monopolizing or attempting to monopolize the relevant geographic market, as provided by 15 U.S.C. § 26;

e)      An award of punitive damages in an amount to be determined at trial as a result of the willful, malicious and intentional acts of defendants;

f)      Awarding Plaintiffs interest, costs, expenses, and attorneys' fees in connection with this action; and

g)      Such further and additional relief as the Court deems just and proper.

### SEVENTH COUNT – All Defendants
**Tortious Interference with Existing Contract**
**Royal Farms Lease**

464.    Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

465.    Defendants, as well as ABC Entities 1 through 5 and John Does 1 through 10, knew or should have known that UGE had entered into a lease and a site development agreement with Royal Farms for the development and operations of a Royal Farms hyper-convenience store on the Property.

466.    Defendants, as well as ABC Entities 1 through 5 and John Does 1 through 10, are not parties to the Royal Farms Lease between Royal Farms and UGE.

467.    UGE reasonably anticipated that it would be able to satisfy its obligations under the Royal Farms Lease with Royal Farms to obtain all necessary municipal and government approvals for the construction of the Royal Farms hyper-convenience store on the Property in accordance with the time frames stated therein.

468.    Defendants, as well as ABC Entities 1-5 and John Does 1-10, through the use of a series of sham litigations and other anti-competitive acts as set forth herein, have interfered with the Royal Farms Lease between Royal Farms and UGE, with the purpose and intent of stopping Royal Farms from operating at the Property.

469.    Defendants' sham litigations and anti-competitive acts were undertaken willfully and intentionally to hinder, impede, delay, obstruct, and/or prevent the building and operation of the competing Royal Farms hyper-convenience store on the Property.

470.    Defendants' conduct was not privileged or justified.

471.    Defendants, as well as ABC Entities 1 through 5 and John Does 1 through 10, knew or should have known that the sham litigations and anti-competitive acts were certain to interfere with UGE's and Royal Farms' ability to satisfy, and/or their performance of, their respective obligations under the Royal Farms Lease for the purpose of stopping Royal Farms from operating at the Property.

472.    Further, Defendants directed their interference at Royal Farms, in an effort to prevent the development and operations of a Royal Farms hyper-convenience store at the Property.

1643994-3

473.     Defendants caused delays in the performance of the Royal Farms Lease by UGE and Royal Farms by interfering with the subject matter of the contract, namely, the Property.

474.     By way of example, only, Defendants' conduct delayed Royal Farms in accepting the existence of complete, final, unappealable approvals, in turn delaying Royal Farms' further performance under the Royal Farms Lease.

475.     Defendants' conduct has caused damage, injury and harm to UGE and Retail Sites as alleged herein.

476.     Defendants' conduct was willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand judgment against all defendants herein, for compensatory damages in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, punitive damages and counsel fees, together with such other relief as the Court deems just.

### EIGHTH COUNT – All Defendants
**Tortious Interference with Prospective Contracts
As to Building A and Building B**

477.     Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

478.     At all times material hereto, UGE intended to develop the Property, with Buildings A and B used as multi-tenant mixed-use commercial buildings known as the Shoppes at Upper Gwynedd.

479.     UGE reasonably anticipated that the necessary development approvals would come to fruition and permit UGE to gain the advantage of leasing the available space within Buildings A and B.  *See* Figure 1, *supra*.

480.    Defendants, as well as ABC Entities 1 through 5 and John Does 1 through 10, knew or should have known that the sham litigations and anti-competitive acts were certain to interfere with UGE's ability to enter into agreements or leases from other tenants or users interested in operating at the Property, and/or prospective tenants/users entry into agreements or leases with any of Plaintiffs.

481.    Because of the delays caused by the Defendants, as well as ABC Entities 1 through 5 and John Does 1 through 10, all as alleged herein, UGE has been unable to move forward with the development of Buildings A and B.

482.    Despite UGE obtaining numerous prospective tenants, as alleged in this Amended Complaint, for the lease of space in excess of the square footage of Buildings A and B, Defendants' conduct of delaying the permitting and construction of Buildings A and B caused the prospective tenants to not enter into and continue the prospective relationship, and specifically caused the said prospective tenants to not enter into leases with UGE for space in the Shoppes at Upper Gwynedd in Buildings A and B.

483.    The appeal for the Conditional Use Approval interfered with the prospective tenants' ability to enter into a lease agreement where Defendants' conduct in the sham Conditional Use Appeal, as it caused uncertainty for the prospective tenants as to timing of permitting, construction and occupation of Buildings A and B.

484.    As a result of Defendants' conduct, and the attendant delays, the prospective tenants have elected not to enter into leases with UGE.

485.    Each of the following advised UGE that it would not enter into a lease for space at the Shoppes at Gwynedd while the appeal was pending, but otherwise would do so:

    a)    Einstein Primary Care and Moss Rehab;

88

b)     Asian Buffet;

c)     National Nail Salon;

d)     American Dental Solutions;

e)     Nail Salon;

f)     Pro Martial Arts;

g)     Mathnasium; and

h)     PTW Physical Therapy.

