IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UPPER GWYNEDD EQUITIES, LLC, et al., | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 20-cv-2819-JMY |
| PROVCO PINEGOOD SUMNYTOWN, LLC, et al. | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                             **NOVEMBER 10, 2022**

      Plaintiffs Upper Gwynedd Equities, LLC, and Retail Sites, LLC (collectively "Plaintiffs") brought this anti-trust, tortious interference, and abuse of process action against Defendants Provco Pinegood Sumneytown, LLC, Bruce Goodman, Provco Group, LTD., Provco Real Estate, Provco Ventures I, L.P., Wawa, Inc., and Gerald Holtz (collectively "Defendants") alleging that they attempted to monopolize a retail project in Montgomery County, Pennsylvania and wrongfully interfered with Plaintiffs' development of a nearby site through a state zoning dispute in violation of the Sherman Act, 15 U.S.C. §§ 1, 2.  Presently before this Court is Defendants' Motion to Dismiss wherein Defendants argue that Plaintiffs' claims are barred by the *Noerr-Pennington* doctrine which creates immunity for legitimate petitioning conduct directed at a branch of government.  This matter is briefed and appropriate for disposition without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth below, the Court grants the Defendants' Motion.

I.      BACKGROUND

The action before this Court stems from a dispute and prior, state court litigation involving the redevelopment of adjourning commercial property near Sumneytown Pike and West Point Pike (the "Property) in Upper Gwynedd Township in which two real estate developers, the Provco Pinegood Sumneytown, LLC related entities ("Provco") and the Upper Gwynedd Equities, LLC related entities ("Upper Gwynedd"), wanted to build and have their preferred, competing anchor stores as tenants in their developments at different corners of the same intersection. (ECF No. 19 at 10-27.)  While Upper Gwynedd intended to lease their space for the development of a Royal Farms convenience store, Provco wanted to lease its property to Wawa, Inc. for a similar convenience store.  According to Plaintiffs, this presented a problem as Wawa and Royal Farms are direct competitors. (*Id.* at 19-27, 49.)  Both entities sought Upper Gwynedd Township Board of Commissioners ("Board") approval for their developments.  (*Id.* at 28.) Since municipal permitting and approval processes recognize the right of neighboring property owners to contest each other's land use permits and approvals, both had standing and formally challenged the other's ability to develop their respective properties.  (ECF No. 23-2 at 15.) Provco was initially granted the zoning relief it needed to develop the Wawa convenience store, however ultimately, non-party Merck & Co, Inc ("Merck) formally objected to Provco's subsequent land development application and Upper Gwynedd's predecessor-in-interest, Hartford Properties, LLC, joined in support of that challenge (ECF No.  23-6 at 2-4; ECF No. 23-7; ECF No. 23-4 at 5-6.)

While Upper Gwynedd's application was approved by the Board, Provco was unable to obtain the necessary approvals for a Wawa gas convenience store due to the litigation challenging their development proposals.  (ECF No. 23-2 at 10-15.)  Upper Gwynedd, on the

other hand, successfully obtained the necessary zoning board approval and ultimately prevailed despite Provco's challenge to Upper Gynwedd's development before the state Court of Common Pleas of Montgomery County and the Commonwealth Court of Pennsylvania.  (*Id.*; ECF No. 19 at 29.)  And while Upper Gwynedd was able to build a Royal Farms convenience store on its property, its challenge to the competing Provco project has prevailed and Provco has yet to obtain the necessary approvals to build a Wawa. (ECF No. 23-2 at 10-15.)