486.     Defendants' sham litigations and anti-competitive acts were undertaken willfully and intentionally to cause prospective tenants to not enter into leases with UGE.

487.     Defendants' conduct was not privileged or justified.

488.     Defendants' conduct has caused damage, injury and harm to UGE and Retail Sites as alleged herein.

489.     Defendants' conduct was willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand judgment against all defendants herein, for compensatory damages in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, punitive damages and counsel fees, together with such other relief as the Court deems just.

### <u>NINTH COUNT – All Defendants</u>
**Abuse of Process**

490.     Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

491.    Defendants, themselves, or through their agents, initiated and maintained the sham litigations, specifically, the Conditional Use Appeal and the Land Use Appeal, for the improper purpose of (i) impeding and delaying the UGE's ability to proceed with the development, construction, and leasing to multiple tenants including, but not limited to the Royal Farms Store and to prevent Royal Farms and such other tenants from becoming operable; (ii) impeding and delaying UGE's ability to proceed with the development, construction, leasing and operations at both Buildings A and B at the Property; (iii) furthering Provco's objective to prevent potential retail and convenience store and hyper-convenience store operators from entering the relevant marketplace and operate a hyper-convenience store at the Property; and (iv) exclude Royal Farms and UGE from the NRP and hyper-convenience store market and real estate site market, respectively, all the while damaging UGE.

492.    Defendants' ulterior motives described in the preceding paragraph and use of judicial process and the judicial system for a purpose other than that for which they were designed is an abuse of process.

493.    As a result of the foregoing, UGE and Retail Site have incurred, and will continue to incur, damages in an amount yet to be determined, but in excess of $150,000.

494.    Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand judgment against all defendants, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, punitive damages and counsel fees, together with such other relief as the Court deems just.

1643994-3

**TENTH COUNT – All Defendants**
**Wrongful Use of Civil Proceedings (42 Pa.C.S. § 8351, *et seq.*)**

495.    Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

496.    As set forth above, Defendants, themselves, or through their agents, took part in the procurement, initiation, and/or continuation of civil proceedings adverse to and/or against Plaintiffs and/or their predecessors in interest, through the Conditional Use Appeal and the Land Use Appeal.

497.    Defendants did so in a grossly negligent manner and/or without probable cause and primarily for a purpose other than securing proper discovery, joinder of parties, or adjudication of the claim in the underlying proceedings, i.e., for improper anti-competitive purposes, *inter alia*, as set forth herein.

498.    All underlying proceedings—to wit, the Conditional Use Appeal, and the Land Use Appeal—have terminated in favor of Plaintiffs herein and/or their predecessors in interest.

499.    As a result of Defendants' wrongful use of civil proceedings as set forth herein, Plaintiffs have suffered damages, including, but not limited to:

        a.    Costs arising from delay and interference in development caused by Defendants' Conditional Use Appeal and the Land Use Appeal; and

        b.    Attorneys' fees incurred in defending the Conditional Use Appeal and the Land Use Appeal, and all other costs and expenses associated with such proceedings.

500.    Defendants' conduct connection with the conduct alleged above is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demand judgment against all defendants, for compensatory damages in an amount in excess of

the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, punitive damages and counsel fees, together with such other relief as the Court deems just.

## ELEVENTH COUNT – All Defendants
### Civil Conspiracy

501.    Plaintiffs incorporate by reference each of the foregoing allegations as though set forth at length.

502.    Defendants entered into an agreement with a common purpose to:

        a)      monopolize the relevant markets as alleged in this Amended Complaint;

        b)      commit violations of the Sherman Act;

        c)      act in concert to restrain trade in the relevant markets as alleged in this Amended Complaint;

        d)      tortiously interfere with the Royal Farms Lease between UGE and Royal Farms in the manner as alleged herein;

        e)      tortiously interfere with UGE's prospective contractual relations by causing certain prospective tenants of Buildings A and B to not enter into leases with UGE;

        f)      abuse the judicial process as alleged herein.

503.    As alleged herein, Defendants in concert took overt action as to each of the foregoing.

504.    ABC Entities 1 through 5 and John Does 1 through 10 each participated in the aforementioned conspiracy.

505.    As a direct and proximate result of the wrongful acts alleged above, UGE and Retail Sites has suffered monetary damages and injury, and will continue to suffer additional, substantial harm arising from Defendants' wrongful and conspiratorial conduct in the future, in an amount to be determined at trial.

92

506.    Defendants' conduct is willful, wanton, malicious and outrageous, thereby entitling Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC, hereby demands judgment against all defendants, for compensatory damages in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, punitive damages and counsel fees, together with such other relief as the Court deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable, pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

**TIMONEY KNOX, LLP**

By:    

Eric B. Smith, Esquire
James N. Hendershot, Esquire
PA ID Nos. 81023 & 318672
400 Maryland Drive, P.O. Box 7544
Fort Washington, PA 19034
t: 215-646-6000
f: 215-646-0379
esmith@timoneyknox.com
jhendershot@timoneyknox.com
*Counsel for Plaintiffs*
*Upper Gwynedd Equities, LLC*
*and Retail Sites, LLC*

Date:  January 29, 2021

1643994-3