It is quite interesting that Upper Gwynedd, having intervened and challenged Provco's development of a Wawa convenience store, considered its own challenge to Provco – who was attempting to build a similar convenience store at the same intersection –  as a legitimate use of the adjudicatory process.  Nevertheless, despite Upper Gwynedd's success in challenging Provco's development and receiving the necessary approvals to build a Royal Farms convenience store, Plaintiffs have brought this present action for alleged violations of the Sherman Act 15 U.S.C. §§ 1 & 2, tortious interference with prospective and existing contracts, abuse of process, wrongful use of civil proceedings 42 Pa.C.S. § 8351, and civil conspiracy arguing that Provco's challenge to the Upper Gwynedd development was anti-competitive retaliation meant to harm and delay.

## II.	LEGAL STANDARD

To survive a Rule 12(b) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Igbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Tombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty of Allegheny*, 515 F. 3d 224, 233

(3d Cir. 2008).    Rather, the plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n. 8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the alleged facts make out a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210-11 (3d Cir. 2009) (quoting *Igbal*, 556 U.S. at 679).  All well-pleaded allegations in the complaint must be accepted as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in the plaintiffs' favor. *See McTernan v. City of York*, 577 F. 521, 526 (3d. Cir. 2009).

In deciding a motion to dismiss, courts generally consider only the allegations of the complaint, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F. 2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).   Courts may consider documents incorporated by reference in the complaint. *California Pub. Employees' Ret. Sys. V. Chubb Corp.*, 394 F. 3d 126, 134 (3d Cir. 2004).  However, courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  Courts may do so because "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where the plaintiff has actual notice . . . and has relied upon [those] documents in framing the complaint."  *Schmidt v. Skolas*, 770 F. 3d 241, 249 (3d Cir. 2004) (internal quotation marks, alteration, and citation omitted).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it

4

relied." *Pension Benefit Guar. Corp.*, 998 F. 2d at 1196 (citing *Goodwin v. Elkins & Co.*, 730 F. 2d 99, 113 (3d Cir. 1984)). Courts may consider these documents without having to convert the motion to one for summary judgment, and often do so in the context of a *Noerr-Pennington* challenge on a motion to dismiss. *Id.*; *Giles v. Phelan, Hallinan & Schmeig, L.L.P.*, No. 11-6239, 2013 U.S. Dist. LEXIS 78161, at *23 (D.N.J. June 4, 2013).

**III.     DISCUSSION**

It is undisputed by either side that the *Noerr-Pennington* doctrine is applicable to this case, though Plaintiffs' position is that Defendants are not eligible for the immunity it normally affords because according to them, the so-called "sham" exception applies. We, therefore, begin our analysis by setting forth the *Noerr-Pennington* requirements and its applicability to this case. The Supreme Court, in the *Noerr* and *Pennington* line of cases, established the general rule that certain concerted efforts to petition the federal or state governments for redress – whether by legislative, executive, judicial or quasi-judicial action – do not violate antitrust law even when intended to harm competition or restrain trade. *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. (PREI)*, 508 U.S. 49, 56 (1993). The thrust of these cases grows out of respect for the First Amendment which protects and guarantees all citizens the right to petition any branch of the government, including through judicial channels. *See A.D. Bedell Wholesale Co. v. Phillip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001) ("Rooted in the *First Amendment*" and with the intention to quell "fears about the threat of liability chilling political speech," the *Noerr-Pennington* doctrine immunizes parties "who attempted to influence government action — even where the petitioning had anticompetitive

5

effect," from federal antitrust lawsuits). This protection is afforded, even if such action is anticompetitive or monopolistic as the First Amendment right to petition the government is not conditioned upon motive. *Id.* Where state law tort claims are based on the same petitioning activity as the antitrust claims, those tort claims also fail under the *Noerr-Pennington* doctrine. *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F. 3d 119, 128 (3d Cir. 199).

There is a limit to this protection, however, as *Noerr-Pennington* immunity is lost if the challenged activity is, in fact, a "sham." *City v. Omni*, 499 U.S. 365, 380 (1991). A "'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action" and "not one who genuinely seeks to achieve his governmental result" but rather simply uses the petitioning process as an anticompetitive tool. *Omni*, 499 U.S. at 381. The premise of this exception is based on the notion that a party's abuse of the process is not a legitimate use of the right to petition administrative and judicial channels. Courts have interpreted this "sham" exception as extremely narrow so as not to discourage meaningful access to the adjudicatory process and right to petition the government. *Takeda Pharm. Co. Ltd. V. Zydus Pharms. (USA) Inc.*, No. 18-1994, 2021 U.S. Dist. LEXIS 138933, at * 29 (D. N.J. Jul. 16, 2021) ("[t]he sham litigation exception is narrow"); *VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 426 (W.D. Pa. 1998) (noting that the "sham exception" has a very narrow scope). Specifically, for the sham exception to apply, we employ a two-part test. *Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213 (3d Cir. 2019).

We employ a two-part test to determine if the sham exception applies. *Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213 (3d Cir. 2019). First, the plaintiff has the burden of proving that the suit was "objectively baseless" in that "the pursuit of claims [was] so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Professional Real Estate Investors,*

*Inc (PREI),* 508 U.S. at 60-61. If an "objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome" the suit is immunized. *Id.* The Supreme Court has analogized this inquiry to a common claim for wrongful civil proceedings requiring proof of lack of probable cause to bring suit. *Id.* at 63. If probable cause exists, the inquiry ends there, and *Noerr-Pennington* immunity applies. *Campbell*, 972 F.3d at 219. A court can decide the question as to whether the state court proceeding was "objectively baseless" on a motion to dismiss because "the question is not whether [the defendant] thought the facts to constitute probable cause, but whether the court thinks they did" objectively. *PREI,* 508 U.S. at 63-64; *see also Giles v. Phelan, Hallinan & Schmeig, L.L.P.*, No. 11-6239, 2013 U.S. Dist. LEXIS 78161, at *23 (D.N.J. June 4, 2013). If the challenged litigation is objectively meritless, a court may then examine the litigant's subjective motivation to see if the actual motivation was to dragoon the "governmental" process into a competitive tool. *PREI*, 508 U.S. at 60. Only if both the objective and subjective conditions are satisfied is *Noerr-Pennington* immunity lost and the suit permitted to proceed. *Campbell*, 972 F.3d at 219.

In this action, Plaintiffs attempt to transform Defendants' counter challenge of their competing development proposals in state court into a tortious interference, abuse of process, wrongful use of civil proceedings and an antitrust Sherman Act violation by simply alleging that Provco's challenge to the Upper Gwynedd development proposal was a meritless "sham." By Plaintiffs' own measure, if Provco's actions were anticompetitive retaliation, so are Upper Gwynedd's actions in successfully challenging Provco's development and then pursuing this federal action based on Provco's challenge to the Upper Gwynedd development. If Defendants meant to prevent Plaintiffs from building a convenience store at the same intersection that competes with Provco's preferred tenant, so did Upper Gwynedd. Yet, just as Upper Gwynedd

had a right to object to Provco's adjacent development and pursue this litigation, Provco had a right to challenge Upper Gywnedd's development. Both have neighboring properties whose developments could be impacted by the development of the other, each had standing to challenge each other's development projects under the relevant ordinances, and each had legitimate grievances that were not objectively baseless under the law.  *See Grant v. Zoning Hearing Board of Township Penn.*, 776 A.2d 356, 359 (Pa. Cmmwlth. 2001) (owners in the immediate vicinity of property involved in zoning litigation have the requisite interest to obtain party status).  The mere fact that Provco mounted an unsuccessful challenge does not convert their right to petition a zoning board and appeal that decision into "sham" litigation.  In fact, the Court of Common Pleas of Montgomery Court and the Commonwealth Court of Pennsylvania each considered Provco's challenge to the Upper Gynwedd development on the merits and neither found the challenge wholly without merit. The fact that Provco was unsuccessful in that litigation or that the courts declined to find that the local Board abused its discretion when considering the evidence does not change that equation.  (ECF No. 25:10; ECF No. 25-8.)

The underlying state court litigation was not baseless, but rather turned on the interpretation of a new amended ordinance involving an unsettled area of law: whether the Upper Gwynedd Township Zoning Ordinance Section 195-22.A, permitting certain commercial multiple uses on a single parcel as a conditional use after it was amended on May 29, 2018, required developers, in order to receive Board approval, to specify the exact combination of enumerated uses they intended to develop and prove all were compatible.  (*Id.*)  This ordinance was implicated because Upper Gwynedd sought to develop its property for multiple principle uses without ever specifying the exact combination or tenants that would occupy the development, which Provco believed was required.  (ECF 25-10 at 20.)  Nonetheless, the Board approved Upper Gynwedd's

8

conditional use application allowing Upper Gwynedd partial discretion as to the properties' combination of uses set forth in the ordinance with the caveat that a subset, such as daycares, clubs, and firework sales, among others, required further Board approval.  (ECF No. 23-8 at 19; ECF No. 25 at 10.)

Provco's position was that the Board's approval of Upper Gwynedd's application constituted legal error because the ordinance required developers to indicate with a higher level of specificity the intended multi-use purposes. (ECF No. 23-12 at 19-25.)  Provco argued that without Upper Gwynedd being required to specify the exact intended uses for the property, it had no way to anticipate and mount an objection to all the potential uses and combinations enumerated within the ordinance, each of which could require different evidence to show incompatibility. (*Id.*)   In sum, Provco's position was essentially that it could not object with sufficient evidence to Upper Gynwedd's proposed development nor should it be required to, until Upper Gynwedd specified what exact combination of uses it intended for the property.  Provco supported this position by noting that although the ordinance contained a long list of enumerated uses of right and conditional uses, certain combinations of these uses could still be incompatible as the ordinance required that each use be "compatible" and "not conflict." (*Id.* at 19-21.) According to Provco, this requirement would be superfluous if every enumerated use was, indeed, compatible. (*Id.*)  On the other hand, Upper Gwynedd's position was that because the ordinance enumerated the uses, it reflected legislative intent that such uses were inherently compatible. (ECF 23-13 at 33.)  Dovetailing with this legal determination, was who bore the burden proof of establishing that the proposed uses were "compatible and will not conflict" – the developer or objector – since the ordinance did not define these terms.  As a result, Upper Gynwedd argued that because the ordinance did not define several terms – such as "compatible,"

"material increase" and "traffic congestion"– such requirements were unenforceable, or at minimum, Upper Gwynedd did not bear the burden of proof, but rather Provco did. (*Id.* at 30.)

Without knowing all Upper Gynwedd's intended uses, Provco had a legitimate concern that Upper Gwynedd's development project could negatively impact Provco's neighboring property. Provco also had a reasonable and legitimate legal argument for objecting to Upper Gywedd's development because the combination of some of the ordinance's permitted single uses, such as a gas pumping station, a medical marijuana dispensary, and a religious institution, all on a single parcel, could be viewed as "incompatible" depending on the court's interpretation of that term. Indeed, the ordinance lists a wide variety of uses, and the evidence establishing incompatibility with one use, might not be the same evidence of incompatibility for another. Therefore, a reasonable litigant reading the ordinance, could come to the same interpretation as Provco, and conclude that there was a real chance it could succeed on the merits of its challenge if the burden was laid upon Upper Gynwedd to show which uses it intended and if those uses together, were compatible.

The Court of Common Pleas and Commonwealth Court considered Provco's arguments in detailed opinions, and though Provco did not win, neither court suggested that Provco's arguments were wholly lacking in any basis of law or fact. (ECF No. 25-10; ECF No. 25-8.) Indeed, although the Commonwealth Court concluded that the ordinance did not require Upper Gwynedd to identify all potential tenants or the exact combination of uses, it acknowledged the difficulty Provco faced in presenting incompatibility evidence without knowing the individual property tenants. (ECF No. 25-10 at 21.)  Both the Commonwealth Court and the Court of Common Pleas also adopted different rationales illustrating that this case was not of the type that "no reasonable litigant could realistically expect success on the merits" as it involved areas of

unsettled law. *Professional Real Estate Investors, Inc,* 508 U.S. at 65 ("in light of unsettled condition of the law, [defendant] plainly had probable cause to sue"); *see also CSMN Invs. LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1288 (10th Cir. 2020) (affirming dismissal of antitrust claim based on zoning challenge as the defendants had a right to be concerned about the property use and "press for an interpretation" that would reflect their concerns). Since the local ordinance did not define "compatible" or "material increase" in "traffic congestion," the Court of Common Pleas found the ordinance so vague so as not to be enforceable, and that if it was, then the burden of proof of showing incompatibility would be on the challenger, Provco, not the developer, Upper Gywnedd. (ECF No. 23-8.) The Commonwealth Court rejected the notion that the ordinance should be voided on vagueness grounds, adopting instead, the Board's and Upper Gwynedd's position that the enumerated uses were inherently compatible as they reflected a legislative intent of compatibility. (ECF No. 25-10 at 20-21). In other words, the ordinance indicated a presumption of compatibility as to the enumerated uses. The Commonwealth Court concluded that the ordinance's requirement of compatibility was not superfluous because it gave the Board discretion to impose additional requirements if it found that a combination of uses in some, individual cases were incompatible as applied to a specific property. (*Id.* at 21.)[1]

Though the Commonwealth Court and Court of Common Pleas both agreed that there was substantial evidence to support the Board's findings that the Upper Gynwedd development would not materially increase traffic, a court finding that the challenger's evidence is insufficient does not by itself render that litigation "objectively baseless." (*Id.* at 22.) If this were the standard, the "sham" exception could swallow the entire *Noerr-Pennington* rule. Here, Provco

---

[1] The Court of Common Pleas found that Provco waived challenging the board's evidentiary findings as to the compatibility of the property use by not raising these issues in its statement of error.

11

had probable cause to institute the legal proceedings. Under Upper Gwynedd Township Zoning Ordinance Section 195-27.1 (e), neighboring property owners, such as Provco, had standing to object to the Upper Gynwedd development on the grounds that it caused a "material increase" in "traffic congestion." (ECF No. 23-12.). Provco's prior application to the Board had been denied for traffic safety concerns, despite being at the same street intersection as Upper Gwynedd's property, so it was reasonable to conclude that the Upper Gwynedd development could pose similar issues even if the properties had differences. Notably, Provco was not alone in its concerns as Merck's traffic expert opined that the development would materially increase traffic congestion. (ECF No. 25-10 at 8.)

Nor does the litigation become objectively baseless due to Provco appealing two Board determinations, related to the same Upper Gywnedd development. For Upper Gwynedd to build its proposed development, it sought two different approvals – a conditional use and a final development application – so if there were two challenges, it was because that was what the process entailed for Provco to object and protect all of its legal rights. Provco further had a legal basis to argue the Board's approval of Upper Gynwedd's final development application was at odds with the Board's denial of Provco's final development application and thus, constituted an abuse of discretion. Regardless, both appeals overlapped at the same time, so it is a stretch to say that Upper Gynwedd was dragged into serial, objectively baseless challenges designed only to drag out and thwart its development project. Therefore, the Court grants Defendants' Motion to Dismiss as Plaintiffs have failed to plausibly allege sham litigation and it cannot meet the pleading burden to strip Defendants of immunity pursuant to the *Noerr-Pennington* doctrine.

## V. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion to Dismiss. An appropriate Order will follow.

**IT IS SO ORDERED.**

                  **BY THE COURT:**

                   /s/ John Milton Younge
                  **Judge John Milton Younge**